SEEGER WEISS LLP
CHRISTOPHER A. SEEGER
55 Challenger Road, 6th Floor
Ridgefield Park, NJ  07660
Telephone:  212/584-0700
212/584-0799 (fax)
cseeger@seegerweiss.com

Local Counsel

[Additional counsel appear on signature page.]

UNITED STATES DISTRICT COURT

DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| HEAVY & GENERAL LABORERS' LOCALS 472 & 172 WELFARE FUND, Individually and on Behalf of All Others Similarly Situated, | ) ) ) ) ) | No. 2:19-cv-15982-CCC-JBC  CLASS ACTION  MOTION DAY: OCTOBER 21, 2019 |
| Plaintiff, | ) | |
| vs. | ) | |
| 3M COMPANY, et al., | ) ) | |
| Defendants. | ) ) | |
| | ) | |

[Caption continued on following page.]

MEMORANDUM OF LAW IN SUPPORT OF THE INSTITUTIONAL
INVESTORS' MOTION FOR CONSOLIDATION OF THE RELATED
ACTIONS, APPOINTMENT AS LEAD PLAINTIFF, AND APPROVAL OF
SELECTION OF LEAD COUNSEL

4843-0115-7288.v1

BRUCE ROUSSEAU, Individually and on Behalf of All Others Similarly Situated,

                    Plaintiff,

    vs.

3M COMPANY, et al.,

                    Defendants.

Case No. 2:19-cv-17090-MCA-MAH

4843-0115-7288.v1

**TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION ...................................................................................1

II.   FACTUAL BACKGROUND........................................................................2

III.  ARGUMENT ........................................................................................6

    A.    The Related Actions Should Be Consolidated ......................................6

    B.    The Institutional Investors Should Be Appointed Lead Plaintiff..........6

        1.    The Institutional Investors' Motion Is Timely...........................7

        2.    The Institutional Investors Have a Large Financial Interest....................................................................................8

        3.    The Institutional Investors Satisfy the Requirements of Rule 23 ...................................................................................8

    C.    The Court Should Approve the Institutional Investors' Selection of Lead Counsel.................................................................................11

IV.   CONCLUSION....................................................................................13

- i -

4843-0115-7288.v1

## TABLE OF AUTHORITIES

**Page**

**CASES**

*Amchem Prods. v. Windsor*,
  521 U.S. 591 (1997)......................................................................................9

*Bennett v. Sprint Nextel Corp.*,
  No. 2:09-CV-02122 (D. Kan.) ....................................................................13

*City of Brockton Ret. Sys. v. Avon Prods., Inc.*,
  No. 1:11-cv-04665 (S.D.N.Y.) ...................................................................13

*City of Sterling Heights Gen. Emps.' Ret. Sys. v. Hospira, Inc.*, No.
  1:11-CV-08332 (N.D. Ill.) .........................................................................13

*Grodko v. Cent. European Distrib. Corp.*,
  2012 WL 6595931 (D.N.J. Dec. 17, 2012)................................................11

*Hill v. State Street Corp.*,
  No. 1:09-CV-12146 (D. Mass.) ..................................................................13

*In re Barrick Gold Securities Litigation*,
  No. 1:13-cv-03851-RPP (S.D.N.Y.) ..........................................................12

*In re Cardinal Health, Inc. Sec. Litig.*,
  No. 2:04-cv-00575-ALM (S.D. Ohio) ........................................................12

*In re Cendant Corp. Litig.*,
  264 F.3d 201 (3d Cir. 2001) ...............................................................7, 9, 11

*In re Enron Corp. Sec., Derivative & ERISA Litig.*,
  586 F. Supp. 2d 732 (S.D. Tex. 2008)........................................................12

*In re Enron Corp. Sec. Litig.*,
  No. 4:01-cv-03624 (S.D. Tex.) ...................................................................12

*In re HealthSouth Corp. Sec. Litig.*,
  No. 2:03-cv-01500-KOB-TMP (N.D. Ala.) ...............................................12

*In re Hewlett-Packard Co. Sec. Litig.*,
  No. 8:11-CV-01404 (C.D. Cal.) ..................................................................13

4843-0115-7288.v1

**Page**

*In re Qwest Commc'ns Int'l, Inc. Sec. Litig.*,
   No. 1:01-cv-01451-REB-KLM (D. Colo.) ........................................................12

*In re UnitedHealth Grp. Inc. Sec. Litig.*,
   No. 0:06-cv-01691-JMR-FLN (D. Minn.)........................................................12

