# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| In re 3M COMPANY SECURITIES LITIGATION<br><br>This document relates to:<br>ALL ACTIONS. | Case No.: 2:19-cv-15982-CCC-MF<br><br>Hon. Claire C. Cecchi, U.S.D.J.<br>Hon. Mark Falk, U.S.M.J. |

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO TRANSFER VENUE

Eric Todd Kanefsky
CALCAGNI & KANEFSKY LLP
One Newark Center
1085 Raymond Blvd., 14th Floor
Newark, New Jersey 07102
Tel: +1 (862) 397-1796

Meredith Kotler (admitted *pro hac vice*)
Timothy Harkness (admitted *pro hac vice*)
FRESHFIELDS BRUCKHAUS DERINGER US LLP
601 Lexington Avenue
New York, NY 10022
Tel: +1 (212) 277-4000
meredith.kotler@freshfields.com
timothy.harkness@freshfields.com

*Attorneys for Defendants*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ............................................................................... iv

TABLE OF ABBREVIATIONS ......................................................................... vi

PRELIMINARY STATEMENT ........................................................................... 1

BACKGROUND ................................................................................................. 3

    A.    The Instant Federal Securities Complaint ............................................ 3

    B.    Lead Plaintiffs and the Putative Class.................................................. 3

    C.    Defendants............................................................................................. 5

    D.    The Alleged Securities Fraud............................................................... 5

    E.    Additional Litigation Related to the Alleged Securities
          Fraud ..................................................................................................... 8

ARGUMENT....................................................................................................... 9

I.    Legal Framework........................................................................................ 9

II.    This Action "Might Have Been Brought" in the District of
     Minnesota ................................................................................................. 11

III.    The Private Interests Weigh in Favor of Transfer ....................................... 12

    A.    Where the Claims Arose ..................................................................... 12

    B.    Defendants' Forum Preference ........................................................... 14

    C.    Convenience of the Parties, Availability of the Witnesses,
          and Location of Books and Records .................................................... 15

    D.    Plaintiffs' Forum Preference .............................................................. 17

IV.    The Public Interests Weigh in Favor of Transfer ......................................... 19

A.   Practical Considerations That Could Make the Trial Easy, Expeditious, or Inexpensive ...................................................... 19

B.   The Relative Administrative Difficulty Resulting From Court Congestion .............................................................................. 20

C.   Minnesota's Interest in Deciding This Case .................................... 21

CONCLUSION.............................................................................................. 22

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ahrens v. CTI Biopharma Corp.*,
   2016 WL 2932170 (S.D.N.Y. May 19, 2016) .............................................. 13

*In re Amkor Tech., Inc. Sec. Litig.*,
   2006 WL 3857488 (E.D. Pa. Dec. 28, 2006) ......................................... 15-16

*Anthony's LLC v. Babcock*,
   2012 WL 5465376 (D.N.J. Nov. 8, 2012) ................................................... 10

*City of Warren Police & Fire Ret. Sys. v. Zebra Techs. Corp.*,
   2019 WL 3997354 (E.D.N.Y. Aug. 23, 2019) ............................................... 2

*Days Inn Worldwide, Inc. v. Inv. Props. of Brooklyn Ctr.*,
   2009 WL 3153277 (D.N.J. Sept. 25, 2009)................................................. 20

*Days Inns Worldwide, Inc. v. Ram Lodging LLC*,
   2010 WL 1540926 (D.N.J. Apr. 14, 2010)................................................... 21

*Fragola v. Plainville Police Dept.*,
   2016 WL 2943816 (D.N.J. May 20, 2016).................................................. 18

*Gallagher v. Ocular Therapeutix, Inc.*,
   2017 WL 4882487 (D.N.J. Oct. 27, 2017) ........................................... *passim*

*Huang v. Sonus Networks, Inc.*,
   2016 WL 1090436 (D.N.J. Mar. 21, 2016) .......................................... *passim*

*Job Haines Home for the Aged v. Young*,
   936 F. Supp. 223 (D.N.J. 1996)........................................................... *passim*

*Jumara v. State Farm Ins. Co.*,
   55 F.3d 873 (3d Cir. 1995) ....................................................................... 10

*Lifecell Corp. v. Lifenet Health*,
   2016 WL 3545752 (D.N.J. June 28, 2016)............................................ 10-11

*Newhall v. Chase Home Fin. LLC*,
  2010 WL 4387517 (D.N.J. Oct. 28, 2010) ..................................................... 18

*Platinum Partners Value Arbitrage Fund, L.P. v. TD Bank, N.A.*,
  2011 WL 3329087 (D.N.J. Aug. 2, 2011) ....................................... 18, 21, 22

*Prinir (HADAS 1987), Ltd. v. ConAgra Foods Packaged Foods Co.*,
  2008 WL 5169119 (D.N.J. Nov. 21, 2008) ............................... 15, 16, 18, 20

*In re USA Techs., Inc. Sec. Litig.*,
  2019 WL 4785780 (D.N.J. Sept. 30, 2019)........................................... *passim*

*Vieux v. CVS Pharmacy, Inc.*,
  2007 WL 4207799 (D.N.J. Nov. 26, 2007) ..................................... 16-17, 20

*In re Yahoo! Inc.*,
  2008 WL 707405 (C.D. Cal. Mar. 10, 2008) ................................................. 13

