SEEGER WEISS LLP
CHRISTOPHER A. SEEGER
55 Challenger Road, 6th Floor
Ridgefield Park, NJ  07660
Telephone:  212/584-0700
212/584-0799 (fax)

Liaison Counsel

[Additional counsel appear on signature page.]

UNITED STATES DISTRICT COURT

DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| In re 3M COMPANY SECURITIES LITIGATION | ) ) ) ) | No. 2:19-cv-15982-CCC-MF |
| | ) | CLASS ACTION |
| This Document Relates To: | ) ) ) | Hon. Claire C. Cecchi, U.S.D.J. Hon. Mark Falk, U.S.M.J. |
| ALL ACTIONS. | ) ) ) | |

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANTS' MOTION TO TRANSFER VENUE**

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Battle v. Wal-Mart Stores, Inc.*,
   No. 19-0945, 2019 WL 5290540
   (Oct. 17, 2019) ........................................................................................17

*Bristol-Myers Squibb Co. v. Merck & Co. Inc.*,
   No. 14-1131-GMS, 2015 WL 13683600
   (D. Del. Apr. 29, 2015) ............................................................................16

*Clark v. Burger King Corp.*,
   255 F.Supp. 2d 334 (D.N.J. Apr. 4, 2013)................................................12

*Eastman v. First Data Corp.*,
   No. 10–4860 (WHW), 2011 WL 1327707
   (D.N.J. Apr. 5, 2011) ...............................................................................12

*EVCO Tech. & Dev. Co., LLC v. Precision Shooting Equip., Inc.*,
   379 F. Supp. 2d 728 (E.D. Pa. 2005)........................................................17

*In re Laidlaw Sec. Litig.*,
   No. 91-1289, 1991 WL 170837
   (E.D. Pa. Aug. 27, 1991)...........................................................................13

*In re TCW/Camil Holding L.L.C.*,
   No. 03-1154-SLR, 2004 WL 1043193
   (D. Del. Apr. 30, 2004).....................................................................5, 14, 15

*In re USA Techs., Inc. Sec. Litig.*,
   No. 18-13759, 2019 WL 4785780
   (D.N.J. Sept. 30, 2019) ....................................................................3, 17, 18

*Intel Corp. v. Broadcom Corp.*,
   167 F. Supp. 2d 692 (D. Del. 2001)..........................................................16

*Intellectual Ventures I LLC v. Checkpoint Software Techs. Ltd.*,
   797 F. Supp. 2d 472 (D. Del. 2011)........................................................5, 15

*Jumara v. State Farms Ins. Co.*,
   55 F.3d 873 (3d Cir. 1995) ...............................................................*passim*

*L'Athene, Inc. v. Earthspring LLC*,
   570 F. Supp. 2d 588 (D. De. 2008)................................................5, 15

*Lieberman v. Carnival Cruise Lines*,
   No. Civ.A. 123-4716 JLL, 2014 WL 3906066
   (D.N.J. Aug. 7, 2014).......................................................................17

*Micheel v. Haralson*,
   586 F.Supp. 169 (E.D.Pa. 1983)...................................................4, 13

*Murphy v. Zajac*,
   No. 13-CV-04981, 2017 WL 3732669
   (D.N.J. Apr. 17, 2014) .....................................................................12

*Praxair, Inc. v. ATMI, Inc.*,
   No. Civ. 03-1158-SLR, 2004 WL 883395
   (D. Del. Apr. 20, 2004)................................................................5, 15

*Shutte v. Armco Steel Corp.*,
   431 F.2d 22 (3d Cir. 1970) .......................................................4, 13, 14

*Sovereign Bank, F.S.B. v. Rochester Cmty. Savs. Bank*,
   907 F.Supp. 123 (E.D. Pa. 1995)...............................................4, 13

*Sterling Box Co. v. Touretz*,
   585 F. Supp. 1230 (W.D. Pa. 1984)................................................16

*Zazzali v. Swenson*,
   852 F. Supp. 2d 438 (D.Del. 2012)..................................3, 4, 14, 15

