# EXHIBIT 2

# BRESSLER AMERY ROSS

A PROFESSIONAL CORPORATION

325 Columbia Turnpike  ▪  Suite 301  ▪  Florham Park, NJ 07932

P. O. Box 1980  ▪  Morristown, NJ 07962

973.514.1200  ▪  fax 973.514.1660

www.bressler.com

Donald J. Camerson, II
Member

direct: 973-660-4433
djcamerson@bressler.com

April 25, 2019

**Via Federal Express**
Michael Gordon, Senior Advisor, Office of the Deputy
    Commissioner for Legal and Regulatory Affairs
401 East State Street
7th Floor
Trenton, NJ 08625

### RE:    Statewide PFAS Directive, Information Request and Notice to Insurers

Dear Mr. Gordon:

I write on behalf of 3M Company ("3M") in response to the Department of Environmental Protection's ("DEP")'s Statewide PFAS Directive, Information Request, and Notice to Insurers (the "Directive"), dated March 25, 2018 and served on March 26, 2018. The Directive appears to primarily target Solvay, DuPont, and related entities for alleged discharges of poly- and perfluoroalkyl substances ("PFAS"). The Directive also names 3M as a manufacturer of perfluorooctanoic acid ("PFOA") and perfluorooctanesulfonic acid ("PFOS") supplied to Solvay, DuPont, and others. 3M shares DEP's concern for public health and the environment and fully intends to comply with its obligations under New Jersey law. As set forth below, however, 3M respectfully submits that it is not liable under New Jersey law for funding DEP's future costs, as the Directive requests. 3M further believes that some of DEP's information requests are overly broad, indefinite, and beyond DEP's statutory authority and seeks to work with DEP to clarify and narrow the requests accordingly.

3M submits this letter in response to the Directive, the allegations of which it expressly denies,[1] to set forth on the record 3M's reasons for not complying with the Directive, including all good cause defenses, in accordance with N.J.A.C. 7:26C-4.2(h). This letter is submitted without prejudice to any defenses that 3M may have to the Directive (including but not limited to those defenses provided by the Spill Act and the other Acts cited in the Directive including WPCA,

---

[1] Except as otherwise provided, 3M denies the allegations directed at it in the Findings section of the Directive, including, but not limited to paragraph 22 that 3M is "responsible for significant PFAS contamination across New Jersey and the cost the Department has incurred and will incur responding to this threat to public health, safety and the environment" and the allegations set forth in paragraphs 42-46. 3M is not a discharger of a hazardous substance or "in any way responsible" for the discharge of hazardous substances in New Jersey. The other allegations in the Findings section are either not directed at 3M or contain statements for which 3M is without knowledge or information.

5369125

New Jersey  ▪  New York  ▪  Florida  ▪  Alabama

April 25, 2019
Page 2

APCA, and SWMA) and without any admission of liability on its part with respect to the Directive or the allegations set forth therein. Furthermore, 3M fully reserves the right to supplement and/or amend the reasons set forth herein, or as may be disclosed by further investigation once additional information becomes available.

## Directive to Fund Future Costs

The Spill Compensation and Control Act (the "Spill Act") prohibits "[t]he discharge of hazardous substances" (N.J.S.A. § 58:10-23.11c) and imposes liability on "any person who has discharged a hazardous substance, or is in any way responsible for any hazardous substance." *Id.* § 58:10-23.11g(c)(1). DEP does not allege that 3M discharged PFOA or PFOS. Rather, DEP alleges that by manufacturing and selling PFOA and PFOS, 3M is purportedly "in any way responsible." Directive ¶¶ 42-46. On that basis, DEP directs that 3M and the other Respondents "meet collectively with the Department to discuss a good faith estimate for future costs to investigate, test, treat, cleanup, and remove PFNA, PFOA, and PFOS from New Jersey's environment and discuss Respondent's establishment of funding sources for same," which DEP estimates will cost "hundreds of millions of dollars." *Id.* ¶¶ 49, 67.

