**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re 3M COMPANY SECURITIES LITIGATION<br><br>This document relates to:<br>ALL ACTIONS. | Case No.: 2:19-cv-15982-CCC-MF<br><br>Hon. Claire C. Cecchi, U.S.D.J.<br>Hon. Mark Falk, U.S.M.J. |

**DEFENDANTS' REPLY MEMORANDUM OF LAW IN FURTHER
<u>SUPPORT OF THEIR MOTION TO TRANSFER VENUE</u>**

Eric Todd Kanefsky
CALCAGNI & KANEFSKY LLP
One Newark Center
1085 Raymond Blvd., 14th Floor
Newark, New Jersey 07102
Tel: +1 (862) 397-1796

Meredith Kotler (admitted *pro hac vice*)
Timothy Harkness (admitted *pro hac vice*)
FRESHFIELDS BRUCKHAUS DERINGER US LLP
601 Lexington Avenue
New York, NY 10022
Tel: +1 (212) 277-4000
meredith.kotler@freshfields.com
timothy.harkness@freshfields.com

*Attorneys for Defendants*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................... iii

TABLE OF ABBREVIATIONS ................................................................................. v

PRELIMINARY STATEMENT ................................................................................ 1

ARGUMENT ............................................................................................................ 2

I.    Despite the Opposition's Attempt to Recast the CAC's Claims, the Private Interests Favor Transferring This Putative Securities Class Action .................................................................................................... 3

      A.    The CAC's Securities Claims Arose Outside This District ................. 3

      B.    Defendants' Forum Preference Favors Transfer .................................. 6

      C.    Additional Private Interests Favor Transfer ........................................ 8

      D.    H&GLL's Forum Preference Should Receive Minimal Weight .................................................................................................. 11

II.   The Public Interests Continue to Favor Transfer ......................................... 12

      A.    The Opposition Does Not Erase the Practical Considerations Supporting Transfer .................................................. 12

      B.    The Relevant Statistics Show That This District Is More Congested Than the District of Minnesota, Favoring Transfer ................................................................................................ 13

      C.    Despite the Opposition's *Post Hoc* Recasting, Minnesota Has a Greater Interest in Deciding This Putative Securities Class Action ....................................................................... 14

CONCLUSION ...................................................................................................... 15

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Cal. Pub. Emps.' Ret. Sys. v. Chubb Corp.*,
   127 F. Supp. 2d 572 (D.N.J. 2001).................................................................. 9

*Eastman v. First Data Corp.*,
   2011 WL 1327707 (D.N.J. Apr. 5, 2011).......................................................... 12

*Franklin U.S. Rising Dividends Fund v. Am. Int'l Grp., Inc.*,
   2014 WL 3748214 (D.N.J. July 29, 2014) ................................................. 3, 4, 7

*Job Haines Home for the Aged v. Young*,
   936 F. Supp. 223 (D.N.J. 1996)..................................................................... 9, 12

*Jumara v. State Farm Ins. Co.*,
   55 F.3d 873 (3d Cir. 1995) ................................................................................. 3

*In re Laidlaw Sec. Litig.*,
   1991 WL 170837 (E.D. Pa. Aug. 27, 1991) ..................................................... 12

*Lieberman v. Carnival Cruise Lines*,
   2014 WL 3906066 (D.N.J. Aug. 7, 2014) ......................................................... 10

*Metro. Life Ins. Co. v. Bank One, N.A.*,
   2012 WL 4464026 (D.N.J. Sept. 25, 2012)..................................................... 3, 4

*Platinum Partners Value Arbitrage Fund, L.P. v. TD Bank, N.A.*,
   2011 WL 3329087 (D.N.J. Aug. 2, 2011) ........................................................... 8

*Praxair, Inc. v. ATMI, Inc.*,
   2004 WL 883395 (D. Del. Apr. 20, 2004) .......................................................... 8

*Prinir (HADAS 1987), Ltd. v. ConAgra Foods Packaged Foods Co.*,
   2008 WL 5169119 (D.N.J. Nov. 21, 2008) ...................................................... 8, 9

