# Exhibit 9

Filed in Fourth Judicial District Court
2/20/2018 3:34 PM
Hennepin County, MN

STATE OF MINNESOTA                                    DISTRICT COURT
COUNTY OF HENNEPIN                              FOURTH JUDICIAL DISTRICT

State of Minnesota, by its Attorney General,        Case Type: Other Civil
Lori Swanson, its Commissioner of Pollution          Judge Kevin S. Burke
Control, John Linc Stine, and its Commissioner    Court File No. 27-CV-10-28862
of Natural Resources, Tom Landwehr,

                    Plaintiff,

     vs.                                                 **AGREEMENT**
                                                         **AND ORDER**
3M Company,

                    Defendant.

The State of Minnesota, by its Attorney General and its Commissioners of Pollution

Control and Natural Resources, and 3M Company voluntarily enter into this Agreement, which

fully and finally resolves the above-entitled matter.

## I.    DEFINITIONS

Whenever the terms listed below are used in this Agreement, the following definitions

shall apply:

1.    "3M" shall mean 3M Company, a corporation incorporated in the State of

Delaware with its principal place of business in Maplewood, Minnesota.

2.    "3M Grant for Water Quality and Sustainability Fund" shall mean a separate

account established in the State's Remediation Fund pursuant to Minn. Stat. §§ 115B.17 subd. 7

and 116.155, subd. 3(3).

3.    "Attorney General" shall mean the Attorney General of the State of Minnesota (or

her authorized designee) and her successors, and the Minnesota Attorney General's Office.

4.    "DNR" shall mean the Minnesota Department of Natural Resources, a statutory

agency of the State of Minnesota responsible for administering and enforcing Minnesota statutes

27-CV-10-28862

CASE 0:20-cv-02488-NEB-KMM    Doc. 92-9    Filed 01/15/21    Page 3 of 12    Filed in Fourth Judicial District Court
2/20/2018 3:34 PM
Hennepin County, MN

and rules relating to the preservation, conservation, management and regulation of natural resources of the State. *See* Minn. Stat. Chs. 84, 85, 94 and 103G. Reference to the DNR shall include its Commissioner, Tom Landwehr (or his authorized designee(s)), and his successors.

5.    "Effective Date" shall mean the date the Court issues its Order approving this Agreement.

6.    "Grant" shall mean the grant described in paragraph 13.

7.    "MPCA" shall mean the Minnesota Pollution Control Agency, a statutory agency of the State of Minnesota responsible for administering and enforcing Minnesota statutes and rules relating to water, land and air pollution. *See* Minn. Stat. Chs. 115, 115B and 116. Reference to the MPCA shall include its current Commissioner, John Linc Stine (or his authorized designee(s)), and his predecessor and successors.

8.    "Parties" shall mean collectively 3M and the State.

9.    "PFCs" shall mean per- and poly-fluorinated chemicals.

10.    "SACO" shall mean the 2007 Settlement Agreement and Consent Order entered by and between the MPCA and 3M on May 22, 2007.

11.    "State" shall mean the Attorney General, the MPCA, and the DNR.

12.    "Working Group" shall mean a working group established by the MPCA and the DNR, consisting of representatives of the MPCA, the DNR, East Metropolitan Area municipalities, and 3M. The composition of the Working Group may vary depending on the project(s) at issue set forth in paragraphs 14.A.-.C.

2

Filed in Fourth Judicial District Court
2/20/2018 3:34 PM
Hennepin County, MN

## II.    PAYMENT

13.    3M will make a Grant in the amount of $850 million to the State which shall be held in the 3M Grant for Water Quality and Sustainability Fund, within fifteen (15) days from the Effective Date of this Agreement.

