# Exhibit 54

An official website of the United States government.



# PFAS Laws and Regulations

There are a variety of laws and regulations to protect public health and the environment. The following list relates to PFAS in the environment.

## Safe Drinking Water Act

The Safe Drinking Water Act (SDWA) protects public drinking water supplies across the United States. Under the SDWA, EPA has regulated more than 90 drinking water contaminants. EPA has the authority to set enforceable Maximum Contaminant Levels (MCLs) for specific chemicals and can require monitoring of public water supplies. The SDWA only applies to public water systems in the United States and does not apply to domestic drinking water wells.

There are currently no MCLs established for PFAS chemicals. EPA initiated the steps to evaluate the need for an MCL for PFOA and PFOS under the regulatory determination process. However, EPA has issued a health advisory for PFOA and PFOS. Health advisories describe non-regulatory concentrations of drinking water contaminants at or below which adverse health effects are not anticipated to occur over specific exposure durations. They serve as informal technical guidance to assist federal, state and local officials, and water system managers by providing information on the health effects of and methods to sample and treat PFOA and PFOS in drinking water. In addition, EPA is developing and updating toxicity values for two additional PFAS, GenX and PFBS. EPA anticipates providing these toxicity assessments for public comment Summer 2018.

Under the Third Unregulated Contaminant Monitoring Rule (UCMR3), EPA collected data for chemicals that are suspected contaminants in drinking water but do not have health-based standards set under the SDWA. In the UCMR3, there were six PFAS included for monitoring including:

- perfluorooctanesulfonic acid (PFOS)
- perfluorooctanoic acid (PFOA)
- perfluorononanoic acid (PFNA)
- perfluorohexanesulfonic acid (PFHxS)
- perfluoroheptanoic acid (PFHpA)
- perfluorobutanesulfonic acid (PFBS)

Monitoring information collected under UCMR3 supports the regulatory determination process.

## Toxic Substances Control Act (TSCA)

On June 22, 2016, the Frank R. Lautenberg Chemical Safety for the 21st Century Act significantly amended the Toxic Substances Control Act (TSCA). EPA has issued three new rules to provide a framework for the implementation of the

amended law. The three framework rules outline EPA's path forward for prioritizing, evaluating and regulating chemicals and include a underline requirement for industry reporting of chemicals manufactured (including imported) or processed in the U.S. over the past 10 years. This reporting will be used to identify which chemical substances are active in U.S. commerce and will help inform the prioritization of chemicals for risk evaluation.

To date, 330 non-Confidential Business Information (CBI) PFAS chemicals have been reported to EPA and are listed in the public interim report. In addition, there are 148 CBI PFAS substances reported. After the reporting period ends in 2018, EPA anticipates having identified the universe of active PFAS chemicals in U.S. commerce.

EPA reviews new chemicals before they are allowed to commercialize. Since 2006, EPA has reviewed 294 new PFAS chemicals and has regulated 191 through a combination of orders and Significant New Use Rules (SNURs).

Additionally, on January 21, 2015 EPA proposed a Significant New Use Rule (SNUR) to require manufacturers (including importers) and processors of perfluorooctanoic acid (PFOA) and related chemicals (including as part of articles), to notify EPA at least 90 days before starting or resuming new uses of these chemicals in any products.  The notification required by SNURs obligates EPA to assess risks that may be associated with the significant new use, and, if appropriate, regulate the proposed activity before it occurs.  EPA is currently developing a re-proposal for this SNUR which will also comply with the requirements of the Lautenberg Act regarding articles.

PFAS chemical substances may be considered for prioritization in the future.  The Lautenberg Act amendments require EPA undertake a 9-12 month prioritization process to designate a chemical or category of chemical substances as High-Priority for which risk evaluation must immediately commence or Low-Priority for which risk evaluation is not warranted at this time. For High-Priority chemicals, EPA must evaluate a chemical's safety based on the health and environmental risks it poses without consideration of costs or other non-risk factors followed by EPA action to address any unreasonable risks.

## Comprehensive Environmental Response, Compensation and Liability Act

The 1980 Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA), commonly known as Superfund, provides the federal government with authority to address a release or threatened environmental releases in some circumstances. PFAS, including PFOA and PFOS, are not listed as CERCLA hazardous substances, but in some circumstances could be responded to as CERCLA pollutants or contaminants. EPA is beginning the necessary steps to propose designating PFOA and PFOS as "hazardous substances" through one of the available statutory mechanisms, including potentially CERCLA Section 102.

CERCLA does not contain any chemical-specific cleanup standards. In general, CERCLA requires that response actions under the Superfund program protect public health and the environment, and normally comply with federal laws and regulations that constitute "applicable or relevant and appropriate requirements (ARAR)." The lead agency identifies potential ARARs and to-be-considered

values (TBCs), based in part on the timely identification of potential ARARs by states. Risk-based goals are calculated and used to determine cleanup levels when chemical-specific ARARs are not available or are determined not to be sufficiently protective. EPA is developing groundwater cleanup recommendations for PFOA and PFOS at contaminated sites and anticipates completing this task by Fall 2018.

CERCLA requires that remedies also be protective of the environment. Risk-based cleanup goals that are protective of the environment are site-specific and depend on the identification of the protected ecological receptors.

## Clean Air Act

The Clean Air Act requires us to regulate toxic air pollutants, also known as air toxics, from large industrial facilities in two phases. The first phase is "technology-based," where we develop standards for controlling the emissions of air toxics from sources in an industry group (or "source category"). These technology standards are based on emissions levels that are already being achieved by the best-controlled and lower-emitting sources in an industry.

The second phase must occur within eight years of setting the technology standards.  In the second phase, we must assess the remaining health risks from each industrial source category to determine whether the standards protect public health with an ample margin of safety, and protect against adverse environmental effects.

In addition, every eight years after setting the technology standards, we must review and revise the standards if necessary, to account for improvements in air pollution controls.  As a result of these assessments, we may require phase-outs of the use of specific chemicals like PFAS, if effective and feasible alternatives exist.

Learn more about what is being done to reduce emissions of hazardous air pollutants

LAST UPDATED ON NOVEMBER 17, 2020