*Jones v. Pfizer Inc.*,
   No. 1:10-cv-03864 (S.D.N.Y.) ......................................................................13

*KBC Asset Mgmt. NV v. 3D Sys. Corp.*,
   No. 0:15-CV-02393 (D.S.C.)........................................................................13

*Lawrence E. Jaffe Pension Plan v. Household Int'l Inc.*,
   No. 1:02-cv-05893 (N.D. Ill.)......................................................................12

*Lincoln Adventures LLC v. Those Certain Underwriters at Lloyd's
   London Members of Syndicates*,
   No. 2:08-cv-00235-CCC-JAD (D.N.J.).............................................................11

*Minneapolis Firefighters' Relief Ass'n v. Medtronic, Inc.*,
   No. 0:08-cv-06324-PAM-AJM (D. Minn.) .......................................................13

## STATUTES, RULES AND REGULATIONS

15 U.S.C.
   §78u-4(a)(1) ..............................................................................................6
   §78u-4(a)(3)(A)(i).......................................................................................7
   §78u-4(a)(3)(B)(i)....................................................................................2, 6
   §78u-4(a)(3)(B)(ii)................................................................................1, 2, 6
   §78u-4(a)(3)(B)(iii).................................................................................2, 7
   §78u-4(a)(3)(B)(iii)(I)(cc) ..........................................................................8
   §78u-4(a)(3)(B)(iii)(II) ...............................................................................7
   §78u-4(a)(3)(B)(iii)(II)(aa) ........................................................................11
   §78u- 4(a)(3)(B)(v)..................................................................................2, 11

4843-0115-7288.v1

**Page**

Federal Rules of Civil Procedure
    Rule 23 ...................................................................................................7, 8, 11
    Rule 23(a)(3) ....................................................................................................9
    Rule 23(a)(4) ....................................................................................................9
    Rule 42(a).......................................................................................................1, 6

4843-0115-7288.v1

## I. INTRODUCTION

Pending before the Court are the Related Actions,[1] two securities fraud class action lawsuits filed against 3M Company ("3M" or the "Company") and certain of its officers and directors (collectively, "Defendants") which allege that, during the Class Period, Defendants engaged in a scheme to defraud investors and issued false and misleading statements to conceal the truth about the Company's exposure to legal liability associated with its most lucrative product offerings: man-made chemicals known as per- and polyfluoroalkyl substances ("PFAS").   According to those complaints, when Defendants' misrepresentations were revealed to the public, 3M's stock price declined, causing the proposed class to suffer harm in violation of the Securities Exchange Act of 1934 (the "1934 Act").

The Private Securities Litigation Reform Act of 1995 ("PSLRA") requires district courts to resolve consolidation before appointing a lead plaintiff in securities cases.  *See* 15 U.S.C. §78u-4(a)(3)(B)(ii).   Here, the Related Actions should be consolidated because each asserts similar claims against identical defendants on behalf of the same putative class.  *See* Fed. R. Civ. P. 42(a).

---

[1]   The Related Actions are: *Heavy & General Laborers' Locals 472 & 172 Welfare Fund v. 3M Company*, No. 2:19-cv-15982-CCC-JBC (filed July 29, 2019), and *Rousseau v. 3M Company*, No. 2:19-cv-17090-MCA-MAH (filed Aug. 22, 2019).  All emphasis is added and all citations are omitted unless otherwise noted.

- 1 -

4843-0115-7288.v1

As soon as practicable after its decision on consolidation, the Courts "shall appoint the most adequate plaintiff as lead plaintiff for the consolidated actions." 15 U.S.C. §78u-4(a)(3)(B)(ii).  The lead plaintiff is the member "of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members." 15 U.S.C. §78u-4(a)(3)(B)(i).  Here, the State of Rhode Island, Office of the Rhode Island Treasurer on behalf of the Employees' Retirement System of the State of Rhode Island, Iron Workers Local 580 Joint Funds, and Flossbach von Storch Invest S.A. ("FvS") (collectively, the "Institutional Investors") respectfully submit that they should be appointed to serve as Lead Plaintiff on behalf of the putative class because they: (1) timely filed this motion; (2) have a substantial financial interest in the outcome of this litigation; and (3) will adequately represent the interests of the class. *See* 15 U.S.C. §78u-4(a)(3)(B)(iii).  In addition, the Court should approve the Institutional Investors' selection of Robbins Geller Rudman & Dowd LLP and Motley Rice LLC as lead counsel for the class. *See* 15 U.S.C. §78u- 4(a)(3)(B)(v).