*Yang v. Odom*,
  409 F. Supp. 2d 599 (D.N.J. 2006)...................................................... *passim*

## Statutes

15 U.S.C. § 78aa(a) ............................................................................... 11, 12

28 U.S.C. § 1404(a) ................................................................................. 9-10

## TABLE OF ABBREVIATIONS

| | |
|---|---|
| 3M | Defendant 3M Company |
| CAC | Consolidated Amended Complaint for Violations of the Federal Securities Laws, filed December 19, 2019 |
| Defendants | 3M and Messrs. Gangestad, Roman, and Thulin |
| Eisman Decl. | Declaration of Scott A. Eisman in Support of Defendants' Motion to Transfer Venue, executed on Jan. 23, 2020 |
| Exchange Act | Securities Exchange Act of 1934 |
| Flossbach | Lead Plaintiff Flossbach Von Storch Invest S.A. |
| H&GLL | Plaintiff Heavy & General Laborers' Locals 472 & 172 Welfare Fund |
| Individual Defendants | Messrs. Gangestad, Roman, and Thulin |
| Iron Workers Funds | Lead Plaintiff Iron Workers Local 580 Joint Funds |
| Jermeland Decl. | Declaration of Bruce Jermeland in Support of Defendants' Motion to Transfer Venue, executed on Jan. 23, 2020 |
| Lead Plaintiffs | The Rhode Island Fund, the Iron Workers Funds, and Flossbach |
| Mr. Gangestad | Defendant Nicholas C. Gangestad |
| Mr. Roman | Defendant Michael F. Roman |
| Mr. Rousseau | Plaintiff Bruce Rousseau |
| Mr. Thulin | Defendant Inge G. Thulin |
| PFAS | Per- and polyfluoroalkyl chemicals |

| Plaintiffs | H&GLL and Mr. Rousseau |
|---|---|
| PSLRA | Private Securities Litigation Reform Act of 1995 |
| PWC | PricewaterhouseCoopers LLP |
| Rhode Island Fund | Lead Plaintiff State of Rhode Island, Office of the Treasurer on Behalf of the Employees' Retirement System of the State of Rhode Island |
| SEC | U.S. Securities and Exchange Commission |
| SEC Rule 10b-5 | 17 C.F.R. § 240.10b-5 |

Defendants respectfully submit this memorandum of law in support of their Motion to Transfer this action to the United States District Court for the District of Minnesota (St. Paul), pursuant to 28 U.S.C. § 1404(a).

## PRELIMINARY STATEMENT

This putative securities class action has nothing to do with New Jersey. The primary target is 3M—traditionally, "Minnesota Mining and Manufacturing Company"—a company incorporated in Delaware and headquartered in the state that gives it its name. The three Individual Defendants all worked and resided in Minnesota at the relevant times, and two of them still do. Meanwhile, the three Court-appointed Lead Plaintiffs for the putative class are apparently located in Rhode Island, New York, and Luxembourg.

Lead Plaintiffs allege that Defendants made false statements—in SEC filings, during one quarterly earnings conference call, and during one company presentation—"drastically minimiz[ing]," CAC ¶ 6, 3M's potential liability relating to its prior production of certain chemical products (which 3M stopped producing by 2002) and the impact of such potential liability on 3M's financial position. In particular, the securities claims center on 3M's disclosures about its legal exposure in one litigation that 3M ultimately settled in February 2018 for $850 million. But all material aspects of Lead Plaintiffs' securities claims are linked to Minnesota: The allegedly false statements were all prepared at and

issued from 3M's headquarters in Minnesota (except one oral statement made in New York); the allegedly inadequate reserves for 3M's potential liability were set in Minnesota, and were discussed with 3M's outside auditors who are also located in Minnesota; and the settled litigation that forms the focus of Lead Plaintiffs' claims was brought by the Attorney General of Minnesota, in Minnesota state court, about environmental effects in Minnesota. Indeed, the CAC makes only spare, incidental allegations about New Jersey—none of which relate to the alleged defrauding of 3M investors through allegedly false statements.

Transfers pursuant to 28 U.S.C. § 1404(a) in these circumstances are not only appropriate but "routine." *City of Warren Police & Fire Ret. Sys. v. Zebra Techs. Corp.*, 2019 WL 3997354, *7 (E.D.N.Y. Aug. 23, 2019). In securities class actions, the § 1404(a) analysis favors transfer to the district of the defendant company's headquarters because that is where at least one party is located, where the events relevant to the alleged securities fraud usually took place, and where relevant evidence and witnesses tend to be located—just as this Court recently held in transferring the putative securities class action in *In re USA Technologies, Inc. Securities Litigation*, 2019 WL 4785780 (D.N.J. Sept. 30, 2019). And that is exactly the case here. As another court in this district explained: "the question this Court must address is whether, in a class action securities litigation, where the underlying facts have virtually nothing whatsoever to do with the forum state, . . . a

–2–

court must preserve the plaintiff's choice of forum." *Job Haines Home for the Aged v. Young*, 936 F. Supp. 223, 226-27 (D.N.J. 1996). "The answer is clearly 'no.'" *Id.*