## STATUTES, RULES AND REGULATIONS

28 U.S.C. §1404(a) .........................................................................3, 12, 16

## TABLE OF ABBREVIATIONS

| | |
|---|---|
| 3M or the Company | Defendant 3M Company |
| Complaint or Compl. | Consolidated Amended Complaint For Violations Of The Federal Securities Laws, *In re 3M Co. Sec. Litig.*, No. 2:19-cv-15982-CCC-MF (D.N.J. Dec. 19, 2019) |
| Johnson Decl. | Declaration of Chad Johnson in Support of Plaintiffs' Opposition to Defendants' Motion to Transfer, executed on Feb. 7, 2020 |
| Defendants | 3M, Inge G. Thulin, Michael F. Roman, and Nicholas C. Gangestad |
| Def. Mem. | Defendants' Memorandum of Law in Support of Their Motion to Transfer Venue, filed on Jan. 24, 2020 |
| Eisman Decl. | Declaration of Scott A. Eisman in Support of Defendants' Motion to Transfer Venue, executed on Jan. 23, 2020 |
| HGL Welfare Fund | Plaintiff Heavy & General Laborers' Locals 472 & 172 Welfare Fund |
| Lead Plaintiffs | State of Rhode Island, Office of the Rhode Island Treasurer on behalf of the Employees' Retirement System of the State of Rhode Island, Iron Workers Local 580 Joint Funds, and Flossbach von Storch Invest S.A. |
| Plaintiffs | State of Rhode Island, Office of the Rhode Island Treasurer on behalf of the Employees' Retirement System of the State of Rhode Island, Iron Workers Local 580 Joint Funds, Flossbach von Storch Invest S.A., and Heavy & General Laborers' Locals 472 & 172 Welfare Fund |
| PFAS | Per- and polyfluoroalkyl chemicals |

| SEC | U.S. Securities and Exchange Commission |
|---|---|
| Securities Exchange Act | Securities Exchange Act of 1934 |

## PRELIMINARY STATEMENT

Plaintiffs respectfully submit that the Court should reject Defendants' venue transfer motion. This case has substantial connections to this District, and the interests of justice and of the parties strongly favor litigation here. The claims arise from Defendants' knowing manufacture and distribution of poisonous materials to the public and Defendants' concealment of that misconduct. That misconduct had profound ramifications for the citizens of New Jersey and the surrounding areas, whose water supplies are among the most polluted with PFAS – the toxic "forever chemicals" that Defendants distributed for years.

Defendants wrongly assert that this "action has nothing to do with New Jersey." Def. Mem. at 1. In reality, there is a strong public interest in this litigation proceeding here. As alleged in the Complaint, at least one in five citizens of New Jersey are already estimated to have PFAS in their drinking water. Researchers continue to identify instances of PFAS contamination in New Jersey in increasing numbers. 3M is embroiled in litigation with the State of New Jersey concerning this misconduct and is the subject of several other PFAS-related lawsuits in this District.

Plaintiff HGL Welfare Fund, which filed the first complaint in this action, is located in New Jersey and remains an active plaintiff in this action. HGL Welfare Fund respectfully submits herewith a declaration opposing the transfer of this action

from New Jersey.[1]  Lead Plaintiffs are based in Rhode Island, New York City, and Luxembourg.  This District is far preferable for all Plaintiffs, a factor entitled to great weight.

In contrast, 3M is a global Fortune 100 company operating on a national and international scale – including in New Jersey – and bears a heavy burden to show that litigation in New Jersey would represent a unique or undue burden to Defendants. Defendants cannot satisfy this standard.  3M cannot make any reasonable claim that litigation in this District subjects it to some unique or undue burden.  Defendants do not even try.

For these reasons, and as discussed in further detail below, the Court should reject Defendants' motion to transfer this case to the District of Minnesota and allow the litigation to continue here.

## I.    ARGUMENT

The public interest and the interests of the parties are best served by the litigation of this action in this District.  Defendants prefer to avoid this Court and

---

[1]    *See* Ex. 1 to the Johnson Decl. (hereinafter, references to "Ex. __" refer to Exhibits to the Johnson Decl.).

demand a venue transfer.[2]  The Court should deny their motion.  Defendants cannot satisfy their burden and Plaintiffs' choice of forum should not be disturbed.