DEP's attempt to hold 3M liable for alleged discharges of PFOA and PFOS by Solvay, DuPont, and other third parties is fundamentally flawed. *First*, the Spill Act applies to "hazardous substances." N.J.S.A. § 58:10-23.11g(c)(1); *see id.* § 58:10-23.11b (defining "hazardous substances"). As the Directive concedes, PFOA and PFOS are not "hazardous substances." Directive ¶ 16. On April 1, 2019, DEP issued a *proposed* rule seeking to list PFOA and PFOS as hazardous substances, which is still subject to notice and comment requirements and public hearings. The Directive is therefore premature.

*Second*, liability under the Spill Act does not extend to a product manufacturer where the alleged discharges occurred after the product left the manufacturer's control. DEP's construction of the Spill Act is unprecedented and contrary to case law and its own regulations. Nothing in the Spill Act purports to make a chemical manufacturer an absolute insurer liable for any discharge that may occur from its customers' use or disposal of the product.

"[T]he critical factor which triggers liability" under the Spill Act is that "the person must be in any way responsible for the *discharge* that caused the contamination." *White Oak Funding, Inc. v. Winning*, 775 A.2d 222, 226 (N.J. App. Div. 2001) (emphasis in original); *accord N.J. Dep't of Envtl. Prot. v. Dimant*, 14 A.3d 780, 789 (N.J. App. Div. 2011), *aff'd* 51 A.3d 816, 826 (N.J. 2012); *N.J. Sch. Dev. Auth. v. Marcantuone*, 54 A.3d 830, 838 (N.J. App. Div. 2012); *see also N.J. Turnpike Auth. v. PPG Indus., Inc.*, 197 F.3d 96, 106 (3d Cir. 1999) ("However remote a party's responsibility under the Spill Act may be, the statute nevertheless requires some degree of particularity; one cannot be 'responsible' for a hazardous substance without having some connection to the site on which that substance was deposited.").

Courts have construed "in any way responsible" "as encompassing either [1] ownership or control over the property at the time of the damaging discharge or [2] control over the hazardous substance that caused the discharge." *Dimant*, 14 A.3d at 788; *Marcantuone*, 54 A.3d at 837-38; *see also N.J. Dep't of Envtl. Prot. v. Arlington Warehouse*, 495 A.2d 882, 885 (N.J. App. Div.

5369125

April 25, 2019
Page 3

1985) (imposing Spill Act liability on manufacturers of chemicals stored at warehouse where manufacturers "had the benefit of ownership of their respective chemical products and shared the risk of loss from their explosion, fire, discharge, surface run-off, or subsurface leaching, whether occurring on their own premises or, as here, during storage elsewhere"). DEP regulations similarly require a showing, in pertinent part, that a person "owns or controls any hazardous substance which is discharged." N.J. Admin. Code § 7:1E-1.6.

DEP does not allege that 3M is responsible for discharges of PFOA or PFOS by Solvay, DuPont, or other third parties. Nor does DEP allege that 3M had any connection to a site where discharges occurred or that 3M somehow still owned or controlled PFOA or PFOS at the time of the alleged discharges. 3M's alleged status as "the" or "a" "primary manufacturer" of PFOA or PFOS (Directive ¶¶ 43, 45) does not trigger Spill Act liability.

DEP's reading of the Spill Act is also contrary to federal case law interpreting liability under CERCLA. In *Burlington Northern & Santa Fe Railway Co. v. United States*, 556 U.S. 599, 611-12 (2009), the U.S. Supreme Court held that "disposal [that] occurs as a peripheral result of the legitimate sale of an unused, useful product" does not subject the product manufacturer to liability. Even where a manufacturer has "knowledge" that its "useful product" "will be leaked, spilled, dumped, or otherwise discarded" at some point by the buyer is "alone ... insufficient" to trigger liability under CERCLA. *Id.* at 612.

***Finally***, even if PFOA and PFOS were "hazardous substances" and 3M were responsible for discharges, DEP still must demonstrate "[a] nexus ... between the discharge for which one is responsible ... and the contaminated site for which cleanup and other related authorized costs are incurred." *Dimant*, 51 A.3d at 830-31. The Directive makes no attempt to do so. DEP instead apparently seeks to hold 3M liable for addressing PFOA or PFOS on a statewide basis, without making any showing that any particular PFOA or PFOS came from 3M.