*In re USA Technologies, Inc. Securities Litigation*,
   2019 WL 4785780 (D.N.J. Sept. 30, 2019)................................................. *passim*

*Vieux v. CVS Pharmacy, Inc.*,
   2007 WL 4207799 (D.N.J. Nov. 26 2007) ......................................................... 8

**Statutes**

15 U.S.C. § 78u-4(a)(3)(B)(i) .................................................................................. 9

15 U.S.C. § 78u-4(b)(1) .......................................................................................... 5

**TABLE OF ABBREVIATIONS**

| | |
|---|---|
| 3M | Defendant 3M Company |
| CAC | Consolidated Amended Complaint for Violations of the Federal Securities Laws, filed December 19, 2019, ECF No. 44 |
| Defendants | 3M and Messrs. Gangestad, Roman, and Thulin |
| Eisman Decl. | Declaration of Scott A. Eisman in Support of Defendants' Motion to Transfer Venue, executed on Jan. 23, 2020, ECF No. 46-2 |
| Exchange Act | Securities Exchange Act of 1934 |
| Flossbach | Lead Plaintiff Flossbach Von Storch Invest S.A. |
| H&GLL | Plaintiff Heavy & General Laborers' Locals 472 & 172 Welfare Fund |
| Individual Defendants | Messrs. Nicholas C. Gangestad, Michael F. Roman, and Inge G. Thulin |
| Iron Workers Funds | Lead Plaintiff Iron Workers Local 580 Joint Funds |
| Jermeland Decl. | Declaration of Bruce Jermeland in Support of Defendants' Motion to Transfer Venue, executed on Jan. 23, 2020, ECF No. 46-8 |
| Johnson Decl. | Declaration of Chad Johnson in Support of Plaintiffs' Opposition to Defendants' Motion to Transfer, filed Feb. 7, 2020, ECF No. 49-1 |
| Lead Plaintiffs | The Rhode Island Fund, the Iron Workers Funds, and Flossbach |
| *Middlesex* Action | *Middlesex Water Co. v. 3M Co.*, 18-cv-15366-CCC-JBC |

| | (D.N.J. filed Oct. 26, 2019) |
|---|---|
| Mov. Br. | Defendants' Memorandum of Law in Support of their Motion to Transfer Venue, filed Jan. 24, 2020, ECF No. 46-1 |
| NJAG | Attorney General of New Jersey |
| Opposition or Opp. | Plaintiffs' Memorandum of Law in Opposition to Defendants' Motion to Transfer Venue, filed Feb. 7, 2020, ECF No. 49 |
| PFAS | Per- and polyfluoroalkyl chemicals |
| PSLRA | Private Securities Litigation Reform Act of 1995 |
| Rhode Island Fund | Lead Plaintiff State of Rhode Island, Office of the Treasurer on Behalf of the Employees' Retirement System of the State of Rhode Island |
| SEC | U.S. Securities and Exchange Commission |
| *USA Techs.* Opp. | Plaintiff's Memorandum of Law in Opposition to Defendants' Motion to Transfer Pursuant to 28 U.S.C. § 1404, *In re USA Techs., Inc. Sec. Litig.*, 18-cv-13758 (D.N.J. Feb. 5, 2019), ECF No. 38 |

## PRELIMINARY STATEMENT

The Opposition fails to dispute any of the following:

- This case could have been brought in the District of Minnesota.

- The CAC's claims arose outside this District and almost entirely in Minnesota, where all challenged statements save one were made.

- 3M is headquartered in Minnesota, two of three Individual Defendants live and work there, and all three worked there at the relevant time.

- No Lead Plaintiff has any connection to this District.

- Lead Plaintiffs sue on behalf of a nationwide putative class.

- All identified potential witnesses to the alleged fraud, and all documents Defendants are likely to produce in discovery, are located outside of this District and are almost entirely located in Minnesota.