14.    The MPCA and/or the DNR shall use the Grant (net of costs, fees, and expenses), and any interest earned or any other appreciation in value, for projects that are reasonable and necessary to achieve the purposes of this Agreement:

A.    As the first and highest priority, the MPCA and/or the DNR shall utilize the Grant referenced in paragraph 13 above to enhance the quality, quantity and sustainability of the drinking water in the East Metropolitan Area, which shall include, but is not necessarily limited to, the cities of Woodbury, Oakdale, Lake Elmo, Cottage Grove, St. Paul Park, Afton, and Newport and the townships of West Lakeland and Grey Cloud Island.  The goal of this highest priority work is to ensure clean drinking water in sufficient supply to residents and businesses in the East Metropolitan Area to meet their current and future water needs.  Examples of projects in this first priority may include, but are not limited to, the development of alternative drinking water sources for municipalities and individual households (including but not limited to creation or relocation of municipal wells), the treatment of existing water supplies, water conservation and efficiency, open space acquisition, and groundwater recharge (including projects that encourage, enhance, and assist groundwater recharge).  For individual households, projects may include, but are not limited to, connecting those residences to municipal water supplies, providing individual treatment systems, or constructing new wells.  The MPCA shall conduct a source assessment and feasibility study regarding the role of the Valley Branch Water District's project known as Project 1007 in the conveyance of PFCs in the environment.  In

Filed in Fourth Judicial District Court
2/20/2018 3:34 PM
Hennepin County, MN

selecting and performing activities pursuant to this paragraph, the State shall prioritize water supplies where health based values, health risk limits, and/or health risk indices for PFCs are exceeded.

B.    As the second highest priority, and after the MPCA and/or the DNR have reasonably achieved the goal set forth above in paragraph 14.A., the MPCA and/or the DNR shall utilize the Grant on projects that restore and enhance aquatic resources, wildlife, habitat, fishing, resource improvement, and outdoor recreational opportunities in the East Metropolitan Area and in downstream areas of the Mississippi and St. Croix Rivers.  These projects may include, but are not limited to: (i) aquatic habitat and water resource protection and restoration; (ii) terrestrial and water trails; (iii) boat ramps and/or fishing piers along the Mississippi River, Lake Elmo, or other waterbodies in or downstream of the East Metropolitan Area; (iv) the restoration of wildlife habitat; and (v) implementation of other terrestrial conservation and recreational improvements in the same geographic area.  While implementing the goal set forth above in paragraph 14.A., the MPCA and/or the DNR shall have immediate access of up to $20 million of Grant funds to undertake the goals set forth in this paragraph 14.B.

C.    As the third highest priority, and if any portion of the Grant remains (other than the amounts set forth in paragraphs 15-16 below) after the MPCA and/or the DNR have reasonably achieved the goals set forth above in paragraph 14.A.-.B., the MPCA and/or the DNR shall utilize the Grant to fund residual, statewide water resources, habitat restoration, open space preservation, recreation improvements, and other sustainability projects.

15.    The Grant includes reimbursement to the Remediation Fund for all costs of the MPCA under the SACO, except as provided in paragraph 19.  Notwithstanding paragraph 14.A.-

4

.C. above, the MPCA shall have immediate access to the amount referenced in this paragraph for any lawful purpose as set forth in Minn. Stat. §§ 115B.20, subd. 2 and 116.155, subd. 2.

16.    The Grant also includes reimbursement to the Remediation Fund in the amount of $300,441.95 for the reasonable costs incurred by the MPCA and/or the DNR for assessing damages to natural resources, pursuant to Minn. Stat. § 115B.04, subd. 1(3). Notwithstanding paragraph 14.A.-.C. above, the MPCA and/or the DNR shall have immediate access to the amount referenced in this paragraph for any lawful purpose as set forth in Minn. Stat. §§ 115B.20, subd. 2 and 116.155, subd. 2.

17.    The MPCA and/or the DNR shall form a Working Group to identify and recommend projects referenced in paragraphs 14A.-C. above. Pursuant to Minn. Stat. §§ 116.155 and 115B.20, the MPCA and/or the DNR shall have the ultimate responsibility, in their discretion, to determine the projects to be implemented under this Agreement (provided that the MPCA and/or the DNR will adhere to the spending prioritizations described above). The MPCA and/or the DNR will also consult with municipalities and the Metropolitan Council as necessary and appropriate on implementation of projects under paragraph 14.A. above and may use Grant monies to reimburse those entities for projects undertaken that meet the goals set forth in paragraph 14.A. above. The MPCA and/or the DNR may use Grant monies to retain technical experts to assist the Working Group.