## II.    FACTUAL BACKGROUND

3M is a U.S. multinational conglomerate corporation that produces a variety of chemical substances and related products.  3M's common stock trades on the New York Stock Exchange under the ticker MMM.  3M's most lucrative product has been PFAS.

4843-0115-7288.v1

PFAS are characterized by bonds between carbon and fluorine that are among the strongest in organic chemistry. PFAS are man-made chemicals that come in 5,000 or more varieties and are used in industrial and consumer products, including non-stick cookware, water-repellent clothing, camping gear, shoes, stain resistant fabrics, textiles and carpets, cosmetics, surfactants for electronics manufacturing, and products that resist grease, water, and oil, such as coated papers for fast-food takeout.

Two of the best known PFAS that 3M has produced for decades are perfluorooctane sulfonic acid ("PFOS") and perfluorooctanoic acid ("PFOA"), also called C8 because of the eight-carbon chain that makes up its chemical backbone. 3M's PFAS are used in products worldwide, including Scotchgard stain protectant, Teflon cookware, Gore-Tex water resistant outdoor gear, greaseproof food paper, and aqueous firefighting foam. The same property that makes PFAS so effective in consumer products – one of the strongest molecular bonds ever discovered – means that PFAS do not break down in the environment, hence the ominous nickname "forever" chemicals.

3M has repeatedly claimed that PFAS are not a danger to public health. "While the science behind PFAS is complex, the vast body of scientific evidence, which consists of decades of research conducted by independent third parties and 3M, does not show that PFOS or PFOA causes harm in people at current or historical levels,"

- 3 -

4843-0115-7288.v1

Company spokeswoman Fanna Haile-Selassie was quoted as saying in a November 2018 *Bloomberg* article.  ECF No. 1 at ¶16.

In 2010, the State of Minnesota sued the Company, demanding $5 billion to clean up the damage 3M caused in the state.  On the eve of the trial in February 2018, the case settled for ***$850 million***, without any admission of wrongdoing by 3M.  ***The settlement was the third-largest for a natural-resource damage claim in history***, behind the Deepwater Horizon and Exxon Valdez oil spill settlements.

While publicly denying that PFAS cause harm to humans and the environment, Defendants concealed and misrepresented: (i) 3M's vast internal evidence dating back decades confirming that PFAS are toxic (which was first publicly revealed in February 2018 by Minnesota's Attorney General); (ii) 3M's decades-long history of suppressing negative information and/or damaging data about PFAS; and (iii) 3M's legal exposure to state, county, and local governments and individuals around the country as a result of its knowledge and intentional concealment of the toxic harm caused by the use of PFAS.  These omissions and misrepresentations caused 3M's stock price to trade at artificially inflated prices throughout the Class Period.

On April 25, 2019, 3M announced its first quarter 2019 financial results, acknowledging that the quarter "was a disappointing start to the year for 3M" and disclosing that on top of the "$1.16 per share impact" already recorded in the first quarter of 2018 related to the settlement with the State of Minnesota, 3M had

- 4 -

4843-0115-7288.v1

"recorded significant litigation-related pre-tax charges of $548 million, or $0.72 per share" in the first quarter of 2019 for additional PFAS liability.  ECF No. 1 at ¶29. 3M also announced that it was cutting 2,000 jobs, approximately 2% of its 93,500 employees, and trimming fiscal year 2019 capital expenditures, including on manufacturing, in addition to accelerating other cost control reductions it said were already underway. On this news, the price of 3M common stock fell $28.36 per share, or nearly 13%, to close at $190.72 per share on April 25, 2019.

On May 29, 2019, New Hampshire filed two lawsuits against 3M and others for PFAS contamination.  New Hampshire Attorney General Gordon MacDonald said the goal was to recoup damages for the PFAS contamination that had been found in all ten New Hampshire counties, noting that, in towns like Merrimack and Portsmouth, the contamination had put hundreds of families on bottled water.  "It is my hope that those responsible for the manufacture and distribution of PFAS will recognize the severity of the issues they've caused and will become part of the solution," MacDonald was quoted saying.  ECF No. 1 at ¶31.  On this news, the price of 3M common stock declined from its close of $163.35 per share on May 28, 2019 to close at $161.40 per share on May 29, 2019.

As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's common stock, the Institutional Investors and other class members have suffered significant losses and damages.