## BACKGROUND

### A.    The Instant Federal Securities Complaint

The CAC alleges that Defendants misled investors by issuing false statements that "drastically minimized" 3M's potential liability in connection with its prior production of certain PFAS chemicals, reflecting "trivial reserves" for PFAS-related liability when such liability allegedly "is well into the billions of dollars." CAC ¶¶ 6, 7, 146-151.[1] The allegedly false statements were (i) contained in 3M's Forms 10-K and 10-Q filed with the SEC between February 2017 and April 2019, *id.* ¶¶ 152-172, 175-189, 193-195; and (ii) conveyed during one April 2018 telephonic earnings call and one May 2019 company presentation, *id.* ¶¶ 10, 13, 173, 196. The CAC asserts two claims under the Exchange Act and SEC Rule 10b-5.[2]

### B.    Lead Plaintiffs and the Putative Class

One of the two complaints initially filed and consolidated in this

---

[1] 3M's production of the relevant PFAS chemicals was phased out and ceased by 2002. *See* CAC ¶ 62.

[2] Defendants deny the allegations in the CAC and intend to move to dismiss it in its entirety.

action was brought by H&GLL, which identified itself as based in New Jersey on its Civil Cover Sheet.  ECF No. 1-1.  H&GLL, however, did not step forward to seek appointment as lead plaintiff.  The second complaint was filed by Mr. Rousseau of New York.  Dkt. No. 2:19-cv-17090, ECF No. 1-1.  He too did not step forward.  Rather, this Court appointed as Lead Plaintiffs the three self-named Institutional Investors, none of which are from New Jersey:

- The Rhode Island Fund is a public pension fund organized for the benefit of public employees of Rhode Island, presumably based in Rhode Island (although the fund did not so identify), ECF No. 7-8, ¶ 2;

- The Iron Workers Funds are multiemployer plans, *id.* ¶ 3, which appear to be based in New York (although the funds did not so identify);[3]

- Flossbach is a self-described institutional investor based in Luxembourg, *id.* ¶ 4.

The sworn PSLRA certifications filed by the Rhode Island Fund and the Iron Workers Funds show that, within the last three years, they have litigated or sought to litigate in 18 securities class actions filed across the United States (in California, Colorado, the District of Columbia, Illinois, New York, Pennsylvania, and Texas)—but never in New Jersey.  ECF No. 7-4 at 2, 5.  Meanwhile, their chosen counsel tout their nationwide practices, with offices around the country and experience handling class actions nationwide, including in Minnesota.  ECF No. 7-

---

[3] *See* http://www.ironworkers580.org/contact.aspx.

–4–

1 at 11; ECF No. 7-6 at 2, 6; ECF No. 7-7 at 5, 6.

Together, Lead Plaintiffs represent a putative nationwide class of purchasers of 3M common stock between February 9, 2017 and July 8, 2019, CAC ¶ 1, the members of which they claim are "so . . . geographically dispersed that joinder of all members is impracticable," *id.* ¶ 237.

## C.    Defendants

3M is headquartered in Minnesota and incorporated in Delaware. Eisman Decl. Ex. 3 at 1. It has no corporate offices in New Jersey. Jermeland Decl. ¶ 2.

Mr. Thulin served as 3M's Chairman, President, and CEO until June 2018, and then as 3M's Executive Chairman until June 2019. CAC ¶ 23. Mr. Roman has served as 3M's CEO since July 2018 and as its Chairman of the Board since May 2019. *Id.* ¶ 24. Mr. Gangestad has served as 3M's CFO since 2014. *Id.* ¶ 25. Messrs. Roman and Gangestad maintain their 3M offices in Minnesota and reside there. Jermeland Decl. ¶¶ 3-4. While 3M President and CEO, Mr. Thulin maintained his 3M office and a residence in Minnesota; he currently resides in Florida and Sweden. *Id.* ¶ 5. None of the Individual Defendants has ever resided in New Jersey or maintained offices there. *Id.* ¶¶ 3-5.

## D.    The Alleged Securities Fraud

All of the conduct relevant to this securities fraud action took place in

Minnesota. In asserting that Defendants made false statements about 3M's exposure to PFAS-related liability and its impact on 3M's financial position, the CAC focuses in particular on (i) the litigation reserve for and public statements about 3M's liability in connection with a Minnesota state court lawsuit (concerning prior PFAS manufacturing in Minnesota) that ultimately settled for $850 million, CAC ¶¶ 6, 8, 10, 87, 106, 109-112; and (ii) a contingency reserve of $235 million for, and public statements about potential liability relating to, certain historical PFAS manufacturing operations in Minnesota, Alabama, Illinois, Belgium, and Germany, and at four former landfills in Alabama, *id.* ¶¶ 11, 13, 122-123, 125.