Under 28 U.S.C. §1404(a), "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought[.]"  28 U.S.C. §1404(a).  The statute gives this Court "broad discretion to determine, on an individualized, case-by-case basis, whether convenience and fairness considerations weigh in favor of transfer." *Jumara v. State Farms Ins. Co.*, 55 F.3d 873, 883 (3d Cir. 1995).[3]  These considerations all strongly support allowing this action to proceed in the District of New Jersey.

Defendants bear a heavy "burden of establishing the need for transfer[.]" *Id.* at 879; *see also In re USA Techs., Inc. Sec. Litig.*, No. 18-13759, 2019 WL 4785780, at *2 (D.N.J. Sept. 30, 2019) ("Defendants have the burden of showing that transfer is appropriate."); *Zazzali v. Swenson*, 852 F. Supp. 2d 438, 447 (D.Del. 2012) ("[T]he burden rests squarely on the party seeking a transfer to establish that a balancing of proper interests weighs in favor of the transfer.  That burden is a heavy one.").

---

[2]  Notably, Defendants bring their motion more than six months after the initial action was filed, after Plaintiffs filed their Consolidated Amended Complaint, and shortly before their motion to dismiss was due.

[3]  Unless otherwise noted, all citations and internal quotation marks are omitted and all emphasis is added.

At the same time, "the plaintiff's choice of venue should not be lightly disturbed." *Jumara*, 55 F.3d at 879.  Thus, "unless the balance of convenience of the parties is strongly in favor of defendant, the plaintiff's choice of forum should prevail." *Shutte v. Armco Steel Corp.*, 431 F.2d 22, 25 (3d Cir. 1970).

Defendants' burden is heightened further where, as here, Plaintiffs pursue claims based on the federal securities laws.  *See, e.g., Sovereign Bank, F.S.B. v. Rochester Cmty. Savs. Bank*, 907 F.Supp. 123, 126 (E.D. Pa. 1995) ("[T]he presumption in favor of plaintiff's choice of forum is even stronger in cases brought under the Exchange Act's liberal venue provision, since it represents an affirmative congressional policy choice to allow plaintiffs in securities cases the widest possible choice of forums in which to sue."); *Micheel v. Haralson*, 586 F.Supp. 169, 172 (E.D.Pa. 1983) (citing *Shutte,* 431 F.2d at 25, and indicating that plaintiff's choice is entitled to "even greater weight" where the case at issue concerns a Securities Exchange Act claim).

Moreover, Defendants' venue preferences are entitled to little weight because 3M is a multinational conglomerate corporation with operations on a national and international scale.  *See, e.g.*, Compl. ¶¶2, 22.  "When transfer is sought by a defendant with operations on a national or international scale, that defendant must prove that litigating in [New Jersey] would pose a unique or unusual burden on [its] operations." *Zazzali*, 852 F. Supp. 2d at 447 ("Unless the defendant is truly regional

in character – that is, it operates essentially exclusively in a region that does not include [the forum state] – transfer is often inappropriate."); *see also Praxair, Inc. v. ATMI, Inc.*, No. Civ. 03-1158-SLR, 2004 WL 883395, at \*1 (D. Del. Apr. 20, 2004); *L'Athene, Inc. v. Earthspring LLC*, 570 F. Supp. 2d 588, 592 (D. De. 2008); *Intellectual Ventures I LLC v. Checkpoint Software Techs. Ltd.*, 797 F. Supp. 2d 472, 477 (D. Del. 2011); *In re TCW/Camil Holding L.L.C.*, No. 03-1154-SLR, 2004 WL 1043193, at \*1 (D. Del. Apr. 30, 2004).

The Third Circuit Court of Appeals has set forth a series of "private interest" and "public interest" factors governing venue transfer motions. *Jumara*, 55 F.3d at 879. As detailed below, both public and private interests support maintaining this case in this District. Defendants cannot carry their heavy burden to justify a venue transfer and the Court should not disturb Plaintiffs' chosen forum.