Beyond the Spill Act, the Directive also cites the Water Pollution Control Act ("WPCA"), N.J.S.A. § 26:2C-1 *et seq.*, the Solid Waste Management Act ("SWMA"), N.J.S.A. § 13:1E-1 *et seq.*, and the Air Pollution Control Act ("APCA"), N.J.S.A. § 26:2C-1 *et seq.* The Directive does not allege that 3M violated or is liable under any of these statutes.

While 3M is prepared to meet with DEP with respect to the Directive, for the reasons set forth above, 3M denies any responsibility or obligation for establishing a remediation funding source for alleged future costs as set forth in paragraph 67.

## Information Request

In addition to directing that 3M help fund DEP's future costs, the Directive (at ¶¶ 68-69) also requests information related to 3M's historical use of PFNA, PFOA, and PFOS in New Jersey, and its current use of "PFAS replacement chemicals (i.e., those short-chain PFAS chemicals used in any manufacturing process as a replacement for PFNA, PFOA and/or PFOS)." 3M addresses each of DEP's requests below. Information provided is based on a review of available documentation and was completed to the best of 3M's knowledge. 3M will supplement these responses if it discovers additional, responsive information.

5369125

April 25, 2019
Page 4

68.    Each Respondent, as applicable, within 21 days of receipt of this Directive, shall provide the following information to the Department regarding its historic use of PFNA, PFOA and/or PFOS in New Jersey:

a.    Identify all PFNA, PFOA and PFOS manufactured, supplied, transported, stored, used, treated, disposed, and/or discharged in New Jersey;

Response:    On September 19, 2016, DEP served a similar information request on 3M pursuant to the WPCA focused on the use of PFAS at *3M* facilities in New Jersey. 3M provided the requested information to DEP on November 15, 2016. DEP's prior request and 3M's prior response are attached hereto as **Exhibit A**. To the best of 3M's knowledge, its prior response is still accurate and it is not aware of any additional facilities where it historically used PFAS in New Jersey.

DEP's request also appears to seek information concerning PFNA, PFOA (including NaPFO), and PFOS "supplied" by 3M to customers in New Jersey. 3M did not manufacture or use PFNA. With respect to PFOA and PFOS, 3M is searching sales records related to the facilities identified in the Directive—Solvay West Deptford (at ¶ 23), DuPont Chambers Works (at ¶ 29), DuPont Parlin (at ¶ 32), Joint Base McGuire-Dix-Lakehurst (at ¶ 46), and FAA William J. Hughes Technical Center (at ¶ 46). 3M expects to be able to provide a preliminary response with responsive information within 14 days, to be followed by a supplemental response once 3M completes its sales records search.

To the extent DEP also seeks information concerning 3M's supply of PFOA and PFOS to unspecified customers on a statewide basis, 3M objects to the request as overly broad, indefinite, and beyond DEP's statutory authority. We are not aware of any precedent under N.J.S.A. § 58:10A-10.3 upholding such a broad information request. Section 58:10A-10.3(a) allows DEP to seek information involving "a discharge or potential discharge of a pollutant," but useful products supplied by 3M are not "pollutants." N.J.S.A. § 58:10A-3(n). Moreover, other than the specific facilities discussed above, the Directive does not identify particular discharges or potential discharges on which it seeks information.

b.    Identify the nature, extent, source, and location of discharges
of PFNA, PFOA and PFOS into the waters of the State;

Response:    With respect to 3M facilities, 3M refers DEP to its prior response. With respect to Solvay, DuPont, and other third-party facilities, 3M suggests that those third parties are best positioned to provide DEP information on discharges from their facilities.

c.    Identify the nature, extent, source and location of emissions
of PFNA, PFOA and PFOS into air;

Response:    3M objects to this request as beyond DEP's statutory authority. Unlike the WPCA, the APCA does not confer information request authority on DEP. The APCA imposes

5369125

April 25, 2019
Page 5

certain reporting and notification requirements on operators (Directive ¶ 57, citing N.J.S.A. §§ 26:2C-9(b)(3), -19(e)), and 3M is in compliance with those requirements.