Yet for some reason Lead Plaintiffs, H&GLL, and their counsel are intent on keeping this case before this Court: first, by designating H&GLL's initial complaint as "related" to the *Middlesex* Action, a common law tort case unrelated to this matter, *see* Mov. Br. n.9; and now, by mischaracterizing the CAC's securities claims in opposing transfer. Contrary to the Opposition's *post hoc* recasting, this is not an environmental or public health case seeking redress for New Jersey citizens for environmental harm or personal injury due to drinking water contamination. It is a securities case, claiming alleged misrepresentations to the market and seeking redress for financial losses allegedly sustained by 3M investors nationwide. As this Court has held, the "most critical" factor in the

transfer analysis is where the claims arose, and securities fraud claims arise—and their center of gravity lies—where the challenged statements were made, *not* where the statements were received or their impact was felt. *In re USA Techs., Inc. Sec. Litig.*, 2019 WL 4785780, *2-3 (D.N.J. Sept. 30, 2019). All but one of the alleged misrepresentations were made in Minnesota, and none were made in New Jersey.

The only other asserted connection to this District is H&GLL, one of two named plaintiffs (the other is in New York), which resides in New Jersey but chose not to seek appointment as lead plaintiff, and provides no explanation for its choice despite submitting a declaration opposing transfer. Notwithstanding H&GLL's *post hoc* expressed desire to reengage in this litigation, H&GLL nowhere identifies what it means to serve as a *named* plaintiff when there are three Lead Plaintiffs. H&GLL is now just one of numerous putative class members, and its residence cannot overcome the many factors supporting transfer.

In short, Lead Plaintiffs have identified no valid basis connecting their securities claims or themselves here. Just as this Court ruled in *USA Technologies*, this putative securities class action should be transferred to Minnesota.

## **ARGUMENT**

Because Lead Plaintiffs nowhere dispute that this action could have been brought in Minnesota, the only remaining question is whether "the litigation would more conveniently proceed and the interests of justice be better served by

transfer," *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1995); *see* Mov. Br. 10, to Minnesota.  The Opposition confirms that the answer is "yes."

**I.      DESPITE THE OPPOSITION'S ATTEMPT TO RECAST THE CAC'S CLAIMS, THE PRIVATE INTERESTS FAVOR TRANSFERRING THIS PUTATIVE SECURITIES CLASS ACTION**

**A.      The CAC's Securities Claims Arose Outside This District**

While this private factor is the "most critical" for the transfer analysis, *USA Techs.*, 2019 WL 4785780, *2, the Opposition nowhere addresses it.  As this Court recently stressed, "stock fraud claims arise in the state in which the fraudulent statements were made" and "not where they are received"—in other words, *not* where their impact is felt.  *Id.* *3.[1]

Here, it is undisputed that all but one of the allegedly false statements—contained in SEC filings and made during an earnings conference call and an investor presentation—were prepared in and made from Minnesota.  Mov. Br. 6, 13.  Likewise, the challenged reserves that supposedly understated 3M's exposure for PFAS-related liability were set, and reviewed with 3M's auditors, in Minnesota.  *Id.* 6-7, 13.  According to Lead Plaintiffs, additional disclosures supporting their claims (*i.e.,* Sustainability Reports) were issued out of Minnesota, and other conduct (*i.e.*, alleged insider trading) took place outside this District and

---

[1] *Accord Franklin U.S. Rising Dividends Fund v. Am. Int'l Grp., Inc.*, 2014 WL 3748214, *5-6 (D.N.J. July 29, 2014); *Metro. Life Ins. Co. v. Bank One, N.A.*, 2012 WL 4464026, *6 (D.N.J. Sept. 25, 2012).

primarily in Minnesota. *Id.* nn.6-7 & 13.

Instead, the only asserted substantive link to this District is that there has been PFAS contamination in New Jersey drinking water, and New Jersey citizens have thus been harmed. Opp. 5-10. But this is not an environmental or public health case, and Lead Plaintiffs are not seeking redress for environmental harm or violation of environmental regulations. The only two claims in the CAC are for securities fraud in violation of the Exchange Act. CAC ¶¶ 261-269.