## III.    RELEASE OF CLAIMS AND DISMISSAL

18.    In consideration of the stipulated relief, the sufficiency of which is acknowledged, including 3M's payments specified herein, the State fully and completely releases and waives against 3M and its affiliates, subsidiaries, parent corporations and companies, predecessors, successors, and current or former employees, directors, attorneys, shareholders, agents,

5

Filed in Fourth Judicial District Court
2/20/2018 3:34 PM
Hennepin County, MN

representatives, insurers, and the like ("Released Parties"), any and all claims or causes of action known or unknown through the Effective Date of this Agreement, related to claims alleged in the State's Amended Complaint or that could have been alleged by the State in its Amended Complaint for natural resource damages, including under the Minnesota Environmental Response and Liability Act, the Minnesota Water Pollution Control Act, any statute or common law theory, arising out of or relating to 3M's manufacture, distribution, disposal or other environmental management of PFCs or the release of 3M PFCs into the environment. The MPCA also fully and completely releases and waives any and all claims against 3M relating to the MPCA's costs incurred in 2017 under the SACO. 3M fully and completely releases and waives any and all claims against the State relating to the Amended Complaint, including any claim for contribution and/or indemnity, and attorney fees and costs and expenses. 3M further fully and completely releases and waives any and all claims against the State relating to reimbursement of MPCA costs incurred in 2017 under the SACO.

19.     The SACO shall remain in place, and 3M shall continue to be bound by the terms of the SACO, including the continuation of reimbursement of the MPCA's costs and 3M's ongoing implementation of the remedy approved by the MPCA for 3M's Cottage Grove, Woodbury, and Oakdale Sites. In addition, for a period of five (5) years after the Effective Date of this Agreement, 3M agrees to pay up to $40 million to fund the projects and/or activities set forth in paragraph VIII.B. of the SACO for temporary purposes, which shall include but are not limited to individual home water treatment systems that can be cost effectively connected within such five (5) year period to municipal systems, provision of bottled water, temporary municipal water treatment systems and the operation and maintenance of the temporary safe drinking water projects and activities. Otherwise, except for temporary measures referenced in the preceding

6

27-CV-10-28862

CASE 0:20-cv-02488-NEB-KMM    Doc. 92-9    Filed 01/15/21    Page 8 of 12    Filed in Fourth Judicial District Court
2/20/2018 3:34 PM
Hennepin County, MN

sentence, the Grant shall fund future projects that would have been payable under the SACO. If the Grant is depleted, the provisions of the SACO shall once again become operative. The Parties will annually review the continuing need for the SACO in light of the implementation of the projects outlined above, including projects related to the Washington County Landfill.

20.    Within five (5) days from the Effective Date of this Agreement, the State and 3M will file a Stipulation of Dismissal with Prejudice, dismissing the Amended Complaint with prejudice and without attorneys' fees, expenses, and costs to either Party.

### IV.    GENERAL TERMS

21.    The Parties are executing this Agreement for the sole purpose of settling and fully resolving the State's claims against 3M, which are disputed. Nothing about the Agreement shall constitute any admission by either Party of fault, responsibility, wrongdoing, or liability on the part of the Released Parties, nor does it constitute evidence of liability or wrongful conduct on the part of either Party, or any admission by either Party regarding the validity of any statutory or regulatory action by the State. Nothing in this Agreement shall be construed as an admission that 3M has legal responsibility for any contamination or other injury associated with the Washington County Landfill. This Agreement shall not be admissible in any future administrative or judicial proceeding as evidence of fault or liability in any investigation, claim, action, suit, or proceeding, or federal or state court or arbitration proceeding. Nothing in this Agreement shall relieve either Party of its obligation to comply with all applicable Minnesota and federal laws and regulations.

22.    Nothing in this Agreement shall limit the Attorney General, the MPCA, and/or the DNR's ability to bring claims against any person or entity not covered by this Agreement.

23.     This Agreement may be executed in counterparts, each of which constitutes an original, and all of which shall constitute one and the same Agreement.  This Agreement may be executed by facsimile or electronic copy in any image format.