- 5 -

4843-0115-7288.v1

## III.   ARGUMENT

### A.   The Related Actions Should Be Consolidated

The PSLRA provides that "[i]f more than one action on behalf of a class asserting substantially the same claim or claims arising under this chapter has been filed," the Court shall not make the determination of the most adequate plaintiff until "after the decision on the motion to consolidate is rendered."   15 U.S.C. § 78u-4(a)(3)(B)(ii).  Consolidation is appropriate where actions involve common questions of law or fact.  *See* Fed. R. Civ. P. 42(a).  Here, the Related Actions assert virtually identical claims against the same defendants during an identical class period and rely on the same facts.[2]  Consolidation would preserve judicial resources and promote efficient prosecution of the litigation.  Accordingly, the Court should consolidate the Related Actions.

### B.   The Institutional Investors Should Be Appointed Lead Plaintiff

The PSLRA establishes the procedure for the appointment of a lead plaintiff in "each private action arising under [the 1934 Act] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure."  15 U.S.C. §78u-4(a)(1); *see also* 15 U.S.C. §78u-4(a)(3)(B)(i).   First, the pendency of the action must be

---

[2]   The *Heavy & General Laborers'* action seeks to represent investors who purchased 3M common stock while the *Rousseau* action seeks to represent investors who purchased 3M securities.  This difference will be resolved upon the filing of a consolidated complaint.

- 6 -

publicized in a widely circulated national business-oriented publication or wire service not later than 20 days after filing of the complaint. 15 U.S.C. §78u-4(a)(3)(A)(i). Next, the PSLRA provides that the Court shall adopt a presumption that the most adequate plaintiff is the person or group of persons that:

> (aa) has either filed the complaint or made a motion in response to a notice . . . ;
>
> (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and
>
> (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. §78u-4(a)(3)(B)(iii); *see also In re Cendant Corp. Litig.*, 264 F.3d 201 (3d Cir. 2001). Finally, the presumption may be rebutted "only upon proof by a member of the purported plaintiff class" that the presumptively most adequate plaintiff "will not fairly and adequately protect the interests of the class" or "is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. §78u-4(a)(3)(B)(iii)(II); *Cendant*, 264 F.3d at 268. For the reasons that follow, the Institutional Investors believe that they are the most adequate plaintiff and should therefore be appointed Lead Plaintiff.

### 1.    The Institutional Investors' Motion Is Timely

The notice of the first-filed *Heavy & General Laborers'* action published by Robbins Geller on *Business Wire*, a widely circulated, national, business-oriented news reporting wire service, on July 29, 2019, advised class members of: (i) the

- 7 -

4843-0115-7288.v1

pendency of the action; (ii) the claims asserted therein; (iii) the proposed class period; and (iv) the right to move the Court to be appointed lead plaintiff within the 60-day period prescribed by statute. *See* Declaration of Christopher A. Seeger in Support of the Institutional Investors' Motion for Consolidation of the Related Actions, Appointment as Lead Plaintiff, and Approval of Selection of Lead Counsel ("Seeger Decl.), Ex. A. Because the Institutional Investors' motion is timely filed, they are entitled to be considered for appointment as lead plaintiff.

### 2.    The Institutional Investors Have a Large Financial Interest

The Institutional Investors suffered more than $29 million in losses on their purchases of 3M securities during the Class Period. *See* Seeger Decl., Exs. B-C.[3] Thus, the Institutional Investors have a large financial interest in the relief sought by the class.

### 3.    The Institutional Investors Satisfy the Requirements of Rule 23

To benefit from a presumption that it is the most adequate lead plaintiff, a movant also must "satisf[y] the requirements of Rule 23 . . . ." 15 U.S.C. §78u-4(a)(3)(B)(iii)(I)(cc). Rule 23 requires that "the claims or defenses of the

---

[3]    While FvS has the right to bring claims on behalf of its funds directly, out of an abundance of caution and to avoid burdening the Court with any competing movant's potential attack on FvS's standing, each of FvS's funds executed assignments of their claims to FvS before this motion was filed.

4843-0115-7288.v1

representative parties are typical of the claims or defenses of the class; and [that] the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(3)-(4); *Cendant*, 264 F.3d at 263 (inquiry "should be confined to determining whether the movant has made a *prima facie* showing of typicality and adequacy").