The allegedly false Forms 10-K and 10-Q challenged in the CAC—discussing litigation and contingency reserves, and 3M's exposure to PFAS-related environmental liability, *id.* ¶¶ 152-172, 175-189, 193-195—were all prepared at 3M's Minnesota headquarters and transmitted to the SEC from there. Jermeland Decl. ¶ 6. Mr. Roman's challenged statements during an April 24, 2018 earnings call, CAC ¶ 173, were likewise made from 3M's Minnesota headquarters. Jermeland Decl. ¶ 9.[4] The challenged litigation and contingency reserves, CAC ¶¶ 6, 11, 153, 159, 162, 165, 169, 176, 179, 182, 186, 194, were also reviewed and

_____

[4] Mr. Gangestad's challenged statements during a May 15, 2019 company presentation, CAC ¶ 196, were made during a Goldman Sachs investor conference held at Goldman Sachs' offices in New York (not New Jersey), and the materials and planned remarks for that presentation were prepared at 3M's Minnesota headquarters, Jermeland Decl. ¶ 10.

set at 3M's Minnesota headquarters, and they were discussed with 3M's outside auditors (PWC), also located in Minnesota.  Jermeland Decl. ¶¶ 11-12.[5]  Similarly, the April 25, 2019 "corrective" disclosure—which supposedly partially revealed the truth about what had allegedly been concealed, CAC ¶ 248—was contained in a press release and SEC filing prepared in and issued from 3M's Minnesota headquarters.  Jermeland Decl. ¶ 7.[6]

Indeed, the relevant members of 3M's finance, legal, investor relations, and corporate communications departments—the four departments whose personnel were involved in varying degrees in setting the challenged contingency reserves and preparing and issuing the challenged SEC filings—all work from 3M's Minnesota headquarters and live nearby.  *Id.* ¶¶ 13-14.[7]  All potentially relevant documents from custodians in those departments are likewise maintained at 3M's Minnesota headquarters.  *Id.* ¶ 14.  And the electronic

---

[5] Each 3M Form 10-K issued during the putative class period included a Report of Independent Registered Public Accounting Firm signed by PWC out of its Minneapolis office.  Eisman Decl. Exs. 1 at 54, 2 at 56, and 3 at 55.

[6] The CAC also references 3M's corporate Sustainability Reports, CAC ¶¶ 75, 221-225, which are issued from 3M's Minnesota headquarters, and the 3M personnel who prepare them work from there, Jermeland Decl. ¶ 8.

[7] Additional persons mentioned in the CAC are also located in Minnesota.  The CAC asserts that, in addition to the Individual Defendants, 14 current or former 3M employees engaged in purported insider stock sales.  CAC ¶ 228 & Appendix E.  All 14 work (or worked) at 3M's Minnesota headquarters, and those who are current 3M employees reside in Minnesota; none of the former 3M employees reside in New Jersey.  Jermeland Decl. ¶ 16.

documents and electronic mail communications created, sent, or received by those custodians are maintained locally in Minnesota. *Id.*[8]

In contrast, the CAC's references to New Jersey are few and far between, and it does not allege *any* conduct occurring in New Jersey as a basis for alleged securities fraud. The CAC merely alleges that certain PFAS have been found in New Jersey, among a number of other states, CAC ¶¶ 67, 72; observes that New Jersey's Department of Environmental Protection (along with other regulators) has issued guidelines for the safe concentration of certain PFAS, *id.* ¶ 74; and notes that the New Jersey Attorney General instituted his own environmental lawsuit regarding the prior production of PFAS against numerous companies (including 3M), as did the Attorneys General in several other states, *id.* ¶¶ 135-136, 138.

E.    **Additional Litigation Related to the Alleged Securities Fraud**

Three 3M stockholders have separately commenced derivative actions, in the name of 3M, against 3M's Board of Directors: *Arthur v. Roman*, No. 27-CV-19-19597 (Minn. Dist. Ct. Hennepin Cty. filed Nov. 26, 2019); *Curd v. Roman*, 27-CV-19-20141 (Minn. Dist. Ct. Hennepin Cty. filed Dec. 6, 2019);

---

[8] Those electronic documents are also maintained on cloud-based servers in Chicago, Illinois (not New Jersey), and the 3M personnel who would be responsible for collecting them from the custodians are located in Minnesota. Jermeland Decl. ¶ 14.

*Glaeser v. Thulin*, 2:19-cv-19434-MCA-MAH (D.N.J. filed Oct. 28, 2019).  The

derivative suits reference the securities allegations in this case, and assert claims

for, *inter alia*, common law breach of fiduciary duty and waste of corporate assets,

alleging that 3M's Board improperly allowed 3M to engage in the alleged

securities fraud, thereby exposing 3M to the cost of defending this lawsuit.  Two of

the complaints are pending in Minnesota.  The third, which has not been served on

any defendant, is pending in this District.  The plaintiff in the third case takes no

position on this motion, and has advised that, should transfer be granted, he will

voluntarily transfer his case to Minnesota.  Eisman Decl. Ex. 5.  The defendants in

that action will otherwise move to transfer it.[9]

## ARGUMENT

## I.    LEGAL FRAMEWORK

Pursuant to 28 U.S.C. § 1404(a), "[f]or the convenience of parties and

witnesses, in the interest of justice, a district court may transfer any civil action to

---

[9] When H&GLL filed its initial complaint in this action, it claimed on the Civil Cover Sheet that this case was "related" to another before this Court, *Middlesex Water Co. v. 3M Co.*, No. 18-cv-15366-CCC-JBC (D.N.J. filed Oct. 26, 2018). ECF No. 1-1.  However, the two cases—which are *not* designated as "related"— have nothing in common besides a single defendant and the fact that they both reference PFAS.  The *Middlesex* case is a common law tort action for drinking water contamination, not a federal securities fraud suit.  Moreover, the *Middlesex* action, unlike this one, does relate to New Jersey:  It is being pursued by a New Jersey company that operates local water utility systems in New Jersey, and seeks redress for alleged contamination of New Jersey public drinking water supplies. Neither of the two initial complaints, nor the CAC, reference the *Middlesex* action.

any other district or division where it might have been brought or to any district or division to which all parties have consented." The purpose of § 1404(a) "is to prevent the waste of time, energy and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expenses." *Anthony's LLC v. Babcock*, 2012 WL 5465376, *3 (D.N.J. Nov. 8, 2012) (internal marks omitted).