### A.     The Public Interest Supports Litigation in this District

The public interest strongly favors allowing this action to proceed in this District.[4] This action arises from Defendants' sale and distribution of toxic chemicals to the public – including into New Jersey – and their concealment of the consequences of that misconduct. Compl. ¶3. That misconduct caused acute harm to the citizens of

---

[4]   The "public interest" factors governing a venue transfer motion include: "the enforceability of the judgment; practical considerations that could make the trial easy, expeditious, or inexpensive; the relative administrative difficulty in the two fora resulting from court congestion; the local interest in deciding local controversies at home; [and] the public policies of the fora[.]" *Jumara*, 55 F.3d at 879.

New Jersey. The drinking water of at least one in five citizens of New Jersey is contaminated by PFAS.[5] To date, scientists have identified over five hundred New Jersey drinking water systems contaminated by these "toxic forever chemicals[.]"[6] As one scientist involved with the research explained: "The more we test, the more we are finding that these contaminants are pervasive, especially across New Jersey[.]"[7] Defendants' central argument that this "action has nothing to do with New Jersey" is wrong. Def. Mem. at 1. The public interest in litigating this action here is significant.

The Court should reject Defendants' effort to reframe and falsely narrow the allegations of the Complaint to a sterile accounting issue. To the contrary, the Complaint makes clear that this case is about 3M knowingly selling toxic products to the public and hiding that fact. *See, e.g.*, Compl. ¶3 ("3M knowingly sold toxic

---

[5]  For example, according to Northjersey.com (an affiliate of USA Today): "One in five residents get contaminated tap water. NJ is ordering companies to clean it up." Scott Fallon & Russ Zimmer, *One in five residents get contaminated tap water. NJ is ordering companies to clean it up,* NORTHJERSEY.COM (Mar. 25, 2019), https://www.northjersey.com/story/news/environment/2019/03/25/3-m-dupont-ordered-clean-pfoa-pfos-drinking-water-nj-dow-teflon/3266786002/; *see also* Russ Zimmer, *1 in 5 in NJ drink water contaminated with PFOA,* NORTHJERSEY.COM (Jul. 16, 2017), https://www.northjersey.com/story/news/2017/07/26/nj-drink-water-contaminated-pfoa/104009306/.

[6]  John Hurdle, *Toxic 'Forever Chemicals' Found in More Than 500 New Jersey Water Systems...* (Nov. 5, 2019), NJ SPOTLIGHT https://www.njspotlight.com/2019/11/toxic-forever-chemicals-found-in-more-than-500-new-jersey-water-systems/.

[7]  *Id.*

poisons to the public for decades.  Defendants concealed and did not disclose that fact. Defendants had every reason to know about this misconduct.").  3M's poisoning of communities, including many in New Jersey, is at the heart of this case.

The Complaint contains numerous specific references to that misconduct and its ramifications for New Jersey and other areas.  For example, the Complaint alleges that "nearly one in five New Jersey residents ha[s] received tap water that contained at least trace amounts of . . . PFAS[.]" Compl. ¶136.  Similarly, the Complaint describes a Harvard study concluding that "PFAS contaminated water was detected in water supplies all over the United States, including in densely populated states like New Jersey and (eastern) Pennsylvania." *Id*. ¶72.  Notably, the Complaint includes a map from that study depicting New Jersey as the *only* State with virtually all its land mass afflicted by PFAS:



*Id.* (magnification added).

The Complaint also details a March 2017 report published by the New Jersey Department of Environmental Protection indicating that PFOA (a subset of PFAS) "was found in samples from approximately 60% of the 80 [New Jersey public water systems] tested." *Id*. ¶74. That report also explained that "the occurrence of PFOA and perflorinated compounds (PFCs) in public water supplies (PWC) has been evaluated more extensively in New Jersey than in most or all other states." *Id*.

The Complaint also includes allegations concerning litigation by the State of New Jersey against 3M and others related to the manufacture and sale of firefighting foam products containing PFAS for decades in New Jersey – a strong reflection of New Jersey's public interest in the subject matter of this case. *Id*. ¶135. The

- 8 -

Complaint specifies that New Jersey's lawsuit notes that "nearly one in five New Jersey residents had received tap water that contained at least trace amounts of . . . PFAS[.]" *Id.* ¶136. In response to an information request from the New Jersey Department of Environmental Protection Statewide PFAS Directive, the Company identified multiple former 3M sites in New Jersey that used or stored PFAS. *See* Ex. 2.