> d.    If the Respondent is not the manufacturer, supplier, or transporter of PFNA, PFOA and PFOS, identify any such manufacturer, supplier or transporter; and

Response: With respect to 3M facilities, 3M refers DEP to its prior response. With respect to Solvay, DuPont, and other third-party facilities, 3M suggests that those third parties are best positioned to provide DEP information concerning other manufacturers that may have supplied them with PFNA, PFOA, and PFOS.

> e.    The Respondent's ability to pay for, or perform, the cleanup and removal of PFNA, PFOA and PFOS from New Jersey's environment, and every 'change of ownership' (as defined in N.J.S.A. § 13:1K-8) involving Respondents' current or former sites in New Jersey.

Response: With respect to DEP's directive that 3M fund future costs related to discharges by Solvay, DuPont, and other third parties, 3M objects to this request because 3M is not liable under the Spill Act. With respect to 3M facilities, 3M objects to this request as beyond DEP's statutory authority because DEP has not alleged that any discharges of PFNA, PFOA, or PFOS occurred at any 3M facility. N.J.S.A. § 58:10A-10.3(a)(4).

> 68.    Each Respondent, as applicable, within 21 days of receipt of this Directive, shall provide the following information to the Department regarding its use of PFAS replacement chemicals (i.e., those short-chain PFAS chemicals used in any manufacturing process as a replacement for PFNA, PFOA and/or PFOS) in New Jersey:

> a.    Identify all replacement chemicals manufactured, supplied, transported, stored, used, treated, disposed, and/or discharged in New Jersey, and the toxic characteristics of any such chemicals;

Response: With respect to 3M facilities, 3M is searching its records for responsive information. 3M expects to be able to provide a preliminary response within 14 days, to be followed by a supplemental response once 3M completes its search.

With respect to Solvay, DuPont, and other third-party facilities, 3M objects to the request as overly broad, indefinite, and beyond DEP's statutory authority. Again, we are not aware of any precedent under N.J.S.A. § 58:10A-10.3 upholding such a broad information request. Section 58:10A-10.3(a) allows DEP to seek information involving "a discharge or potential discharge of a pollutant," but useful products supplied by 3M are not "pollutants." N.J.S.A. § 58:10A-3(n).

5369125

April 25, 2019
Page 6

Moreover, the Directive does not identify particular discharges or potential discharges of PFAS replacement chemicals on which it seeks information.

        b.      Identify the nature, extent, source, and location of discharges
                    of replacement chemicals into the waters of the State;

Response: With respect to 3M facilities, 3M is searching its records for responsive information. 3M expects to be able to provide a preliminary response within 14 days, to be followed by a supplemental response once 3M completes its search. With respect to Solvay, DuPont, and other third-party facilities, 3M suggests that those third parties are best positioned to provide DEP information on discharges from their facilities.

        c.      Identify the nature, extent, source and location of emissions
                    of replacement chemicals into air;

Response: 3M objects to this request as beyond DEP's statutory authority. Unlike the WPCA, the APCA does not confer information request authority on DEP. The APCA imposes certain reporting and notification requirements on operators (Directive ¶ 57, citing N.J.S.A. §§ 26:2C-9(b)(3), -19(e)), and 3M is in compliance with those requirements.

        d.      If the Respondent is not the manufacturer, supplier, or
                    transporter of replacement chemicals, identify any such
                    manufacturer, supplier or transporter; and

Response: With respect to 3M facilities, 3M is searching its records for responsive information. 3M expects to be able to provide a preliminary response within 14 days, to be followed by a supplemental response once 3M completes its search. With respect to Solvay, DuPont, and other third-party facilities, 3M suggests that those third parties are best positioned to provide DEP information concerning other manufacturers that may have supplied them with PFAS replacement chemicals.

        e.      The Respondent's ability to pay for, or perform, the cleanup
                    and removal of replacement chemicals from New Jersey's
                    environment.