Nor can Lead Plaintiffs avoid transfer by insisting that their securities claims allege that 3M "hid" that it was selling "toxic" and "poisonous" products to the public. Opp. 1, 5-6. This hyperbole does not change the transfer analysis, as the focus of a securities fraud suit remains on where the statements that allegedly "hid" something *were made.* Courts have long rejected efforts to shift the "center of gravity" of a securities case by claiming that a misrepresentation *made* elsewhere *had effects* (typically, the receipt and reliance on allegedly false information) in another forum. *See USA Techs.*, 2019 WL 4785780, *2-3; *see also Franklin*, 2014 WL 3748214, *5-6; *Metro. Life Ins.*, 2012 WL 4464026, *6.

Regardless, the CAC does *not* allege that Defendants committed securities fraud by hiding the sale of harmful products to the public. Instead, the CAC alleges that Defendants "denied, downplayed, and materially understated [3M's] massive *liabilities*" purportedly flowing from prior PFAS manufacturing,

–4–

CAC ¶ 3 (emphasis added), and issued allegedly misleading financial statements "that disclosed only miniscule reserves for litigation [that] drastically minimized any potential liabilities from PFAS," *id.* ¶¶ 6, 7, 10-13.  And a simple reading of the CAC's "FALSE AND MISLEADING STATEMENTS" section reveals that the only statements challenged concern the extent of 3M's collective PFAS-related environmental *liabilities*, the amount of reserves ("recorded liabilities") taken for those liabilities, and those liabilities' potential impact on 3M's financial position. *Id.* ¶¶ 151-197; *see id.* ¶¶ 246 (Defendants "misrepresent[ed] and conceal[ed] the relevant truth about 3M's exposure to liabilities related to its manufacture and distribution of PFAS"), 250.  Not surprisingly, *none* of the challenged statements addresses the safety of the PFAS at issue, which 3M phased out by 2002.

Moreover, the PSLRA requires that the CAC specify why the challenged statements are false.  15 U.S.C. § 78u-4(b)(1).  Lead Plaintiffs allege falsity based on Defendants' supposed knowledge that 3M faced "massive" PFAS-related liabilities, CAC ¶¶ 144-147, 149, but "continued to make . . . statements about having minimal liabilities," *id.* ¶ 148, "suggesting that such liability was a non-issue . . . [and] materially understat[ing] the Company's reserves for its environmental liabilities," *id.* ¶¶ 150, 151.  To be sure, in providing background on PFAS, the CAC alleges that 3M knew about environmental or health harms from PFAS.  *E.g., id.* ¶ 3.  But the misrepresentations alleged as fraud, and the reasons

–5–

given for why those statements are misleading, instead relate to 3M's *overall exposure to liability* for such harms and that potential liability's impact on 3M's financial position—not the environmental or health harms themselves.[2]

### B.      Defendants' Forum Preference Favors Transfer

Defendants' preference to litigate this action in Minnesota is not "beside the point," Opp. 14, or an attempt to "avoid this Court," *id.* 2, but entirely logical:  the alleged misrepresentations were all but one made in Minnesota; the Individual Defendant speakers—including the CEO and CFO of 3M—are there; the witnesses who helped prepare and issue the challenged statements and reserves are there; and the relevant documents are there.  Mov. Br. 6-7, 13, 16-17.  Indeed, this transfer motion should come as no surprise to Lead Plaintiffs, two of whom have routinely pursued securities claims, *id.* 4, and typically in fora where the defendant company is headquartered and from where the allegedly false statements were made (except when they have sought to pursue actions in New York, claiming a connection to a securities exchange).  *See* ECF No. 7-4 at 2, 5.