24.     The person signing this Agreement for 3M warrants that he or she is  authorized to execute this Agreement, that 3M has been fully advised by its counsel before entering into the Agreement, and that he or she executes this Agreement in an official capacity that binds 3M. The persons signing this Agreement for the Attorney General, the MPCA, and the DNR warrant that they have been authorized to do so by the Attorney General, the MPCA, and the DNR, respectively, and they do so in their official capacities.  This Agreement constitutes the full and complete terms of the agreement entered into by the Parties.

25.     The Parties agree that the Hennepin County District Court shall retain jurisdiction over this matter for purposes of enforcing the Agreement, including any dispute between the Parties regarding selection and/or implementation of the priority projects as described in paragraph 14.A.-.C. above.  The Parties request that, upon his retirement, the Honorable Kevin Burke shall be appointed by the Court as a Consensual Special Magistrate, pursuant to Minn. R. Gen. Prac. 114.02, to carry out the duties in the preceding sentence, with his reasonable fees and expenses to be paid with Grant monies.  The Court shall also retain jurisdiction of this matter for purposes of enforcing the Order for Judgment.  3M and the State may each retain one expert to provide technical assistance in evaluating any issues that arise under this paragraph.  The Parties agree that, before filing any motion under this paragraph, they shall meet and confer in an attempt to resolve any dispute and shall further mediate such dispute with Judge Burke prior to filing any motion with the Court in a further attempt to resolve any outstanding issues.  If Judge

8

Filed in Fourth Judicial District Court
2/20/2018 3:34 PM
Hennepin County, MN

Burke is unavailable, or if the Parties otherwise mutually agree, the Parties will select a mutually agreeable substitute to serve as a Consensual Special Magistrate.

26.    The failure of 3M, the Attorney General, the MPCA, and/or the DNR to exercise any rights under this Agreement shall not be deemed a waiver of any right or any future rights.

27.    If any part of this Agreement shall be found or held to be invalid or unenforceable by any court of competent jurisdiction, such invalidity or unenforceability shall not affect the remainder of this Agreement.

28.    The Agreement shall be binding and enforceable against 3M, including any acquirer of 3M or its business.

29.    This Agreement may be amended only by written agreement between the Parties and subject to approval by the Court.

30.    This Agreement, including any issues relating to interpretation or enforcement, shall be governed by the laws of the State of Minnesota.

31.    Each of the Parties is represented by counsel, participated in the drafting of this Agreement, and agrees that the Agreement's terms may not be construed against or in favor of any of the Parties by virtue of draftsmanship.  The Parties agree to perform such further acts and to execute and deliver such further documents as may reasonably be necessary to carry out this Agreement.

**THE PARTIES ENTER INTO AND APPROVE THIS AGREEMENT AND SUBMIT IT TO THE COURT SO THAT IT MAY BE APPROVED AND ENTERED AS AN ORDER.**

9

FOR THE STATE OF MINNESOTA

LORI SWANSON

Attorney General
State of Minnesota

Alan I. Gilbert (No. 0034678)
Solicitor General

445 Minnesota Street, Suite 900
St. Paul, Minnesota 55101-2127
(651) 757-1426 (Voice)
(651) 296-1410 (TTY)

Date: 2/20/18

FOR THE MINNESOTA POLLUTION
CONTROL AGENCY

JOHN LINC STINE
Commissioner
Minnesota Pollution Control Agency
520 Lafayette Road
St. Paul, MN  55155

Date: 2/20/2018

FOR THE MINNESOTA DEPARTMENT OF
NATURAL RESOURCES

TOM LANDWEHR
Commissioner
Minnesota Department of Natural Resources
500 Lafayette Road
St. Paul, MN  55155

Date: Feb. 20, 2018

FOR 3M COMPANY

JOHN BANOVETZ
Senior Vice President, Research and
Development and Chief Technology Officer
3M Company
3M Center
St. Paul, MN 55144

Date: 2/20/18

10

Filed in Fourth Judicial District Court
2/20/2018 3:34 PM
Hennepin County, MN

## ORDER

Based upon the foregoing Agreement, it is SO ORDERED.

_____Feb 20, 2018_____         _Kevin S. Burke_____

Date                                                      THE HONORABLE KEVIN S. BURKE
                                                               JUDGE OF THE DISTRICT COURT