The adequacy and typicality requirements "'serve as guideposts for determining whether . . . maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence.'" *Amchem Prods. v. Windsor*, 521 U.S. 591, 626 n.20 (1997). Typicality exists when the plaintiff's claims arise from the same series of events and are based on the same legal theories as the claims of all the class members. *See Cendant*, 264 F.3d at 264-65. In determining whether the movant satisfies the adequacy requirement, courts consider whether the movant "'has the ability and incentive to represent the claims of the class vigorously, [whether it] has obtained adequate counsel, and [whether] there is [a] conflict between [the movant's] claims and those asserted on behalf of the class.'" *Id.* at 265 (alterations in original). The Institutional Investors satisfy both of these requirements.

During the Class Period, the Institutional Investors purchased a substantial amount of 3M common stock at prices artificially inflated by Defendants' alleged materially false and/or misleading statements and omissions, and suffered damages

- 9 -

when the truth was revealed to the market.  Because the Institutional Investors' legal claims are substantially identical to and arise from the same factual predicate as those alleged in the complaints on file in the Related Actions, the Institutional Investors satisfy the typicality requirement.

As noted above, the Institutional Investors seek to recover for substantially the same course of conduct by Defendants and the same injuries for which the rest of the proposed class seeks recovery.  As such, no antagonism exists between the interests of the Institutional Investors and those of absent class members; rather, the interests of the Institutional Investors, whose significant losses provide sufficient interest in the outcome of the case to ensure vigorous advocacy, are squarely aligned with those of the class.   The Institutional Investors have also has demonstrated their adequacy by selecting highly qualified counsel with significant experience and success prosecuting federal securities class actions, both individually and together, to serve as Lead Counsel for the class.  *See infra* §III.C; *see also* Seeger Decl., Exs. D-E.

Further, the Institutional Investors' representatives have evidenced their shared rationale for seeking joint appointment as lead plaintiff and their commitment to actively directing this litigation.  *See* Seeger Decl., Ex. F.  Indeed, the Institutional Investors are precisely the type of sophisticated investors that Congress  intended to empower to lead complex securities class actions, like the current action.  *See*

- 10 -

*Cendant*, 264 F.3d at 244 (finding that the PSLRA was designed "'to increase the likelihood that institutional investors will serve as lead plaintiff'").

Thus, the Institutional Investors satisfy the Rule 23 requirements at this stage.

### C.     The Court Should Approve the Institutional Investors' Selection of Lead Counsel

The PSLRA vests authority in the lead plaintiff to select and retain lead counsel, subject to court approval.  *See* 15 U.S.C. §78u-4(a)(3)(B)(v).  Courts should not disturb a lead plaintiff's choice of counsel unless necessary to "protect the interests of the class."  15 U.S.C. §78u-4(a)(3)(B)(iii)(II)(aa).  Here, the Institutional Investors have selected Robbins Geller and Motley Rice to serve as lead counsel for class. *See* Seeger Decl., Exs. D-E.

Robbins Geller, a 200-attorney firm with offices nationwide, regularly represents clients in complex class action litigation.  *See* Seeger Decl., Ex. D; *see, e.g.*, *Lincoln Adventures LLC v. Those Certain Underwriters at Lloyd's London Members of Syndicates*, No. 2:08-cv-00235-CCC-JAD (D.N.J.) (Robbins Geller successfully represented class of insureds in decade-long complex litigation pending in this Court). District courts throughout the country have noted Robbins Geller's reputation for excellence, which has resulted in the appointment of Robbins Geller attorneys to lead roles in hundreds of complex class action securities cases.  *See, e.g.*, *Grodko v. Cent. European Distrib. Corp.*, 2012 WL 6595931, at \*10 (D.N.J. Dec. 17, 2012) ("Robbins Geller has extensive experience with complex securities litigation and a successful

- 11 -

track record."); *In re Enron Corp. Sec., Derivative & ERISA Litig.*, 586 F. Supp. 2d 732, 797 (S.D. Tex. 2008) (commenting that the "experience, ability, and reputation" of Robbins Geller's attorneys "is not disputed; it is one of the most successful law firms in securities class actions, if not the preeminent one, in the country"). Notably, Robbins Geller has obtained the largest securities fraud class action recovery in the Fifth, Sixth, Seventh, Eighth, Tenth, and Eleventh Circuits.[4]

Motley Rice also has substantial experience representing defrauded investors and a demonstrated history of success serving as lead counsel in numerous securities fraud class actions. The firm's experience in the prosecution of securities class actions is derived from, among other things, its service as sole lead counsel in *In re Barrick Gold Securities Litigation*, No. 1:13-cv-03851 (S.D.N.Y.). The court in that