In ruling on a transfer motion, the court first considers whether the transferee court is one in which the case "might have been brought." *USA Techs.*, 2019 WL 4785780, *2. If so, the court considers whether "the litigation would more conveniently proceed and the interests of justice be better served by transfer to a different forum." *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1995). To guide this assessment of convenience and the interests of justice, the Third Circuit has articulated a list of "private" and "public" interests to consider in making a § 1404(a) determination. *Id.* Private concerns include:

> (1) the plaintiff's original forum choice; (2) the defendant's forum preference; (3) where the claim arose; (4) convenience of the parties; (5) availability of witnesses; and (6) the location of books and records.

*Lifecell Corp. v. Lifenet Health*, 2016 WL 3545752, *2 (D.N.J. June 28, 2016) (citing *Jumara*, 55 F.3d at 879). Public interest concerns include:

> (1) the ability of each forum to enforce the judgment; (2) practical considerations that would make trial more expeditious or inexpensive; (3) court congestion; (4) local interest in deciding the controversy; (5) public policies of each forum; and (6) familiarity with state law in diversity cases.

*Id.*

Under this Third Circuit guidance, this putative securities class action could, and should, have been brought in Minnesota. That is where 3M and two of three Individual Defendants are located, and where the alleged conduct—the dissemination of allegedly false statements about 3M's legal exposure and its impact on 3M's financial position—took place, so jurisdiction and venue lie there. And the private and public interest factors, which similarly focus on the location of the relevant conduct, parties, witnesses, and evidence, confirm that Minnesota is the proper forum for this dispute.

## II.    THIS ACTION "MIGHT HAVE BEEN BROUGHT" IN THE DISTRICT OF MINNESOTA

"A district is one in which an action 'might have been brought' if that district has (1) subject matter jurisdiction over the claims; (2) personal jurisdiction over the parties; and (3) is a proper venue." *Yang v. Odom*, 409 F. Supp. 2d 599, 604 (D.N.J. 2006). These three elements are easily met for Minnesota.

*First*, the District of Minnesota has subject matter jurisdiction over the CAC's claims because they are brought pursuant to the Exchange Act. *See* 15 U.S.C. § 78aa(a) ("The district courts of the United States . . . shall have exclusive jurisdiction of violations of this chapter or the rules and regulations thereunder . . . ."). *Second*, the District of Minnesota's personal jurisdiction over Defendants cannot be questioned, including because 3M is headquartered in

–11–

Minnesota, Jermeland Decl. ¶ 2, two of the Individual Defendants reside there, *id.* ¶¶ 3-4, and the alleged securities fraud took place there. *Third*, the District of Minnesota is a proper venue under the Exchange Act. Pursuant to 15 U.S.C. § 78aa(a), "[a]ny suit or action to enforce any liability or duty created by [the Exchange Act] or rules and regulations thereunder . . . may be brought . . . in the district where the defendant is found or is an inhabitant or transacts business." As discussed, 3M is headquartered in Minnesota and conducts business there, and all but one of the Individual Defendants reside and work in Minnesota.

## III.   THE PRIVATE INTERESTS WEIGH IN FAVOR OF TRANSFER

Beyond the fact that this case "might have been brought" in Minnesota, an analysis of the *Jumara* factors makes clear that it should have been brought there. Each private interest factor—to the extent entitled to any weight— favors transferring this case to Minnesota.

### A.   Where the Claims Arose

This Court has observed that "[w]here the claims arose is the most critical to the Court's [§ 1404(a)] analysis," and "stock fraud claims arise in the state in which the fraudulent statements were made." *USA Techs.*, 2019 WL 4785780, *2.[10]

---

[10] *Accord Gallagher v. Ocular Therapeutix, Inc.*, 2017 WL 4882487, *4 (D.N.J. Oct. 27, 2017); *Huang v. Sonus Networks, Inc.*, 2016 WL 1090436, *3 (D.N.J. Mar. 21, 2016); *Job Haines*, 936 F. Supp. at 230.