The Complaint alleges further that more recent findings show that PFAS contamination in New Jersey is even greater than previously known by the public. For example, the Complaint cites the Center for Research on Globalization's report in August 2019 that PFAS had been detected in "more than 500 New Jersey drinking water systems and groundwater sources." *Id.* ¶136 n.1. Since the Complaint's filing, the Environmental Working Group has identified 517 specific water sources in New Jersey contaminated with PFAS, including numerous elementary schools, residential areas, and businesses. *See* Ex. 3. Indeed, a map published by the Environmental Working Group shows that no other state in the country exhibits the massive concentration of PFAS contamination in New Jersey and its environs:



This map helps show that New Jersey has a paramount public interest in this litigation, far greater than the District of Minnesota. Indeed, statistics published with this map show that North Bergen, New Jersey has nearly four times the levels of PFAS in its water supply compared to Minneapolis, Minnesota.[8]  The Court should reject Defendants' suggestion that Minnesota has a greater interest in this case than New Jersey.

The Court should likewise reject Defendants' arguments about the supposed convenience of litigating in Minnesota.  As a multinational corporation, the

---

[8]    According to statistics from the Environmental Working Group, tap water tests in North Bergen, New Jersey, revealed contamination of 51.4 parts per trillion compared to tests from Minneapolis, Minnesota, showing only 14.2 parts per trillion.  Sydney Evans et al., *PFAS Contamination of Drinking Water Far More Prevalent Than Previously Reported* EWG HOME (Jan. 22, 2020), https://www.ewg.org/research/national-pfas-testing/.

Company's preference to litigate in Minnesota is entitled to little weight, particularly where, as here, the Company is already involved in related litigation in this District.[9]

Defendants' speculation that no trial witnesses would come from this District or the surrounding areas is unfounded. Defendants overlook that the Lead Plaintiffs and other Plaintiffs named in the Complaint – all potential witnesses – are in New Jersey, in the Northeast of the United States, or in Europe, all far more convenient to this District than to Minnesota. Defendants also overlook potential trial witnesses from the District of New Jersey, from surrounding areas, or from other regions convenient to New Jersey. For example, the Complaint alleges that 3M manufactured PFAS in Belgium, Germany, and Alabama (Compl. ¶145), and this District is more accessible from those regions than Minnesota.

Moreover, the Complaint alleges the concealment of massive PFAS-related liabilities – *i.e.*, concealment of the harm that 3M inflicted on communities across the country and overseas. The extent of that harm goes to several elements of Plaintiffs' claims – *e.g.*, the extent of harm is relevant to the materiality of the concealed

---

[9]    3M is a defendant in at least the following PFAS-related actions in this District: *New Jersey Dep't of Envtl. Prot.* v. *E.I. Dupont De Nemours & Co.*, No. 1:19-cv-14765 (D.NJ. 2019); *New Jersey Dep't of Envtl. Prot. v. E.I. Dupont De Nemours & Co.*, No. 3:19-cv-14767 (D.N.J. 2019); *New Jersey Dep't of Envtl. Prot.* v. *E.I. Dupont De Nemours & Co.*, No. 1:19-cv-14766 (D.N.J. 2019); *Giordano v. Solvay Specialty Polymers USA, LLC*, No. 1:19-cv-21573 (D.N.J. 2019); *Middlesex Water Co. v. 3M Co.*, No. 2:18-cv-15366 (D.N.J. 2018); *Occidental Chem. Corp. v. 21st Century Fox Amer., Inc.*, No. 2:18-cv-11273 (D.N.J. 2018); and *Glaeser v. Thulin*, No. 2:19-cv-19434 (D.N.J. 2019).

information, as well as to the widespread knowledge of that harm within the Company.  Given the concentration of PFAS-contamination in New Jersey and surrounding Districts, the Court should not credit Defendants' conjecture about the location of witnesses.