Response: With respect to DEP's directive that 3M fund future costs related to discharges by Solvay, DuPont, and other third parties, 3M objects to this request because 3M is not liable under the Spill Act. With respect to both third-party and 3M facilities, 3M also objects to this request as beyond DEP's statutory authority because DEP has not alleged any discharges of PFAS replacement chemicals supplied by 3M. N.J.S.A. § 58:10A-10.3(a)(4).

In sum, 3M contends that the Directive is invalid, unenforceable, and inapplicable to it and that it has provided an objectively reasonable basis for not complying with the Directive and good cause defenses to fulfilling the requests. However, 3M will continue to make a good-faith effort to resolve the issues raised in the Directive and will pursue cooperative efforts with DEP. 3M

5369125

April 25, 2019
Page 7


remains available to discuss this matter further and in greater detail with DEP's representatives at any mutually convenient time.

Very truly yours,

Donald J. Camerson, II

Encl.
cc:    Richard Bulger, Esq. (via First Class Mail)

5369125

# EXHIBIT A



**State of New Jersey**

DEPARTMENT OF ENVIRONMENTAL PROTECTION
Division of Remediation Management
Mail Code 401-05M
P.O. Box 420
Trenton, NJ 08625-0420
TEL: # (609) 292-1251
FAX # (609) 984-6514

CHRIS CHRISTIE
*Governor*

KIM GUADAGNO
*Lt. Governor*

BOB MARTIN
*Commissioner*

September 19, 2016

Mr. Gary Hohenstein
Manager Environmental and Regulatory Affairs
3M
3M Center
Building 0224-05-W-03
St Paul, MN 55144-1000

Re:   New Jersey Water Pollution Control Act Information Request
      Perfluoroalkyl Substances Usage

The New Jersey Department of Environmental Protection (Department) is requesting your assistance in the investigation of perfluoroalkyl substances (PFAS). Several members of this class of chemicals have been detected in ground water, surface water and potable water supplies within the State of New Jersey. Due to the risks associated with discharges of this class of chemicals, the Department is gathering information regarding its use within New Jersey.

PFAS are a class of chemicals used in multiple industrial applications and consumer products many of which are persistent in the environment and are known to bioaccumulate. Due to its persistence, tendency to bioaccumulate and health effects, the Department established an Interim Ground Water Quality Standard for perfluorononanoic acid (PFNA) at 10 ng/L, a Drinking Water Advisory Level for perfluorooctanoic acid (PFOA) at 40 ng/L and is currently evaluating drinking water maximum contaminant levels for these compounds and perfluorooctane sulfonate (PFOS). On May 25, 2016, the US Environmental Protection Agency issued revised Drinking Water Health Advisories for PFOA and PFOS to 70 ng/L individually and 70 ng/L combined when both compounds are found in drinking water. For additional information regarding PFAS see following websites:

http://www.nj.gov/health/eohs/pfc_in_drinkingwater.shtml ,

https://www.epa.gov/assessing-and-managing-chemicals-under-tsca/perfluorooctanoic-acid-pfoa-perfluorooctyl-sulfonate , and

https://www.epa.gov/ground-water-and-drinking-water/drinking-water-health-advisories-pfoa-and-pfos

*New Jersey is an Equal Opportunity Employer ı Printed on Recycled Paper and Recyclable*

Page 2

Pursuant to N.J.S.A. 58:10A-10.3(a), the New Jersey Water Pollution Control Act, the Department may request that any person whom the Department believes has information relevant to a discharge or potential discharge of pollutants provide information regarding:

1. The nature, extent, source, and location of the discharge, or potential discharge;
2. Identification of the nature, type, quantity, source, and location of the pollutant or pollutants;
3. The identity of, and other relevant information concerning, the generator or transporter of the pollutant, or any other person subject to liability for the discharge or potential discharge;
4. The ability of any person liable, or potentially liable, for the discharge, or potential discharge, to pay for, or perform, the cleanup and removal, including the availability of appropriate insurance coverage.