To the extent Lead Plaintiffs suggest that Defendants' forum

---

[2] The Opposition references 3M's potential liability in a May 2019 environmental suit by the NJAG, Opp. 8 (citing CAC ¶ 135), but that is just one of many AG suits around the country.  The Minnesota AG suit—filed in Minnesota, based on PFAS manufacture in Minnesota, and settled for $850 million—figures far more prominently in the CAC.  CAC ¶¶ 8, 10, 87, 106-21, 127, 144-145, 173-174, 207, 231-233.  And as the NJAG suit was not filed until May 2019, any liability from it could not have been falsely understated during the putative class period.

preference is entitled to less weight due to delay, Opp. n.2, they are wrong.  Of the six months since initial complaint filing that Lead Plaintiffs note, *id.*, five were the result of plaintiff action:  after this action was commenced on July 20, 2019, competing lead plaintiff applications were filed and Lead Plaintiffs were appointed on October 21, 2019; thereafter, Lead Plaintiffs requested until December 19, 2019 to file the CAC.  ECF No. 41.  Defendants thus could not review the operative pleading and analyze the transfer issues until then.  Defendants promptly filed this motion within four weeks, notwithstanding the intervening holidays, and having conferred with Lead Plaintiffs' counsel several days in advance.  The motion was made an entire month before Defendants' motion to dismiss was otherwise due.

That leaves Lead Plaintiffs describing 3M as an "enormous," multinational company.  Opp. 2, 4, 10-11, 15.  But 3M has no corporate presence in this District, Jermeland Decl. ¶ 2, and Lead Plaintiffs—themselves quite sizable, having purchased over *$410 million* in 3M stock alone, ECF No. 7-5 at 4—do not and cannot claim that 3M ever manufactured or disposed of PFAS here.  Lead Plaintiffs instead insist that 3M's size imposes an additional burden, that Defendants show "unique or undue burden" to litigate here, in order to prevail on this motion.  Opp. 2, 4-5, 13, 15-16.  But that is not the law under *Jumara* or as applied in this District.  *See Franklin*, 2014 WL 3748214, *1 (granting AIG's

–7–

motion).[3]   Indeed, the plaintiff in *USA Technologies*—citing the same Delaware cases Lead Plaintiffs cite—sought the same heightened standard, without success.[4]

## C.   Additional Private Interests Favor Transfer

*Party Convenience*.   While Lead Plaintiffs argue that they can more easily access New Jersey than Minnesota, they will necessarily have to travel to litigate here, from as far as Luxembourg.   This convenience objection is especially surprising given both how large the three entities are, *supra* at 7, and that the Rhode Island and New York entities have, in the last three years alone, pursued securities cases in California, Colorado, Illinois, and Texas.

The convenience of H&GLL is not entitled to any weight, as it chose not to seek lead plaintiff appointment and is now no different than any other putative class member.   While H&GLL's declaration claims that it is "committed to serving as a named plaintiff," Johnson Decl.  Ex. 1 ¶ 8, the declaration neither explains why it did not step up to be lead plaintiff, nor describes the role of a "named plaintiff" in a securities class action.   The PSLRA instructs courts to

---

[3] *See also Platinum Partners Value Arbitrage Fund, L.P. v. TD Bank, N.A.*, 2011 WL 3329087, *1 (D.N.J. Aug. 2, 2011) (granting TD Bank's motion); *Prinir (HADAS 1987), Ltd. v. ConAgra Foods Packaged Foods Co.*, 2008 WL 5169119, *1 (D.N.J. Nov. 21, 2008) (granting ConAgra's motion); *Vieux v. CVS Pharmacy, Inc.*, 2007 WL 4207799, *1 (D.N.J. 2007) (granting CVS's motion).