---

[4]   *See In re Enron Corp. Sec. Litig.*, No. 4:01-cv-03624 (S.D. Tex.) ($7.3 billion recovery is largest securities class action recovery in U.S. history and in the Fifth Circuit); *In re Cardinal Health, Inc. Sec. Litig.*, No. 2:04-cv-00575-ALM (S.D. Ohio) ($600 million recovery is the largest securities class action recovery in the Sixth Circuit); *Lawrence E. Jaffe Pension Plan v. Household Int'l Inc.*, No. 1:02-cv-05893 (N.D. Ill.) ($1.575 billion recovery is the largest securities class action recovery following a trial as well as the largest securities class action recovery in the Seventh Circuit); *In re UnitedHealth Grp. Inc. Sec. Litig.*, No. 0:06-cv-01691-JMR-FLN (D. Minn.) ($925 million recovery is the largest securities class action recovery in the Eighth Circuit); *In re Qwest Commc'ns Int'l, Inc. Sec. Litig.*, No. 1:01-cv-01451-REB-KLM (D. Colo.) ($445 million recovery is the largest securities class action recovery in the Tenth Circuit); *In re HealthSouth Corp. Sec. Litig.*, No. 2:03-cv-01500-KOB-TMP (N.D. Ala.) ($671 million recovery is the largest securities class action recovery in the Eleventh Circuit).

- 12 -

case approved a settlement of $140 million for the class on December 2, 2016.  *See* Seeger Decl., Ex. E.[5]

Robbins Geller and Motley Rice have experience serving as lead counsel with one another and understand the importance of providing comprehensive representation to the class without performing duplicative work.  *See, e.g.*, *Jones v. Pfizer Inc.*, No. 1:10-cv-03864 (S.D.N.Y.) ($400 million recovery); *Bennett v. Sprint Nextel Corp.*, No. 2:09-CV-02122 (D. Kan.) ($131 million recovery); *City of Sterling Heights Gen. Emps.' Ret. Sys. v. Hospira, Inc.*, No. 1:11-CV-08332 (N.D. Ill.) ($60 million recovery); *KBC Asset Mgmt. NV v. 3D Sys. Corp.*, No. 0:15-CV-02393 (D.S.C.) ($50 million recovery).

Accordingly, the Court should approve the Institutional Investors' selection of Robbins Geller and Motley Rice as Lead Counsel for the putative class.

## IV.    CONCLUSION

The Institutional Investors respectfully request that the Court: (i) consolidate the Related Actions; (ii) appoint the Institutional Investors as Lead Plaintiff for the

---

[5] *See also Minneapolis Firefighters' Relief Ass'n v. Medtronic, Inc.*, No. 0:08-cv-06324-PAM-AJM (D. Minn.) ($85 million recovery); *City of Brockton Ret. Sys. v. Avon Prods., Inc.*, No. 1:11-cv-04665 (S.D.N.Y.) ($62 million recovery); *In re Hewlett-Packard Co. Sec. Litig.*, No. 8:11-CV-01404 (C.D. Cal.) ($57 million recovery); *Hill v. State Street Corp.*, No. 1:09-CV-12146 (D. Mass.) ($60 million recovery).

- 13 -

putative class; and (iii) approve the Institutional Investors' selection of Robbins Geller

and Motley Rice as Lead Counsel for the putative class.

DATED:  September 27, 2019

Respectfully submitted,

s/ Christopher A. Seeger

CHRISTOPHER A. SEEGER

SEEGER WEISS LLP
55 Challenger Road, 6th Floor
Ridgefield Park, NJ  07660
Telephone:  212/584-0700
212/584-0799 (fax)
cseeger@seegerweiss.com

Local Counsel

MOTLEY RICE LLC
GREGG S. LEVIN
CHRISTOPHER F. MORIARTY
28 Bridgeside Blvd.
Mt. Pleasant, SC  29464
Telephone:  843/216-9000
843/216-9450 (fax)
glevin@motleyrice.com
cmoriarty@motleyrice.com

ROBBINS GELLER RUDMAN
  & DOWD LLP
SAMUEL H. RUDMAN
58 South Service Road, Suite 200
Melville, NY  11747
Telephone:  631/367-7100
631/367-1173 (fax)
srudman@rgrdlaw.com

- 14 -

ROBBINS GELLER RUDMAN
  & DOWD LLP
DANIELLE S. MYERS
MICHAEL ALBERT
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
dmyers@rgrdlaw.com
malbert@rgrdlaw.com

[Proposed] Lead Counsel for [Proposed]
Lead Plaintiff

- 15 -