As described *supra* at 6-7, all but one of the challenged statements, CAC ¶¶ 152-172, 173, 175-189, 193-196, were prepared in, issued out of, or made from 3M's headquarters in Minnesota (and none were prepared in, issued out of, or made in New Jersey). Jermeland Decl. ¶¶ 6-7, 9-10. Likewise, the challenged reserves, CAC ¶¶ 6, 11, 153, 159, 162, 165, 169, 176, 179, 182, 186, 194, were reviewed and set at 3M's Minnesota headquarters and discussed with 3M's outside auditors, also in Minnesota. Jermeland Decl. ¶¶ 11-12. Given that 3M is headquartered in Minnesota, and that each of the Individual Defendants worked out of 3M's Minnesota headquarters, where the alleged misrepresentations were made, Minnesota "contains the center of gravity" of this case. *See USA Techs.*, 2019 WL 4785780, \*3 (because defendant company was located in Pennsylvania and other defendants worked out of that state where they allegedly made misrepresentations, transfer of securities class action to Pennsylvania was appropriate); *accord Gallagher*, 2017 WL 4882487, \*4 ("significant" factor favoring transfer of securities class action was that alleged misrepresentations were made from defendant company's headquarters).[11]

Meanwhile, the CAC mentions New Jersey only incidentally—and in

---

[11] *See also Huang*, 2016 WL 1090436, \*3 ("locus" of securities class action was where alleged fraudulent statements were made, supporting transfer); *accord Ahrens v. CTI Biopharma Corp.*, 2016 WL 2932170, \*4 (S.D.N.Y. May 19, 2016); *In re Yahoo! Inc.*, 2008 WL 707405, \*9 (C.D. Cal. Mar. 10, 2008).

–13–

a manner that is unrelated to the alleged securities fraud claims. While the CAC alleges that PFAS have been found in New Jersey (and elsewhere), CAC ¶¶ 67, 72, and that New Jersey's Department of Environmental Protection (and other regulators) has issued recommendations regarding safe concentration levels for such chemicals, *id.* ¶ 74, this *securities* case is not about the chemicals themselves, regulation of them, or even environmental harm caused by them. Rather, it is about disclosures 3M made concerning its *potential liabilities* and those liabilities' potential impact on 3M's financial position, and what Defendants knew when those disclosures were made. The CAC does not suggest *any* connection to New Jersey in that regard. To the contrary, while the CAC notes that the New Jersey Attorney General filed a PFAS-related environmental suit against several companies and 3M (as have other state Attorneys General) in May 2019, *id.* ¶¶ 135-136, that New Jersey action was filed *after* the allegedly false statements were made and even after the first supposedly "corrective" disclosure in April 2019—and thus has no bearing on the alleged misrepresentations and what Defendants knew when those statements were made.

In sum, this action "arose" in Minnesota, strongly favoring transfer.

## B.    Defendants' Forum Preference

In bringing this motion, Defendants express their preference for the District of Minnesota, weighing in favor of transfer. *Yang*, 409 F. Supp. 2d at 607.

### C.    Convenience of the Parties, Availability of the Witnesses, and Location of Books and Records

Each of these factors weighs in favor of transfer.

*Convenience of the Parties*.  As described *supra* at 4-5, none of the Lead Plaintiffs is located in New Jersey, and they purport to represent a "geographically dispersed," CAC ¶ 237, nationwide class.  They will have to travel—from as far as Luxembourg—regardless.  Meanwhile, 3M and Messrs. Roman and Gangestad are based in Minnesota.  Jermeland Decl. ¶¶ 2-4.  Courts in this Circuit routinely hold that in cases involving a nationwide securities class action and foreign lead plaintiffs, party convenience favors transferring the case to the defendant company's home forum.  *See Job Haines*, 936 F. Supp. at 231 (in securities class action, "[o]n a 'convenience of the parties' analys[i]s, the defendants win, hands down," because "[a]ll the defendants are located in [the transferee state]," and "potential class members . . . are located . . . all over the United States"); *see also Prinir (HADAS 1987), Ltd. v. ConAgra Foods Packaged Foods Co.*, 2008 WL 5169119, *4 (D.N.J. Nov. 21, 2008) ("From an economic standpoint, it certainly makes sense to conduct a trial where only one party and witnesses have to travel rather than where both parties have to travel.") (internal marks omitted).[12]

---

[12] *Accord USA Techs.*, 2019 WL 4785780, *3; *Gallagher*, 2017 WL 4882487, *4; *Huang*, 2016 WL 1090436, *3; *Yang*, 409 F. Supp. 2d at 607; *see also In re Amkor*

*Availability of Witnesses*.    While the parties have not designated witnesses at this early juncture, the potential relevant witnesses from 3M—those in 3M's finance, legal, investor relations, and corporate communications departments, responsible for preparing 3M's SEC filings and/or reviewing and setting its reserves—as well as 3M's outside auditors are most likely all located in Minnesota.    *See* Jermeland Decl. ¶¶ 11-14.[13]    There is nothing in the CAC to suggest that the relevant witnesses to the alleged securities fraud are located in New Jersey.    This factor thus supports transfer.    *See Prinir*, 2008 WL 5169119, *4 (where plaintiff's claims relate to conduct of defendant company's employees in transferee state, fact that employee witnesses will "likely play a key role in the development of the case" "tips in favor of transfer").[14]

---

*Tech., Inc. Sec. Litig.*, 2006 WL 3857488, *4 (E.D. Pa. Dec. 28, 2006) ("It would clearly be more convenient to hold the trial in [the transferee forum] where two individual defendants . . . would be available to testify without causing disruption to their daily management of [the company].").