Finally, the Court should reject Defendants' last-ditch argument about the supposed greater efficiencies that exist in Minnesota as compared to this District. Defendants own statistics reveal that the median time from filing to disposition for civil cases is just 5 months for the District of New Jersey compared to 9.1 months for the District of Minnesota.  *See* Eisman Decl. Ex. 4.  Moreover, Defendants actually fail to cite the most recent judicial statistics, which show that for the 12-month period ended September 30, 2019, the District of New Jersey's median time from filing to disposition for civil cases was only 9 months compared to 21.6 months for the District of Minnesota.  Ex. 4.  Regardless, a comparison of judicial administration cannot overcome the powerful public interest in this litigation proceeding in New Jersey.[10]

---

[10]  *See, e.g., Eastman v. First Data Corp.*, No. 10–4860 (WHW), 2011 WL 1327707, at *5 (D.N.J. Apr. 5, 2011) (finding that this factor did not "tip the balance in favor of either part[y]" where the parties presented conflicting data regarding comparative court congestion); *Murphy v. Zajac*, No.13-CV-04981 JILL JAD, 2017 WL 3732669, at *5 (D.N.J. Apr. 17, 2014); *see also Clark v. Burger King Corp.*, 255 F.Supp. 2d 334, 339 (D.N.J. Apr. 4, 2013) ("[A]lthough court's may consider calendar congestion in ruling upon a §1404(a) motion, relative congestion of the respective courts dockets is not a factor of great importance in this type of motion.").

## B.     The Private Interests Favor Litigation in This District

The private interests of the parties also support litigation in this District.[11] Plaintiffs' choice of this forum is entitled to great weight and the interests of Plaintiffs all favor this District. In contrast, Defendants cannot show any unique or undue burden from litigating here and their preference for the District of Minnesota is entitled to minimal weight in connection with this venue transfer motion.

Plaintiffs' choice of this forum is entitled to significant deference. *Shutte*, 431 F.2d at 25 ("It is black letter law that a plaintiff's choice of a proper forum is a paramount consideration in any determination of a transfer request, and that choice [] should not be lightly disturbed."). In this case, Plaintiffs' selection of the District of New Jersey is entitled to "even greater weight" because the claims arise under the Securities Exchange Act. *Micheel*, 586 F.Supp. at 172; *see also Sovereign Bank*, 907 F.Supp. at 126; *In re Laidlaw Sec. Litig.*, No. 91-1289, 1991 WL 170837, at *2 (E.D. Pa. Aug. 27, 1991).

---

[11] The "private interest" factors governing venue transfer motions include: "plaintiff's forum preference as manifested in the original choice; the defendant's preference; whether the claim arose elsewhere; the convenience of the parties as indicated by their relative physical and financial condition; the convenience of the witness – but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum)." *Jumara,* 55 F.3d at 879.

New Jersey-based named plaintiff HGL Welfare Fund commenced this action in this District. The HGL Welfare Fund provides benefits and pensions to laborers in the State of New Jersey. *See* Ex. 1. The Fund is specifically named as a plaintiff in the operative Complaint and has been involved in this case from the beginning. *Id.*; Compl. ¶1. As reflected in the declaration filed herewith on its behalf, the HGL Welfare Fund's interest in this action is not limited to its pure financial stake, but also derives from its concern with the impact that 3M's underlying misconduct had on communities within this District, as alleged in this case. *See* Ex. 1. Further, the operative Complaint in this consolidated case contains substantial and specific allegations concerning this District. *See supra* at 7-9, 11. Plaintiffs' choice of this District is, therefore, entitled to "paramount consideration[.]" *Shutte*, 431 F.2d at 25.[12]

Conversely, Defendants' preference for the District of Minnesota, or their displeasure with litigation in this District, is beside the point. *See, e.g.*, *In re TCW/Camil*, 2004 WL 1043193, at \*1 ("A plaintiff's choice of forum is entitled to be accorded substantial weight and courts should only transfer venue if the defendant is truly regional in character."); *Zazzali*, 852 F. Supp. 2d at 447 ("Unless the defendant is

---

[12] Defendants rely on several inapposite cases to argue that Plaintiffs' choice of this forum is not entitled to deference because Lead Plaintiffs are not from New Jersey. Def. Mem. at 18. None of those cases involve an action like this one, commenced in New Jersey by a New Jersey-based institutional investor that remains actively involved in the litigation, including by appearing as a named plaintiff in the operative Complaint and submitting a sworn declaration describing its choice of New Jersey as a forum in opposition to a venue transfer motion.

truly regional in character – that is, it operates essentially exclusively in a region that does not include [the forum state] – transfer is often inappropriate."); *Praxair*, 2004 WL 883395, at *1; *L'Athene*, 570 F.Supp. 2d at 592; *Intellectual Ventures*, 797 F. Supp. 2d at 477.