Several former 3M facilities in New Jersey have been identified as potentially using substances containing PFAS including but not limited to PFOA and PFOS and their homologues, their salts, and their precursors (including but not limited to fluorotelomers). These facilities include:

- 1571 Imperial Way, West Deptford
- 108 Willowbrook Road, Freehold
- 225 Willowbrook Road, Freehold
- 500 Doremus Avenue, Newark
- 20-01 Pollitt Drive, Fair Lawn

The Department requests you respond to this information request in writing to the contact official and address identified below within 60 days. Please provide the following information for each New Jersey facility:

1. Name, address of each facility and representative contact information including the contact's email address.
2. Identify if PFAS are currently or were historically used, stored, generated, transported, or disposed at the facility including the quantity, source, and location the PFAS are utilized, stored, transported or disposed of at the facility.
3. Identify the storage vessels for any PFAS utilized, stored, transported or disposed at the facility and indicate whether these vessels have secondary containment or are able to be visually inspected. If the vessels are secondarily contained and/or inspected, please explain the type of secondary containment utilized and inspection protocol and tracking.
4. Identity the nature, extent, source, and location of any known discharges, or potential discharge of any of the aforementioned PFAS and the name and address and contact information of any entities responsible. Include any response actions taken in association with the discharge, including sampling results and mapping associated with soil, ground water and/or surface water sampling and the Department's communication center number for the discharge, if reported.

Page 3

The response to this information request should be addressed to:

Stephen E. Maybury
New Jersey Department of Environmental Protection
Bureau of Case Management
401 East State Street
Mail Code 401-05F
P.O. Box 420
Trenton, NJ 08625

This information should also be shared with the licensed site remediation professional (LSRP) currently retained, or any LSRP to be retained in the future, for any remediation activities. If a final remediation document [Response Action Outcome (RAO) or No Further Action (NFA)] has been issued for a facility for which you are responsible, and PFAS were known or suspected to have been used, you should consider that information and the need to reevaluate the facility.

If you should have any questions please contact Stephen Maybury, Chief, Bureau of Case Management at (609) 633-1455.

Sincerely

Kenneth J. Kloo, Director
Division of Remediation Management

**3M Environment, Health, Safety, and Sustainability**       3M Center 224-5W-17
St. Paul, MN 55144-1000



November 15, 2016

Stephen E. Maybury
New Jersey Department of Environmental Protection
Bureau of Case Management
401 East State Street
Mail Code 401-05F
P.O. Box 420
Trenton, NJ 08625

RE:    New Jersey Water Pollution Control Act Information Request
       Perfluoroalkyl Substances (PFASs) Usage

Dear Mr. Maybury:

This letter provides information requested in an NJDEP letter to Mr. Gary Hohenstein of 3M
dated September 19, 2016, for the following sites listed below:

- 1571 Imperial Way, West Deptford
- 108 Willowbrook Road, Freehold
- 225 Willowbrook Road, Freehold
- 500 Doremus Avenue, Newark
- 20-01 Pollitt Drive, Fair Lawn

A table summarizing the requested information is attached. Information provided for each
site is based on review of available documentation and was completed to the best of 3M's
knowledge. During our review of available documentation, three additional former 3M
locations in New Jersey were identified as having historically stored PFASs. Information
relating to these sites is also included in the attached table.

Please contact me by phone at 651-737-3635 or by email at jrkotsmith@mmm.com if you
have any questions regarding this information.

Sincerely,

*J. R. Ktst*

James R. Kotsmith, P.E.
Manager, Corporate Environmental Programs
Bldg. 224-5W-17