[4] Moreover, the cases Lead Plaintiffs cite impose the "unique or undue burden" requirement only to protect a plaintiff's forum choice that must be "accorded substantial weight." *Praxair, Inc. v. ATMI, Inc.*, 2004 WL 883395, *1 (D. Del. Apr. 20, 2004).  That is not the case here. *Infra* at 11-12; Mov. Br. 17-19.

appear as *lead* plaintiff those that are "most capable of adequately representing the interests of class members."  15 U.S.C. § 78u-4(a)(3)(B)(i).  That provision reflects lead plaintiff's special role: "com[ing] forward and tak[ing] control of the litigation." *Cal. Pub. Emps.' Ret. Sys. v. Chubb Corp.*, 127 F. Supp. 2d 572, 577 (D.N.J. 2001).  The PSLRA carves out no role for a "named plaintiff."

Party convenience here favors Minnesota, where Defendants are located.  Transfer "makes sense," since "only" Lead Plaintiffs would have to travel, whereas "both" Defendants and Lead Plaintiffs would have to travel to New Jersey, *Prinir*, 2008 WL 5169119, *4, and as putative class members are dispersed, *Job Haines Home for the Aged v. Young*, 936 F. Supp. 223, 231 (D.N.J. 1996).

Lead Plaintiffs are also wrong that the undisputed inconvenience to Defendants would be minimized because they are "already involved in related litigation in this District."  Opp. 10-11, 16.  Five of the seven listed cases, *id.* n.9, have nothing to do with this one:  they allege environmental or personal harm from PFAS contamination; none involve allegedly false statements about 3M's exposure to and reserves for overall PFAS-related legal liability.  And none of the five names 3M's CEO and CFO as defendants—creating much greater disruption to ongoing management of 3M if they are required to litigate far from headquarters. 3M is not a party to a sixth listed case.  *See* Notice of Removal, *N.J. Dep't of Envtl. Prot. v. E.I. du Pont de Nemours & Co.*, 19-cv-14765 (D.N.J. July 5, 2019), ECF

No. 1.   And while the listed shareholder case, *Glaeser v. Thulin*, 19-cv-19434 (D.N.J.), is related to this action, *see* Mov. Br. at 8-9, that plaintiff will transfer his case to Minnesota if transfer is granted here, *id.*—something the Opposition ignores.  If this motion is granted, there will be *no* related litigation here.[5]

   *Availability of Witnesses*. The Opposition nowhere disputes that the witnesses involved in the preparation and issuance of the allegedly false statements all work or worked from Minnesota.  Mov. Br. 7, 16 & nn. 6-7, 13.  Nor do Lead Plaintiffs dispute that additional personnel identified in the CAC and earlier complaints are located outside this District and all work from Minnesota.  *Id.*

   The only "potential" witness Lead Plaintiffs specify as located in New Jersey is HG&LL, Opp. 11, but for the reasons noted *supra* at 8-9, it is entirely unclear why H&GLL would be a witness in this case, and regardless its convenience is not entitled to weight.  Lead Plaintiffs also speculate that New Jersey would be more convenient for "potential" trial witnesses from Belgium, Germany, and Alabama with knowledge about prior 3M PFAS manufacturing there, and that there "may be" New Jersey witnesses to PFAS contamination in this

---

[5] While Lead Plaintiffs assert that the Court must consider party convenience by "relative physical and financial condition," they are large institutional investors, two of whom litigate around the country.  *Supra* at 8.  Lead Plaintiffs' cases, Opp. n.13, are slip-and-fall actions, by a delivery person and a cruise-ship passenger, against Walmart and Carnival Cruises.  In one, the plaintiff was so injured that transfer would "essentially deprive her of her day in court."  *Lieberman v. Carnival Cruise Lines*, 2014 WL 3906066, *13 (D.N.J. Aug. 7, 2014).

–10–

District.  Opp. 11-12.  But again, this case is not about PFAS contamination; it is about whether Defendants' market disclosures misrepresented *the extent of 3M's legal liability, and implications of such liability on 3M's balance sheet*, stemming from PFAS contamination.  At bottom, this case concerns conduct in Minnesota, not here or in jurisdictions where plaintiffs claim injury from PFAS contamination.

*Sources of Proof.*  Lead Plaintiffs do not dispute that the relevant books and records are located in Minnesota, supporting transfer.  *See* Mov. Br. 17.