[13] Likewise, the 3M employees responsible for preparing 3M's corporate Sustainability Reports, referenced in the CAC, work from 3M's Minnesota headquarters.    Jermeland Decl. ¶ 8.    Additionally, the 14 non-defendant 3M employees identified in Appendix E to the CAC all work (or worked) from 3M's Minnesota's headquarters; the current employees all reside in Minnesota, and none of the former employees reside in New Jersey. *Id.* ¶ 16.    Finally, H&GLL's initial complaint identified certain potential witnesses, including 3M "staff epidemiologist" Geary Olson and 3M spokesperson Fanna Haile-Selassie. ECF No. 1, ¶¶ 26–27.    Both work and reside in Minnesota.    Jermeland Decl. ¶¶ 17-18.

[14] *Accord USA Techs.*, 2019 WL 4785780, *3 ("Given that many witnesses will likely be employees who work from USAT's Pennsylvania headquarters and presumably live nearby . . . this factor weighs in favor of transfer."); *Vieux v. CVS*

*Location of Sources of Proof.* Although courts have noted that technological advances have reduced the significance of this factor in recent years, this factor still carries weight when the relevant books and records are located at the defendant company in the transferee state. *See USA Techs.*, 2019 WL 4785780, *4; *Yang*, 409 F. Supp. 2d at 608. Given that all but one of the challenged statements were prepared at and issued from 3M's headquarters in Minnesota, *see* Jermeland Decl. ¶¶ 6-7, 9-10, there can be little question that the books and records that would be relevant to the preparation of those statements (as well as all documents relevant to the challenged reserves) are located in Minnesota. *See id.* ¶¶ 11-14.[15]

## D. **Plaintiffs' Forum Preference**

That leaves Lead Plaintiffs' choice of forum, but "[t]he choice of forum by a plaintiff is simply a preference; it is not a right." *Huang*, 2016 WL 1090436, *2. That preference is entitled to little or no weight here, for at least three reasons.

*First*, as this Court has observed, "[l]ess deference is accorded to plaintiff's choice of forum when the forum state has a tenuous connection with the

---

*Pharmacy, Inc.*, 2007 WL 4207799, *3 (D.N.J. Nov. 26, 2007).

[15] Likewise, the corporate Sustainability Reports referenced in the CAC, CAC ¶¶ 221-224, and the April 25, 2019 "corrective" disclosure, *id.* ¶ 248, were prepared at and issued from Minnesota. Jermeland Decl. ¶¶ 7-8.

–17–

case"—including where a securities action is brought outside the forum where the defendant company is headquartered and where the allegedly misleading statements were prepared. *See USA Techs.*, 2019 WL 4785780, *3.[16]  The CAC does not identify any alleged misstatement that originated in New Jersey.

*Second*, as this Court has also stated, "deference is curbed where the plaintiff has not chosen his or her home forum. . . .  A foreign plaintiff has no claim to home turf in New Jersey and is not entitled to an enhanced presumption in favor of its choice of forum." *Prinir*, 2008 WL 5169119, *3 (internal citation and marks omitted); *see also USA Techs.*, 2019 WL 4785780, *4.[17]  Here, none of the Lead Plaintiffs has claimed any connection to New Jersey, and two have repeatedly acted or sought to act as representative plaintiffs in securities class actions in *other* jurisdictions around the country. *See supra* at 4.  And while H&GGL, which filed one of the two initial complaints in this consolidated action, claimed a connection to New Jersey, ECF No. 1-1, it chose not to step forward to seek appointment as a

---

[16] *Accord Yang*, 409 F. Supp. 2d at 606 (court "affords less deference to Plaintiff's choice of forum" where "the operative facts of this lawsuit, namely, the dissemination of allegedly materially misleading information, did not occur in New Jersey"); *Job Haines*, 936 F. Supp. at 230 (plaintiff's choice of forum accorded less deference in securities class action where alleged false statements made in California); *see also Fragola v. Plainville Police Dept.*, 2016 WL 2943816, *2 (D.N.J. May 20, 2016) ("[W]hen the bulk of plaintiff's claim occurred in the transferee venue, choice of forum may be disregarded.").

[17] *Accord Platinum Partners Value Arbitrage Fund, L.P. v. TD Bank, N.A.*, 2011 WL 3329087, *3 (D.N.J. Aug. 2, 2011); *Newhall v. Chase Home Fin. LLC*, 2010 WL 4387517, *3 (D.N.J. Oct. 28, 2010); *Yang*, 409 F. Supp. 2d at 606.

lead plaintiff.

*Third*, a plaintiff's choice of forum "becomes substantially less important where he sues representatively on behalf of a class," because "the participation of the class representative is generally minimal and the potential members of the class will likely be scattered across the United States." *Huang*, 2016 WL 1090436, *2 (internal marks omitted).[18] This case illustrates the point, as the CAC itself alleges that members of the putative class are "geographically dispersed." CAC ¶ 237. Accordingly, that this action was initially commenced in New Jersey should be accorded little or no weight here.

## IV. THE PUBLIC INTERESTS WEIGH IN FAVOR OF TRANSFER

The public interest factors are either neutral or weigh in favor of transfer.[19]

### A. Practical Considerations That Could Make the Trial Easy, Expeditious, or Inexpensive

Practical and logistical considerations favor adjudicating this case in the District of Minnesota. As discussed *supra* at 12-17, the alleged securities fraud

---

[18] *Accord Gallagher*, 2017 WL 4882487, *4; *Job Haines*, 936 F. Supp. at 228 ("In a class action, the named plaintiff's testimony and other input is likely to be minimal. . . . Furthermore, plaintiff classes are often comprised of residents of many states.").