3M is an enormous multinational corporation operating on a global scale, not a small regional company. For example, according to its most recent annual report (filed on February 7, 2019 with the SEC on Form 10-K) 3M describes itself as a "diversified technology company with a global presence" including "75 manufacturing facilities in 29 states" and "107 manufacturing and converting facilities in 36 countries." Similarly, the annual report indicates that 3M has 37,412 employees spread throughout the United States and 56,104 employees overseas.

Given its self-proclaimed "global presence," 3M must demonstrate a "unique or unusual burden" to justify a venue transfer. *See Zazzali*, 852 F. Supp. 2d at 447; *Praxair*, 2004 WL 883395, at *1; *L'Athene*, 570 F.Supp. 2d at 592; *Intellectual Ventures*, 797 F. Supp. 2d at 477; *In re TCW/Camil*, 2004 WL 1043193, at *3.

Defendants do not even try to satisfy the "unique or unusual burden" standard. Nor could they. 3M "is a multi-billion dollar company that does business on an international scale. Furthermore, the conveniences of modern travel and communication technology have made it more difficult to argue that litigating in a

- 15 -

particular forum is inconvenient for the parties and witnesses." *Intel Corp. v. Broadcom Corp.*, 167 F. Supp. 2d 692, 706 (D. Del. 2001) (denying Section 1404(a) transfer motion); *see also Bristol-Myers Squibb Co. v. Merck & Co. Inc.*, No. 14-1131-GMS, 2015 WL 13683600, at *1 n.1 (D. Del. Apr. 29, 2015) (finding no undue financial burden on a defendant corporation "with global reach and annual revenues in the billions"); *Sterling Box Co. v. Touretz*, 585 F. Supp. 1230, 1235 (W.D. Pa. 1984) ("A plaintiff's choice of forum should not be disturbed unless the defendant can show that such forum would cause ***oppressive inconveniences***. . . . This is a ***heavy burden on the defendant***, and the balance of interests must weigh strongly in defendant's favor.")

3M cites no particular "unique or undue burden" arising from litigation in this District, let alone any "oppressive inconveniences." In fact, a close review of their papers reveals that Defendants have articulated no burden at all, focusing instead on their preference for litigating this action in Minnesota. Furthermore, 3M is already involved in numerous PFAS-related lawsuits in this District, minimizing any purported inconvenience to the Company of a marginal increase in New Jersey litigation. S*ee supra* note 9. Relatedly, *Jumara* requires analysis of "the convenience of the parties ***as indicated by their relative physical and financial condition***" and, here, Defendants make no effort to explain how a massive global corporation with $32 billion in sales and multiple ongoing lawsuits in New Jersey would have meaningful

difficulty participating in litigation in this District. *Id.*, 55 F.3d. at 879. Defendants' silence on this point alone warrants denial of their motion.[13]

In any event, a "[d]efendant's preference is entitled to considerably less weight than Plaintiff's, as the purpose of a venue transfer is not to shift inconvenience from one party to another." *USA Techs.*, 2019 WL 4785780, at *3 (quoting with approval *EVCO Tech. & Dev. Co., LLC v. Precision Shooting Equip., Inc.*, 379 F. Supp. 2d 728, 730 (E.D. Pa. 2005)). Here, as discussed *supra* at 11, this District is far more convenient for Plaintiffs than Minnesota.