| Type of Operation | 1. Name, address of each facility and representative contact information including the contact's email address. | 2. Identify if PFAS are currently or were historically used, stored, generated, transported, or disposed at the facility including the quantity, source, and location the PFAS are utilized, stored, transported or disposed of at the facility. | 3. Identify the storage vessels for any PFAS utilized, stored, transported or disposed at the facility and indicate whether these vessels have secondary containment or are able to be visually inspected. If the vessels are secondarily contained and/or inspected, please explain the type of secondary containment utilized and inspection protocol and tracking. | 4. Identify the nature, extent, source, and location of any known discharges, or potential discharges of any of the aforementioned PFAS and the name and address and contact information of any entities responsible. Include any response actions taken in association with the discharge, including sampling results and mapping associated with soil, ground water and/or surface water sampling and the Department's communication center number for the discharge, if reported. |
|---|---|---|---|---|
| Former Manufacturing | 1571 Imperial Way, West Deptford, NJ | None | None | None |
| Former Manufacturing | 108 Willowbrook Road, Freehold, NJ | None | None | None |
| Former Manufacturing | 225 Willowbrook Road, Freehold, NJ | Light Water™ was used in fire protection systems and fluorinated materials were present in the Electrical Products Plant waste stream. | None | NJDEP issued a NOV on 10/8/1987 for the discharge of wastewater from a dumpster fire that occurred on 9/27/1987. The fire required the use of Light Water™ to extinguish it and the resulting runoff entered Dubois Creek. 3M is not aware of any further response actions. |
| Former Manufacturing | 500 Doremus Avenue, Newark, NJ | None | None | None |
| Former Manufacturing | 20-01 Pollitt Drive, Fair Lawn | Eleven (11) Light Water™ aqueous film forming foam (AFFF) fire extinguishers 2A:20 B classification with a total capability of 440 square feet were located on-site. The locations of these extinguishers are shown in the former Emergency Equipment Locations and Evacuation Routes figure in the Hazardous Waste Management Plan. | None that 3M is aware of except for former fire extinguishers that were previously specified. 3M is not aware of the inspection procedures for these systems or if inspection records exist. | None |
| Former Warehouse | 75 Lackawanna Avenue, Parsippany, NJ | One Light Water™ Fire Extinguisher was located at the Spill Control Cabinet. An interior on-site Light Water™ tank (unknown volume) in the red label room was associated with a Light Water™ fire protection system (within rack sprinkler system and mixing tank). A subsurface drain line was connected to a 3,000 gallon spill containment tank located outside. | None that 3M is aware of except for the Light Water™ extinguisher and tank previously specified. 3M is not aware of the inspection procedures for these systems or if inspection records exist. | An accidental release of Light Water™ in the red label room occurred in 1991. Fluids contained in the recovery tank were pumped by a 3M contractor and discharged indoors to the sanitary sewer. Soils samples were collected near the Light Water™ storage tank and recovery tank and analyzed for VOCs and RCRA metals on 1/23/1997. 3M is not aware of the current status of the Light Water™ system in this facility. |
| Former Warehouse | 15 Henderson Drive, West Caldwell, NJ | One Light Water™ Fire Extinguisher was located on-site at the Spill control cabinet. Fire protection for the red label room included a sprinkler system connected to a Light Water™ supply tank (800 gallons and 3% concentrate). The red label room was equipped with trench drains that discharged to an underground concrete containment tank located outside of the building. Facility drawings indicate that the structure was 7.5' by 7.5' and 4' deep (base of concrete structure from ground surface). It has been estimated that the tank was approximately 2,000 gallons. A wall hydrant on the west side of the building, near southwest corner, provided 3% AFFF for fire department use, if necessary. | None that 3M is aware of except for the Light Water™ fire extinguisher and Light Water™ system and tanks previously specified. The Light Water™ tank for the red label room was inspected monthly and no liquid had been detected as of 1990. 3M is not aware of the location of these inspection records. | Documentation indicates the red label room sprinkler system was never used and no liquids were detected in the exterior underground spill tank. |
| Former Warehouse | 30 N. Enterprise Avenue, Secaucus, NJ | This location stored 55 gal drums of Light Water™ (unknown quantity). | None that 3M is aware of except for drums of Light Water™ previously specified. 3M is not aware of any secondary containment or inspection records for the drums. | None |

Footnote: Light Water™ is the brand name for AFFF products formerly made by 3M. A critical functionality of AFFF products is provided by the presence of fluorochemical surfactants in the concentrate solution.