### D.     H&GLL's Forum Preference Should Receive Minimal Weight

Lead Plaintiffs wrongly assert that H&GLL's decision to file a securities suit in this District is entitled to any, let alone "great," weight.  Opp. 2. *First*, the Opposition nowhere responds to the many cases holding that a plaintiff's forum choice receives less deference where the forum has a tenuous connection to the claims.  Mov. Br. 17-18 (citing cases).  As demonstrated *supra* at 3-6, the CAC's securities fraud claims arose, and their center of gravity lies, in Minnesota.

*Second*, Lead Plaintiffs fail to address the many cases giving less deference to plaintiffs' forum choice when they sue outside their home forum. Mov. Br. 18 (citing cases).  When H&GLL sued, it knew it was filing outside the home forum of most 3M investors.  ECF No. 1 ¶¶ 1, 41. Because all three Lead Plaintiffs, the second named plaintiff, and most of the putative class reside outside this District, H&GLL's forum choice deserves little weight.

–11–

*Third*, while Lead Plaintiffs assert that H&GLL's forum choice should receive more deference because the CAC brings Exchange Act claims subject to a nationwide venue provision, Opp. 2, 13, that is directly contrary to the holding of many cases affording less deference to plaintiff forum choice in a *representative* action. *See* Mov. Br. 19; *see also Eastman v. First Data Corp.*, 2011 WL 1327707, *3 (D.N.J. Apr. 5, 2011) (noting it is "true" that "the weight accorded to a plaintiff's choice of forum is also considerably reduced" in nationwide class actions) (cited at Opp. n.10). Again, the Opposition fails even to address these holdings, and cites no decisions from this District applying greater deference in Exchange Act cases. That is not surprising, as decisions have expressly held that the Exchange Act's venue provision "does not prohibit the transferring of a class action . . . to [a] clearly . . . more convenient jurisdiction for litigating" a dispute. *Job Haines*, 936 F. Supp. at 229. Meanwhile, two of three out-of-District Exchange Act cases Lead Plaintiffs cite were individual actions, Opp. 4, 13, and the third acknowledged that plaintiffs' forum choice "should be given less weight when the named plaintiffs are 'nominal' plaintiffs," *In re Laidlaw Sec. Litig.*, 1991 WL 170837, *2 n.1 (E.D. Pa. Aug. 27, 1991).

## II.   THE PUBLIC INTERESTS CONTINUE TO FAVOR TRANSFER

### A.   The Opposition Does Not Erase the Practical Considerations Supporting Transfer

The considerations noted above—where the claims arose, and where

–12–

the parties, witnesses, and relevant books and records are located—as well as the scattering of the putative class members across the nation all indicate that trial would be easier, more expeditious, and less expensive in Minnesota. Lead Plaintiffs nowhere address the many cases so holding, *see* Mov. Br. 19-20 & n.20, and instead try to minimize the convenience of litigating in Minnesota by noting 3M's status as a large corporation with global reach, Opp. 10-11. As demonstrated *supra* at 7 & n.3, courts in this District have not hesitated to find that it is more appropriate to litigate cases in a large or multinational defendant's home state when the "center of gravity" lies there.

**B.     The Relevant Statistics Show That This District Is More Congested Than the District of Minnesota, Favoring Transfer**

Lead Plaintiffs nowhere dispute that three metrics—number of pending civil cases per judgeship, new civil cases filed per judgeship, and median months elapsed between civil filing and trial—demonstrate less congestion in the District of Minnesota than here, *both* as of the date of the metrics available to Defendants when preparing this motion, Mov. Br. 20-21; Eisman Decl. Ex. 4, *and* as of the updated metrics submitted with the Opposition, Opp. 12; Johnson Decl. Ex. 4 (1475, 2180, and 48.7 vs. 467, 585, and 26.9). Lead Plaintiffs also do not dispute that these metrics are the ones courts regularly consider in deciding transfer motions. *See* Mov. Br. 21. Rather, Lead Plaintiffs seize on the different metric of median time from civil case filing to disposition, Opp. 12, but cite no case relying

on it.  For good reason:  this metric includes outlier categories that have nothing to do with the pace of litigation, such as cases quickly ending in default judgment or early settlements.  Even putting aside congestion caused by the many judicial vacancies in this District, the regularly considered metrics support transfer.