[19] As this case arises out of federal law, the enforceability of any judgment, familiarity of the trial judge, and public policies of the fora factors are neutral. *See USA Techs.*, 2019 WL 4785780, *4; *Huang*, 2016 WL1090436, *4.

arose in Minnesota; 3M and two of three Individual Defendants are located there; the potential witnesses are or are likely to be there; and the relevant books and records are located there.  Meanwhile, the putative class members will be dispersed across the country.  *See USA Techs.*, 2019 WL 4785780, \*4 ("As most potential witnesses and at least two defendants are likely to come from [the transferee state], holding the trial there may make the trial easier, more expeditious and less expensive").[20]

## B.    The Relative Administrative Difficulty Resulting From Court Congestion

Transferring this action to Minnesota would also mean that the case could proceed more quickly.  Courts in this District are substantially busier than those in the District of Minnesota.  The most recent report from the federal judiciary indicates that on June 30, 2019, there were 2,108 pending cases per judgeship in this District, compared with 1,337 in the District of Minnesota.  Eisman Decl. Ex. 4.  In addition, for the 12 months ending June 30, 2019, there were 1,422 new civil cases filed per judgeship in this District, compared with 482

---

[20] *Accord Gallagher*, 2017 WL 4882487, \*5; *Days Inn Worldwide, Inc. v. Inv. Props. of Brooklyn Ctr.*, 2009 WL 3153277, \*4 (D.N.J. Sept. 25, 2009) ("Central to [the public interests] analysis is that the operative facts occurred exclusively in the transferee district. . . .  [M]ost of the witnesses and records pertaining to this matter are located within the state of Minnesota.  Thus, it is clear that it will likely be less expensive and more efficient for the case to proceed in the District of Minnesota."); *Prinir*, 2008 WL 5169119, \* 4; *Vieux*, 2007 WL 4207799, \*4.

–20–

per judgeship in Minnesota. *Id.* And during the same timeframe, a median of 47.9 months elapsed between a civil case being filed and trial commencing in this District, as against 24.9 months in Minnesota. *Id.*

These different court activity levels support transfer. *See Huang,* 2016 WL 1090436, *4 (finding greater congestion in New Jersey based on number of cases per judgeship and frequency of filings warranted transfer); *accord Gallagher*, 2017 WL 4882487, *5; *Days Inns Worldwide, Inc. v. Ram Lodging LLC*, 2010 WL 1540926, *7 (D.N.J. Apr. 14, 2010); *Job Haines*, 936 F. Supp. at 234.

### C.  Minnesota's Interest in Deciding This Case

Finally, the District of Minnesota's interest in deciding this case weighs decidedly in favor of transfer. In securities class actions, the company's home forum always has a strong interest in hearing the matter. *See Yang*, 409 F. Supp. 2d at 609 (finding that transferee forum, where company was located, "has a particular local interest in deciding this dispute"). That is because, as here, "the conduct at issue allegedly occurred in that [home] district," *id.*, and there is a local interest in having courts of the home district review the conduct of its corporations and officers, *see Gallagher*, 2017 WL 4882487, *5.[21] In contrast, the CAC

---

[21] *Accord Platinum Partners*, 2011 WL 3329087, *5 ("The scheme was perpetrated by a Florida lawyer through his Florida based law firm. The alleged wrongs committed by TD Bank supposedly occurred in a Florida branch involving

identifies no local New Jersey interest in policing securities disclosures from a Minnesota company.

As this Court aptly explained in transferring the securities class action in *USA Technologies*:

> Pennsylvania has a greater interest in this case than New Jersey as the alleged misrepresentations were made in Pennsylvania by a Pennsylvania company. Pennsylvania courts are particularly suited to addressing these claims because Pennsylvania is the center of gravity and Pennsylvania has a strong interest in regulating activity within its borders.

2019 WL 4785780, *4; *see also Platinum Partners*, 2011 WL 3329087, *5 ("absent an identified public interest in this forum, courts should not impose jury duty on the citizens of New Jersey").

\*    \*    \*

In sum, both the private and public interest factors, to the extent they are applicable or entitled to any weight, weigh strongly in favor of transfer.

## CONCLUSION

For the reasons set forth above, Defendants respectfully request that the Court transfer this action to the United States District Court for the District of Minnesota (St. Paul), pursuant to §1404(a).

---

employees within that branch. It is clear that Florida has a substantially greater interest in the disposition of this case than New Jersey.").

–22–

Dated:       January 24, 2020
             Newark, NJ

By: /s/ Eric T. Kanefsky

**CALCAGNI & KANEFSKY LLP**

Eric Todd Kanefsky
CALCAGNI & KANEFSKY LLP
One Newark Center
1085 Raymond Blvd., 14th Floor
Newark, New Jersey 07102
Tel: +1 (862) 397-1796

**FRESHFIELDS BRUCKHAUS
DERINGER US LLP**

Meredith E. Kotler (admitted *pro hac
vice*)
Timothy P. Harkness (admitted *pro hac
vice*)
601 Lexington Avenue
New York, NY 10022
Tel: +1 (212) 277-4000
meredith.kotler@freshfields.com
timothy.harkness@freshfields.com

*Attorneys for Defendants*

–23–