Finally, Defendants' reliance on this Court's decision in *USA Technologies* is misplaced. That case did not arise from misconduct with direct and severe consequences for the citizens of New Jersey. 3M is also a massive company with national and international operations, whereas the defendant in *USA Technologies* was a small regional company. For example, in contrast to 3M's facilities in 29 states and operations in 36 countries, according to USA Technologies' most recent annual report (filed on October 9, 2019 with the SEC on Form 10-K), the majority of its operations are in Malvern, Pennsylvania (the transferee jurisdiction) and it has only three

---

[13] *See, e.g., Lieberman v. Carnival Cruise Lines*, No. Civ.A. 123-4716 JLL, 2014 WL 3906066, at *13 (D.N.J. Aug. 7, 2014) ("Nothing in the record indicates that Defendant, a large company, is financially or physically unable to litigate in New Jersey. This factor therefore weighs against transfer."); *Battle v. Wal-Mart Stores, Inc.*, No. 19-0945, 2019 WL 5290540, at *2 (Oct. 17, 2019) ("Defendants have not apprised the court that they face any physical or financial limitations. As such, the fourth private interest factor does not weigh in favor of transfer.").

- 17 -

substantially smaller facilities in other U.S. cities.  Similarly, according to its annual report, USA Technologies has a total of 118 employees (not including its 8 part-time employees), a far cry from 3M's more than 90,000 employees worldwide. Furthermore, unlike 3M, USA Technologies was not already involved in multiple lawsuits within this District.  And, unlike *USA Technologies* – in which "[n]either Plaintiff nor any of the Named Plaintiffs reside in New Jersey," 2019 WL 4785780, at *3 – in this case, the HGL Welfare Fund is a New Jersey-based named plaintiff that actually filed the first case in this matter and continues its involvement in this case.

## II.   CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court deny Defendants motion to transfer venue to the District of Minnesota and permit this action to proceed in this District.

DATED:  February 7, 2020          SEEGER WEISS LLP
                                  CHRISTOPHER A. SEEGER


                                  _*/s/ Christopher A. Seeger*_
                                  CHRISTOPHER A. SEEGER

                                  55 Challenger Road, 6th Floor
                                  Ridgefield Park, NJ  07660
                                  Telephone:  212/584-0700
                                  212/584-0799 (fax)
                                  cseeger@seegerweiss.com

                                  *Liaison Counsel*

- 18 -

ROBBINS GELLER RUDMAN
  & DOWD LLP
CHAD JOHNSON*
NOAM MANDEL*
DESIREE CUMMINGS (*Pro Hac Vice*
pending)
125 Park Avenue, 25th Floor
New York, NY  10017
Telephone:  212/791-0567
chadj@rgrdlaw.com
noam@rgrdlaw.com
dcummings@rgrdlaw.com

ROBBINS GELLER RUDMAN
  & DOWD LLP
PAUL J. GELLER
120 East Palmetto Park Road, Suite 500
Boca Raton, FL  33432
Telephone:  561/750-3000
561/750-3364 (fax)
pgeller@rgrdlaw.com

ROBBINS GELLER RUDMAN
  & DOWD LLP
SAMUEL H. RUDMAN
ROBERT D. GERSON*
58 South Service Road, Suite 200
Melville, NY  11747
Telephone:  631/367-7100
631/367-1173 (fax)
srudman@rgrdlaw.com
rgerson@rgrdlaw.com

ROBBINS GELLER RUDMAN
  & DOWD LLP
ARTHUR C. LEAHY*
ROBERT R. HENSSLER JR.*
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
artl@rgrdlaw.com
bhenssler@rgrdlaw.com

MOTLEY RICE LLC
GREGG S. LEVIN*
JOSH LITTLEJOHN*
CHRISTOPHER F. MORIARTY*
MAX N. GRUETZMACHER*
28 Bridgeside Blvd.
Mt. Pleasant, SC  29464
Telephone:  843/216-9000
843/216-9450 (fax)
glevin@motleyrice.com
jlittlejohn@motleyrice.com
cmoriarty@motleyrice.com
mgruetzmacher@motleyrice.com

*Lead Counsel for Lead Plaintiff*

*\* Admitted Pro Hac Vice*

- 20 -

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 7, 2020, I caused the foregoing Plaintiffs'
Memorandum of Law in Opposition to Defendants' Motion to Transfer Venue,
Declaration of Chad Johnson, and related exhibits to be filed with the Clerk of the
Court using the CM/ECF system, which will send notifications to all counsel of
record.


<u>/s/ Christopher A. Seeger</u>
Christopher A. Seeger