C. **Despite the Opposition's *Post Hoc* Recasting, Minnesota Has a Greater Interest in Deciding This Putative Securities Class Action**

Lead Plaintiffs do not dispute that the District of Minnesota has a strong interest in deciding a dispute about whether a corporation headquartered in Minnesota committed fraud from there.  *See* Mov. Br. 21-22.  Yet they contend that this District has a greater interest in deciding the case because of PFAS contamination in New Jersey, Opp. 5-10, and the H&GLL declaration notes its "interest[]" in vindicating the rights of "local" residents who allegedly "have been poisoned" by PFAS.  Johnson Decl. Ex. 1 ¶ 8.

But this securities case will vindicate no such rights.  The CAC purports to protect the rights of stockholders across the country who were harmed by stock drops.  CAC ¶¶ 1, 14, 261-269.  And as Lead Plaintiffs highlight, Opp. n.9, there is no shortage of litigation seeking redress for local environmental and personal harm from PFAS contamination in New Jersey (or elsewhere, CAC ¶¶ 77-105).  This case seeks to redress different harms—ones this Court and others have held belong in the community where the alleged securities fraud occurred and where the defendant corporation is headquartered.  *See USA Techs.*, 2019 WL

–14–

4785780, *4; Mov. Br. 21-22 (citing cases).  Because the alleged fraud occurred outside this District and almost entirely in Minnesota, this District has little interest in adjudicating the CAC's claims and Minnesota has a far greater interest.

Finally, the Opposition's attempt to distinguish *USA Technologies*, buried in its last substantive paragraph, Opp. 17-18, easily fails:

- The Court stated that securities cases arise where "the fraudulent statements are made," and "not where they are received."  2019 WL 4785780, *2-3. Regardless, the CAC's securities claims do not arise from PFAS contamination, and do not seek redress for "direct and severe consequences" for New Jersey citizens affected by contaminated water.  *Supra* at 3-6.

- USA Technologies' size did not figure into the analysis.  The Court transferred the case to where the company was headquartered, even though the plaintiff argued for the "unusual and undue burden" standard and that the company's "business operations are hardly regional," *USA Techs*. Opp. 7.

- The presence or absence of additional lawsuits in this District was nowhere addressed in the Court's analysis and has no impact here, as none of the other listed lawsuits, Opp. n.9, is related to the alleged securities fraud— except *Glaeser*, which will be transferred if this motion is granted.

- While this Court noted that neither of the named plaintiffs resided in New Jersey, 2019 WL 4785780, *3, the Court did not hold that a named plaintiff's residence matters—especially when it did not step forward to be lead plaintiff, there are three Lead Plaintiffs and a second named plaintiff, and it identifies no role different from any other class member.

*USA Technologies* is on all fours, and its reasoning in transferring that putative securities class action equally applies here.

## **CONCLUSION**

Defendants respectfully submit that this motion should be granted.

–15–

Dated:     February 19, 2020
           Newark, NJ

By: /s/ Eric T. Kanefsky

**CALCAGNI & KANEFSKY LLP**

Eric Todd Kanefsky
One Newark Center
1085 Raymond Blvd., 14th Floor
Newark, New Jersey 07102
Tel: +1 (862) 397-1796

**FRESHFIELDS BRUCKHAUS
DERINGER US LLP**

Meredith E. Kotler (admitted *pro hac
vice*)
Timothy P. Harkness (admitted *pro hac
vice*)
601 Lexington Avenue
New York, NY 10022
Tel: +1 (212) 277-4000
meredith.kotler@freshfields.com
timothy.harkness@freshfields.com

*Attorneys for Defendants*

–16–