**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | | |
|---|---|---|
| In re 3M COMPANY SECURITIES LITIGATION | ) ) ) ) | Case No. 0:20-cv-2488-NEB-KMM |
| This document relates to: ALL ACTIONS. | ) ) ) ) | |

**DEFENDANTS' REPLY MEMORANDUM OF LAW**
**IN FURTHER SUPPORT OF THEIR MOTION TO DISMISS**
**THE CONSOLIDATED AMENDED COMPLAINT**

Wendy J. Wildung (#117055)
FAEGRE DRINKER BIDDLE & REATH LLP
2200 Wells Fargo Center
90 South Seventh Street
Minneapolis, Minnesota 55402
Tel: (612) 766-7000
wendy.wildung@faegredrinker.com

Meredith Kotler (admitted *pro hac vice*)
Mary Eaton (admitted *pro hac vice*)
Scott A. Eisman (admitted *pro hac vice*)
FRESHFIELDS BRUCKHAUS DERINGER US LLP
601 Lexington Avenue, 31st Floor
New York, NY 10022
Tel: (212) 277-4000
meredith.kotler@freshfields.com
mary.eaton@freshfields.com
scott.eisman@freshfields.com

*Attorneys for Defendants*

Date: May 11, 2021

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................. ii

TABLE OF ABBREVIATIONS ........................................................................................... v

PRELIMINARY STATEMENT .......................................................................................... 1

REPLY BACKGROUND ..................................................................................................... 2

ARGUMENT ........................................................................................................................ 3

I.      THE CAC FAILS TO PLEAD FALSITY ................................................................. 3

        A.      The Puzzle-Pled CAC Fails to Comply with the PSLRA ............................ 3

        B.      The CAC Fails to Adequately Plead Any False Statement .......................... 4

                1.      Falsity Not Pleaded for PFAS-Related Accruals ............................. 4

                2.      3M Had No Duty to Disclose a Range of Possible Loss ................. 9

                3.      Falsity Not Pleaded for Stated Beliefs Regarding Potential
                        Impact from Future Charges ........................................................... 10

                4.      PFAS-Related Accruals and Impact Beliefs Are Inactionable
                        Opinions ......................................................................................... 12

                5.      The Challenged Roman and Gangestad Statements Are
                        Inactionable .................................................................................... 13

                6.      The Challenged Statements Are Protected by the PSLRA's
                        Safe Harbor .................................................................................... 15

II.     THE CAC FAILS TO PLEAD A STRONG INFERENCE OF SCIENTER ....... 17

        A.      No Motive and Opportunity ....................................................................... 17

        B.      No Intentional or Reckless Conduct .......................................................... 19

III.    THE CAC FAILS TO ALLEGE LOSS CAUSATION ....................................... 21

CONCLUSION .................................................................................................................. 22

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re 2007 Novastar Fin. Sec. Litig.*,
    579 F.3d 878 (8th Cir. 2009) ................................................................................. 3

*In re Apogee Enters. Sec. Litig.*,
    2020 WL 1445856 (D. Minn. Mar. 25, 2020) ....................................................... 3

*In re Bayer AG Sec. Litig.*,
    2004 WL 2190357 (S.D.N.Y. Sept. 30, 2004) ...................................................... 6

*In re CenturyLink Sales Practices & Sec. Litig.*,
    403 F.Supp.3d 712 (D. Minn. 2019) ............................................................. 12, 15

*In re Ceridian Corp. Sec. Litig.*,
    542 F.3d 240 (8th Cir. 2008) ............................................................................... 20

*Chapman v. Mueller Water Prods.*,
    466 F.Supp.3d 382 (S.D.N.Y. 2020) ............................................................... 5, 12

*City of Pontiac Gen. Emps.' Ret. Sys. v. Stryker Corp.*,
    865 F.Supp.2d 811 (W.D. Mich. 2012) .............................................................. 21

*Elam v. Neidorff*,
    544 F.3d 921 (8th Cir. 2008) ....................................................................... 5, 6, 19

*Fait v. Regions Fin. Corp.*,
    655 F.3d 105 (2d Cir. 2011) ................................................................................ 14

*Fla. State Bd. of Admin. v. Green Tree Financial Corp.*,
    270 F.3d 645 (8th Cir. 2001) ............................................................................. 5, 6

*Fryman v. Atlas Fin. Holdings*,
    462 F.Supp.3d 888 (N.D. Ill. 2020) ..................................................................... 5

*Gharwal v. Fed. Nat'l Mortg. Ass'n*,
    2013 WL 4838904 (D. Minn. Sept. 11, 2013),
    *aff'd*, 570 F. App'x 624 (8th Cir. 2014) ............................................................... 4

*Godinez v. Alere Inc.*,
    272 F.Supp.3d 201 (D. Mass. 2017) ..................................................................... 6

*Institutional Invs. Grp. v. Avaya, Inc.*,
   564 F.3d 242 (3d Cir. 2009)................................................................................. 20

*Julianello v. K-V Pharm. Co.*,
   791 F.3d 915 (8th Cir. 2015) ............................................................................... 15

*Kanefsky v. Honeywell Int'l*,
   2020 WL 2520669 (D.N.J. May 18, 2020) ........................................................... 6

*Luna v. Marvell Tech. Grp. Ltd.*,
   2016 WL 5930655 (N.D. Cal. Oct. 12, 2016)........................................................ 8

*Morgan Distrib. Co. v. Unidynamic Corp.*,
   868 F.2d 992 (8th Cir. 1989) ................................................................................. 5

*In re Navarre Corp. Sec. Litig.*,
   299 F.3d 735 (8th Cir. 2002) ............................................................................... 18

*Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*,
   575 U.S. 175 (2015)................................................................................... 12, 13, 14

*In re Perrigo Co. PLC Sec. Litig.*,
   435 F.Supp.3d 571 (S.D.N.Y. 2020)................................................................. 9, 10

*Podraza v. Whiting*,
   790 F.3d 828 (8th Cir. 2015) ......................................................................... 19, 20

*In re Reliance Sec. Litig.*,
   91 F.Supp.2d 706 (D. Del. 2000)......................................................................... 15

*Roberti v. OSI Sys., Inc.*,
   2015 WL 1985562 (C.D. Cal. Feb. 27, 2015)...................................................... 20

*SEC v. RPM Int'l*,
   282 F.Supp.3d 1 (D.D.C. 2017) ........................................................................... 13

*In re St. Jude Med. Sec. Litig.*,
   836 F.Supp.2d 878 (D. Minn. 2011) ...................................................................... 4

*In re Target Corp. Sec. Litig.*,
   955 F.3d 738 (8th Cir. 2020) ............................................................................... 19

*Woolgar v. Kingstone Co.*,
   477 F.Supp.3d 193 (S.D.N.Y. 2020)..................................................................... 12

*Yellen v. Hake*,
    437 F.Supp.2d 941 (S.D. Iowa 2006) ............................................................. 17


**Statutes**

15 U.S.C. § 78u-5(c)(1)(B)(i) ......................................................................... 17

15 U.S.C. § 78u-5(c)(2)(B) ............................................................................. 17


**Other Authorities**

Deloitte, *A Roadmap to Accounting for Contingencies and
    Loss Recoveries* (2019) ................................................................................ 2

FASB, Accounting Standards Update 2014-15 (August 2014) ......................... 2

H. Levy, *Financial Reporting and Auditing Implications of the COVID-19
    Pandemic*, CPA Journal (June 2020) ........................................................... 2

## TABLE OF ABBREVIATIONS

| Term | Definition |
|---|---|
| ¶ | Paragraphs of the CAC |
| 10b5-1 | SEC Rule 10b5-1, codified at 17 C.F.R. § 240.10b5-1 |
| 3M | Defendant 3M Company |
| AFFF | Aqueous Film-Forming Foam |
| AFFF MDL | *In re Aqueous Film-Forming Foam Multidistrict Litigation*, No. 2873 (D.S.C.) |
| AG | Attorney General |
| Ann.A | Annex A to Br. and this Reply |
| Ann.B | Annex B to Br. and this Reply |
| Ann.C | Annex C to this Reply |
| Ann.D | Annex D to this Reply |
| Ann.E | Annex E to this Reply |
| Ann.F | Annex F to this Reply |
| Ann.G | Annex G to this Reply |
| App. | Appendix to the CAC |
| ASC | FASB Accounting Standards Codification, excerpts submitted at Ex.52 |
| Br. | Defendants' Memorandum of Law in Support of their Motion to Dismiss the CAC, filed January 15, 2021 (ECF No. 91) |
| CAC | Consolidated Amended Complaint for Violations of the Federal Securities Laws, filed December 19, 2019 (ECF No. 44) |
| CP | Putative Class Period, February 9, 2017 through July 8, 2019 |
| Defendants | 3M and the Individual Defendants |
| DuPont | DuPont Co. |
| Eisman Decl. | Declaration of Scott A. Eisman in Support of Defendants' Motion to Dismiss Plaintiffs' CAC, filed January 15, 2021 (ECF No. 92) |
| Ex. | Exhibit to the Eisman Decl. |
| FASB | Financial Accounting Standards Board |
| Fed.R.Civ.P. | Federal Rules of Civil Procedure |

| | |
|---|---|
| Fishbein Decl. | Declaration of Gregg M. Fishbein in Support of Plaintiffs' Memorandum of Law in Opposition to Defendants' Motion to Dismiss the CAC, filed March 30, 2021 (ECF No. 101) |
| Fishbein.Ex. | Exhibit to the Fishbein Decl. |
| GAAP | Generally Accepted Accounting Principles |
| Gangestad | Defendant Nicholas C. Gangestad, 3M Chief Financial Officer during the CP |
| HALs | Health Advisory Levels promulgated by the U.S. Environmental Protection Agency |
| Individual Defendants | Gangestad, Roman, and Thulin |
| Manufacturing and Disposal Matters | Claims asserted by environmental authorities and private litigants against 3M for alleged harm to persons, property or natural resources due to manufacturing and disposal of PFAS near facilities |
| Minnesota AG | Attorney General of Minnesota |
| Minnesota AG Litigation | *State ex rel. Swanson v. 3M Company*, No. 27-cv-10-28862 (Minn. 4th Jud. Dist. Ct., Hennepin Cnty.) |
| MDL | Multidistrict Litigation |
| Opposition or Opp. | Plaintiffs' Memorandum of Law in Opposition to Defendants' Motion to Dismiss the CAC, filed March 30, 2021 (ECF No. 100) |
| PFAS | Per- and Polyfluoroalkyl substances |
| Plaintiffs | Lead Plaintiffs State of Rhode Island, Office of the Rhode Island Treasurer on behalf of the Employees' Retirement System of the State of Rhode Island; Iron Workers Local 580 Joint Funds; and Flossbach von Storch Invest S.A. |
| Product Cases | Product liability cases recently filed against 3M and other defendants based on the use of PFAS (as opposed to its manufacture and disposal) in products, including AFFF, that were manufactured, sold, and used across the country |
| PSLRA | Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 78u-4 *et seq.* |
| PwC | PricewaterhouseCoopers LLP |
| Roman | Defendant Michael F. Roman, 3M Chief Executive Officer during portions of the CP |
| SAB | Staff Accounting Bulletin, issued by the SEC |

| SEC | U.S. Securities and Exchange Commission |
|---|---|
| SOX | Sarbanes-Oxley Act of 2002 |
| Thulin | Defendant Inge G. Thulin, 3M Chief Executive Officer and Chairman of the Board during portions of the CP |

**PRELIMINARY STATEMENT**

The Opposition is replete with rhetoric about the dangers of certain PFAS chemicals whose manufacture long-ago ceased. But this is not a personal-injury lawsuit or action seeking redress for environmental harm, important matters being litigated elsewhere. This case alleges securities fraud. Plaintiffs seek to recover for investor losses after the price of 3M stock declined, claiming that Defendants misrepresented 3M's "potential" legal and financial exposure in ongoing PFAS-related litigation. 3M accounted for future litigation losses exactly how GAAP prescribes, accruing for what it then estimated as "probable" and "reasonably estimable" negative outcomes, disclosing all pending PFAS-related claims, and stating that it could not estimate possible loss beyond accrued amounts.

Plaintiffs do not dispute that, to plead falsity and scienter, they must allege particularized facts demonstrating that Defendants disclosed the challenged accruals and made other statements with knowledge of or access to facts that contradicted them. But the CAC fails to meet this, and other, high pleading hurdles. Indeed, although Plaintiffs' claims hinge on Defendants' compliance with GAAP, the CAC nowhere mentions GAAP, suggests that Defendants violated the accounting rules they were bound to follow, or contends that 3M failed to accrue for future litigation losses that were then "probable" and "reasonably estimable." Moreover, neither the CAC nor the Opposition points to *any* documents, witnesses, or other information identifying some undisclosed, contrary analyses of non-accrued "probable" and "reasonably estimable" PFAS litigation losses. The handful of public information on which Plaintiffs seize does not demonstrate otherwise. Accordingly, there is no "premature" factual dispute here. Opp.1-2. Like

multiple other securities complaints dismissed by courts in this Circuit, this is a straightforward instance of Plaintiffs' failure to meet their heightened pleading burden under the PSLRA.

In short, Plaintiffs plead no fraud. The reality is that ongoing PFAS-related claims are complex, uncertain, and difficult to predict, as 3M repeatedly disclosed.

## **REPLY BACKGROUND**

Plaintiffs' Opposition does not dispute that:

- A company must accrue for a contingent litigation liability *only* where an unfavorable outcome is both "probable" and "reasonably estimable." ASC 450-20-25-2; ASC 450-20-50-5; ASC 450-20-55-13. "Probable" is defined as "likely to occur," ASC 450-20-20 Glossary, which FASB and accounting experts instruct requires at least a 70% chance of occurrence, FASB, *Accounting Standards Update 2014-15*, 2, 7, 17, 24 (Aug, 2014) (Ann.C).[1]

- While accrual is required where an estimate of probable loss can be stated only as a range, Opp.20n.10, that accrual must be the *bottom* end unless there is one other point that is the best estimate, ASC 450-20-30-1.

- Where loss is only "reasonably possible," no accrual shall be made and a registrant must instead (i) disclose the nature of the contingency, and (ii) *either* estimate possible loss or range of loss *or* state that such estimate cannot be made. ASC 450-20-50-4.

Nor does the Opposition challenge the multiple pages of disclosures in 3M's SEC filings describing its PFAS-related legal proceedings. Br.7-12, 14-15, 17. Plaintiffs nowhere contest that most of the matters (including the AFFF MDL) were in early phases during the CP, and that 3M regularly disclosed that it could not estimate possible loss for

---

[1] *See also* H. Levy, *Financial Reporting and Auditing Implications of the COVID-19 Pandemic*, CPA Journal (June 2020); Deloitte, *A Roadmap to Accounting for Contingencies and Loss Recoveries*, 20-21, 77 (2019) (Ann.D-E).

the matters beyond what was accrued but would regularly reexamine and update its estimates.  Br.9-18.  And Plaintiffs concede that PwC reviewed 3M's accruals on a quarterly and annual basis, and each time concluded they conformed to GAAP.  Br.7n.5.

## ARGUMENT

### I.   THE CAC FAILS TO PLEAD FALSITY

#### A.   The Puzzle-Pled CAC Fails to Comply with the PSLRA

Despite using lengthy block quotes followed by rote references to prior paragraphs, ¶¶ 152-197, Plaintiffs insist they have sufficiently identified the challenged statements through "highlight[ing]" (*i.e.*, bolded italics), Opp.40.  Plaintiffs thus concede that no non-highlighted excerpts are false or misleading.

Plaintiffs also specify only eight paragraphs where they claim to have set forth "the particular facts supporting why each statement was false or misleading." Opp.40n.23 (citing ¶¶ 144-151).  No others should be considered.  *In re Apogee Enters. Sec. Litig.*, 2020 WL 1445856, *8 (D. Minn. Mar. 25, 2020).

The CAC also never explains *why* any of the allegations in ¶¶ 144-151 renders false any particular challenged statement in ¶¶ 152-197, as the PSLRA requires.  *See In re 2007 Novastar Fin. Sec. Litig.*, 579 F.3d 878, 883-84 & n.4 (8th Cir. 2009) (affirming dismissal for failure to "provide any link between an alleged misleading statement and specific factual allegations demonstrating the reasons why the statement was false or misleading"). The CAC's similar approach in ¶¶ 144-151, without linking any of those paragraphs to any

challenged statement in ¶¶ 152-197, requires dismissal.[2]

## B.    The CAC Fails to Adequately Plead Any False Statement

Although the CAC "highlights" with bolded italics statements about 3M's "environmental remediation" accruals, *e.g.*, ¶¶ 153, 159, 162, the Opposition does not assert that those accruals, unrelated to PFAS, are false, Br.33n.23.   Likewise, the Opposition nowhere asserts that Defendants' litigation risk factor disclosures were false. Br.32-33.  Any claims based on these statements must be dismissed.  *Gharwal v. Fed. Nat'l Mortg. Ass'n,* 2013 WL 4838904, *1n.2 (D. Minn. Sept. 11, 2013)  (dismissing claims not addressed in opposition to dismissal motion), *aff'd*, 570 F.App'x 624 (8th Cir. 2014).

### 1.    Falsity Not Pleaded for PFAS-Related Accruals

To plead falsity of 3M's PFAS-related "other environmental liabilities" accruals, Plaintiffs concededly must allege "facts or further particularities that, if true, demonstrate that the defendants had access to, or knowledge of, information contradicting" those accruals—that there were future non-accrued litigation outcomes both "probable" and "reasonably estimable" at the time.  Br.22-28.

The Opposition asserts GAAP and ASC 450 violations and that 3M faced non-accrued "probable" and "reasonably estimable" liability, *e.g.*, Opp.2, 16, but the CAC is silent on these topics.   Instead, the CAC nebulously references "potential liability" that supposedly was "massive," "significant," or "enormous."  ¶¶ 3, 144, 146-149.  It never

---

[2] The complaint in *In re St. Jude Medical Securities Litigation*, Opp.40, stands in contrast, as each challenged statement was "preceded or followed by specific allegations describing why the quoted and highlighted language was misleading."  836 F.Supp.2d 878, 888 (D. Minn. 2011).  Another cited case, Opp.40n.23, addressed Fed.R.Civ.P. 8, not the PSLRA.

mentions GAAP, ASC 450, or any other accounting rule.  Moreover, the CAC nowhere

assesses the likelihood of any future litigation outcome, estimates future probable damages,

or explains how such numbers should be estimated.  These pleading failures are dispositive;

Plaintiffs cannot amend through their Opposition.  *Morgan Distrib. Co. v. Unidynamic*

*Corp.*, 868 F.2d 992, 995 (8th Cir. 1989).

Regardless, and putting aside that 3M's accruals were never restated but instead

PwC confirmed GAAP compliance, the Opposition fails to identify any undisclosed facts

contradicting them—no separate set of internal estimates, and no document or witness

disagreeing with or differently analyzing the probability and estimability of 3M's PFAS-

related exposure.  The PSLRA requires more.  *See Elam v. Neidorff*, 544 F.3d 921, 927

(8th Cir. 2008) (complaint "fails to point to any contemporaneous reports, witness

statements or any information that had actually been provided to defendants as of [time of

challenged reserves] that indicated Centene would need to increase [reserves]").[3]

The decisions cited by Plaintiffs, Opp.19-23, are inapposite, because there (unlike

here) each expressly alleged knowledge of undisclosed contradictory facts.  In *Florida*

*State Board of Administration v. Green Tree Financial Corporation*, 270 F.3d 645, 652

(8th Cir. 2001), falsity was not disputed because the company had restated its financials.

Further, in estimating and disclosing present value of loan pools, defendants applied

*undisclosed* assumptions for loan prepayment rates that allegedly had already been shown

---

[3] *Accord Chapman v. Mueller Water Prods.*, 466 F.Supp.3d 382, 399-400 (S.D.N.Y. 2020);
*Fryman v. Atlas Fin. Holdings,* 462 F.Supp.3d 888, 897 (N.D. Ill. 2020).

to be "unrealistic and unreasonable" based on actual pre-payment experience at the time of the disclosure. *Id.* at 649, 665. Plaintiffs, the court observed, "alleged that defendants published statements with knowledge of facts indicating crucial information in the statements was based on discredited assumptions." *Id.* at 665 (defendants received actual prepayment rates, which discredited undisclosed assumptions, "on at least a monthly basis"). Likewise, in *In re Bayer AG Securities Litigation*, 2004 WL 2190357, *4, 14 (S.D.N.Y. Sept. 30, 2004), the court's falsity analysis hinged on a confidential witness' description of an internal meeting during which experts told company executives that relevant safety data was "putting the brand at risk," contradicting defendants' later statement that "there was no need to establish any litigation reserve because the [product-liability] lawsuits were groundless."[4]

To try to fill this dispositive gap, the Opposition points to later accrual increases, the Minnesota AG Litigation settlement, and the subsequent charge taken for it. *E.g.*, Opp.2, 22-23. But this is classic impermissible fraud-by-hindsight. Br.22; *Elam*, 544 F.3d at 927. If anything, the accrual increases are consistent with 3M's repeated disclosures that it would reexamine estimates of ongoing litigations and make adjustments. Br.8, 11, 15, 19n.12. Plaintiffs also insist that 3M should have accrued the $5 billion asserted in the Minnesota AG's expert report, Opp.18, but that report was disputed and disclosed, Br.11.

---

[4] *See also Kanefsky v. Honeywell Int'l*, 2020 WL 2520669, *5 (D.N.J. May 18, 2020) (defendants admitted they possessed undisclosed data that would have created higher reserves); *Godinez v. Alere Inc.*, 272 F.Supp.3d 201, 216 (D. Mass. 2017) (complaint identified particular contradictory facts, known to defendants but undisclosed, including FDA notice and confidential witness statements).

Moreover, any such accrual would have been false and violated GAAP, *supra* 2, because nothing suggested that such a loss was "probable"—a fact confirmed by the settlement. There is no requirement to accrue a plaintiff's claimed, but unproven, damages.[5]

That leaves Plaintiffs insisting that "multiple" "contemporaneous facts" demonstrated "probable" and "reasonably estimable" additional unaccrued PFAS-related liabilities during the CP, Opp.15, 18-19, 23, but they point to the same deficient information:

- Dupont chose to settle PFAS-related litigation, potentially for any number of reasons, only after 18 years of litigation and several adverse trial verdicts. Br.26n.16.  The Opposition has no response.

- The Minnesota AG Litigation settlement serves as no precedent for estimating probable liability in other cases.  Br.24-25.  The settlement reserved all defenses.  Br.13n.8.  Other Manufacturing and Disposal Matters (most in early phases during the CP), are not alleged to involve sites with the same footprint or features as Minnesota.  Br.24-25.  The Product Cases (all in early stages during the CP) involve different theories and defenses, multiple alleged tortfeasors, and indemnification claims.  *Id.*  The Opposition has no response.

- HALs are unenforceable, and even almost two years post-CP, Plaintiffs fail to identify any action brought under them.  Br.25.  The Opposition has no response.

- The early scientific studies—made public in 2017, Opp.19n.9—are not legal

---

[5] Plaintiffs inappositely assert it "would be absurd to infer that at no point prior to the announcement of the settlement did 3M reasonably understand that it would not need to pay a significant sum to resolve that litigation."  Opp.9.  That is not what GAAP requires. The settlement—announced the date trial was to begin—did not render any liability "probable" or "reasonably estimable" earlier, especially as 3M was preparing to try the case.  Br. 12-14.  That the SEC inquired about 3M's accrual after the settlement was announced, Opp.9, likewise does not mean liability was "probable" and "reasonably estimable" earlier.  3M explained the basis for its prior accrual, and the SEC took no action. Br.13-14.

or financial analyses of the probability of negative outcomes in ongoing environmental, personal-injury, and product-liability litigation, decades after the fact, and with various defenses asserted, indemnification, and insurance. Nor do they estimate damages for any liability. Br.25. The Opposition has no response.

- The CAC identifies two analyst reports with contradicting predictions of *potential*, not "probable," liability. Br.26. The Opposition has no response, but proffers a third report with a different approach. Fishbein.Ex.9. This report labels one of its analyses a "worst case" framework, concedes that favorable verdicts for 3M would lower exposure, and recognizes that PFAS litigation is in "early innings." *Id.* 1, 5, 14-15, 17, 32. Across all three reports, the proffered range of liability is $0-$22B+—useless (but public) information that, if somehow accrued, would render 3M's financial statements misleading and harm 3M (and its shareholders) in the defense of ongoing litigation. Br.26.[6]

None of this information demonstrates the falsity of 3M's CP assessments of "probable" (at least 70% likely to occur) and "reasonably estimable" outcomes in PFAS-related litigation.

Contrary to Plaintiffs' assertion, Defendants do not prematurely raise some factual dispute over competing GAAP interpretations. Opp.1-2, 16, 24. It is *Plaintiffs'* burden to plead particularized facts showing Defendants had information contradicting their PFAS-related litigation accruals when disclosed. Br.27-28; *Luna v. Marvell Tech. Grp. Ltd.*, 2016 WL 5930655, *5 (N.D. Cal. Oct. 12, 2016) (plaintiff must explain "why the difference between the earlier [litigation reserve] and the later [reserve] is not merely the difference

---

[6] Plaintiffs speciously assert that the mere manufacturing of PFAS and the Minnesota AG's allegations of "concealment" of wrongful PFAS-related conduct rendered liability "probable" and "reasonably estimable." Opp.3, 10, 18. Among other things, the pendency of claims does not trigger accrual. ASC 450-20-55-13. The AG's allegations were unproven and, regardless, entirely unrelated to accounting for contingent liabilities.

between two permissible judgments, but rather the result of a falsehood").

At bottom, the CAC ignores that PFAS-related litigation is complex and uncertain, and its outcome difficult to predict.  Under GAAP, companies may not accrue for litigation liability unless a negative outcome is both "probable" and "reasonably estimable"—which the CAC nowhere even alleges—and the Opposition fails to identify particularized facts demonstrating that Defendants had such internal, undisclosed information.

### 2.    3M Had No Duty to Disclose a Range of Possible Loss

Apparently conceding their failure to plead that Defendants' PFAS-related accruals were false, the Opposition asserts that 3M had a "clear duty" to quantify and disclose a range of possible loss for its PFAS litigation.  Opp.24-27.  That is incorrect.  Under GAAP, a registrant must *either* disclose estimated possible loss *or* state that it cannot so estimate, ASC 450-20-50-4, which 3M undisputedly did, Br.9-18.  The Opposition identifies no facts demonstrating that 3M's statements that it could not at the time estimate possible loss beyond established accruals were untrue when made.  The information Plaintiffs cite was public and does not show that a range of possible loss was "reasonably estimable." *Supra* 7-8.

Plaintiffs' reliance on *In re Perrigo Company PLC Securities Litigation*, 435 F.Supp.3d 571 (S.D.N.Y. 2020), is misplaced.  That case involved estimation of a *single* tax assessment on a *single* issue, after audit—not multiple, early-stage litigations asserting varying claims—and the tax authority had already calculated a specific undisclosed amount

(€1.6B).  *Id.* at 578, 586-87.[7]

### 3.   Falsity Not Pleaded for Stated Beliefs Regarding Potential Impact from Future Charges

Mischaracterizing 3M's disclosures, Plaintiffs assert that 3M falsely "assured" the market that any future losses would not have a material impact on 3M or "specifically denied" future environmental liability.  Opp. 9, 15, 27-31.  Not so.  Most of the challenged impact statements made the limited point that, where environmental remediation work was "largely complete" and confined to remedy operation and maintenance, 3M believed that exposure to loss beyond amounts accrued was not material.  ¶¶ 153, 159, 162, 165, 169, 176, 179, 182, 186.  The Opposition does not even attempt to demonstrate falsity of these statements.

The CAC separately challenges a *single sentence* in each of 3M's three annual SEC filings, within the Commitments and Contingencies Note (which covers Legal Proceedings, including PFAS matters), stating "[a]lthough [3M] cannot estimate its exposure to all legal proceedings, it currently believes that such future charges, if any, would not have a material adverse effect on [3M's] consolidated financial position."  ¶¶ 156, 171, 188.  Even putting aside that 3M's CP balance sheets showed approximately $32 billion in annual sales, Ex. 27, 15, this sentence was not made, and cannot be read, in a vacuum.  Immediately preceding this sentence are warnings that litigation is inherently

---

[7] Plaintiffs' reliance on ASC 275 and SAB No. 114, Opp.26-27, fails.  Neither is mentioned in the CAC, and both repeat that if a disclosure involves a loss contingency covered by ASC 450-20, it must include an estimate of possible loss *or* state that such estimate cannot be made.  Ann.F-G.

uncertain and complex; unfavorable developments could occur; and adverse developments could result in future charges that could have a material adverse effect on 3M's results or cash flows in the period in which they are recorded. Ex.3, 112; Ex.8, 117; Ex.16, 110. Directly following the sentence is the disclosure that 3M regularly reexamines and adjusts its estimates of, and ability to estimate, probable liabilities, and thus current estimates of potential impact could change. *Id.* The annual Note further describes all significant legal contingencies, including PFAS-related proceedings, and discloses that 3M could not at the time estimate possible loss beyond stated accruals. Ex.3, 116-19; Ex.8, 121-26; Ex.16, 113-19. (A litigation risk factor is separately included. Ex.3, 12-13; Ex.8, 12; Ex. 16, 12.) Given these disclosures, no reasonable investor could read the single challenged sentence as some "assurance" of no future liability that could materially affect 3M. Plaintiffs do not even attempt to address the cases rejecting challenges to similar disclosures. Br.29n.19.

That leaves the impact sentence within the "Environmental Law Compliance" section in 3M's annual SEC filings. ¶¶ 154, 170, 187. But that sentence and section is limited to "capital expenditure . . . for new or expanded programs to build facilities or modify manufacturing processes to minimize waste and reduce emissions." *Id.* Expenditures for "remediation actions" relating to "existing conditions caused by past operations" (including PFAS remediation) are excluded. *Id.* Regardless, that section referred readers to the Commitments and Contingencies Note, including all warnings described above.

-11-

### 4.    PFAS-Related Accruals and Impact Beliefs Are Inactionable Opinions

Conceding that 3M's accruals and beliefs about potential impact of any future charges are opinions, *see* Br.29-30, Plaintiffs wrongly insist that they are not "protected" under *Omnicare, Inc. v. Laborers District Council Construction Industry Pension Fund*, 575 U.S. 175 (2015).  Opp.34-37.

Regarding *Omnicare*'s first prong, Plaintiffs allege no facts demonstrating that Defendants did not "sincere[ly]" hold their opinions.  *Woolgar v. Kingstone Co.*, 477 F.Supp.3d 193, 223-26 (S.D.N.Y. 2020); *Chapman*, 466 F.Supp.3d at 398-99.  That the SEC inquired about the accrual for the Minnesota AG Litigation, Opp.35, does not mean Defendants did not "sincerely" hold their opinions.  3M answered the SEC's question, detailing the bases for Defendants' opinions. Br.13-14.  Plaintiffs fare no better referencing the Minnesota AG's expert report, Opp.35, which 3M disputed—preparing for trial, with settlement announced the day trial was to begin.[8]

Regarding *Omnicare*'s second prong, the mere fact that opinions (here, estimates) are *based on* existing facts, Opp.35-36, does not mean that they *embed* them.  This circular logic would eviscerate *Omnicare*.  Unsurprisingly, Plaintiffs cite no case to support their confused argument.  Regardless, Plaintiffs fail to plead particularized facts demonstrating that any accrual was false.  *Supra* 4-9.

---

[8] That Plaintiffs "do not admit" Defendants' beliefs were honestly held, Opp.35, is irrelevant.  In *In re CenturyLink Sales Practices & Securities Litigation*, 403 F.Supp.3d 712, 729 (D. Minn. 2019), the court found opinions actionable not because of plaintiffs' proclamation, but because they "repeatedly allege[d] facts that show that [d]efendants knew that their statements were, in fact, false."

-12-

Meeting *Omnicare*'s third prong is "no small task," as investors "do[] not expect that *every* fact known to" a defendant "supports its opinion statement." 575 U.S. at 190, 194. Plaintiffs' proffer only the insufficient conclusory assertion that Defendants' statements were "without a reasonable basis." Opp.36. Regardless, Plaintiffs fail to identify any fact "cutting the other way," Br.30, that was not disclosed or otherwise public, *supra* 6-8.[9]

### 5. The Challenged Roman and Gangestad Statements Are Inactionable

***Roman's 4/24/2018 Statement.*** Roman's statement was not some "unconditional denial," hiding other potential liability outside the Minnesota AG Litigation. Opp.31. Roman was asked whether the Minnesota settlement was "a precedent for other states or does it rule out any similar issues in other states," with the analyst noting that most settlement scenarios "seem highly improbable." Ex.10, 4. Roman responded with his view that "[t]his is a unique situation. This is our home state and something that we've been working on with them for a number of years. This is a unique situation in both the nature of the case as well as the process we're working through with them." *Id.*

Roman's belief, and the bases provided for it, are true and undisputed. Br.31. Moreover, there has been no similar settlement even two years post-CP, and there was no other settlement, large or small, announced in close proximity. No reasonable investor—armed with pages of SEC disclosure describing all pending PFAS litigation—would have

---

[9] In *SEC v. RPM International,* 282 F.Supp.3d 1, 27-28 (D.D.C. 2017), Opp.34, plaintiff alleged undisclosed concrete details about settlement offers the company itself had presented to the government.

thought Roman denied that any other matter would ever be settled or result in a negative outcome. Plaintiffs' reference to an accrual increase a year later, Opp.31, is improper fraud-by-hindsight.

***Gangestad's 5/15/2019 statement.*** The CAC mischaracterizes Gangestad's statement, falsely accusing him of conveying that *all* PFAS-related liability—for manufacturing *and* "distribution" of PFAS, ¶¶ 137, 196-197—was estimated to be covered by the April 2019 increased PFAS accrual. Br.18, 31-32. Gangestad underscored that the accrual did not cover Product Cases, including the AFFF MDL. *Id.*

The Opposition now proffers the more limited assertion that Gangestad's statement about accrual only for Manufacturing and *Disposal* Matters was false because 3M subsequently announced new searches for PFAS at three Alabama landfills and, several months later, announced an accrual increase. Opp.32-33. That is again fraud-by-hindsight. Regardless, Gangestad too never conveyed that 3M faced no additional potential liability. He made clear that 3M was "putting our best estimate together of what we think" the "probable" liability would be. Ex.21, 4. That a search had commenced for possible PFAS presence at three closed landfills does not render his statement false when made. His statement was also consistent with 3M's repeated disclosures that it would continue to search for PFAS at prior sites. Br.19.[10]

---

[10] Contrary to Plaintiffs' contention, Opp.36, Roman's and Gangestad's statements are opinions, Br.32n.22. Gangestad provided an estimate, which is quintessential opinion. *E.g.*, *Fait v. Regions Fin. Corp.*, 655 F.3d 105, 110 (2d Cir. 2011). "I think," Opp.36, isn't required, but was said, Ex.21, 4. Roman provided his "perspective" on the settlement, Ex.10, 4—also opinion. *See* Br.32n.22; *Omnicare*, 575 U.S. at 183 (opinion is "a belief, a

### 6.    The Challenged Statements Are Protected by the PSLRA's Safe <u>Harbor</u>

***Forward-looking***.  Plaintiffs dispute only whether 3M's PFAS litigation accruals and Gangestad's statement are forward-looking.  Opp.37-38.

3M's accruals are forward-looking because they are "estimates of liabilities" a company "*will* pay."  Br.33-34.  They predict the probability of *future* litigation outcomes that undisputedly have not happened and are difficult to predict.  They differ from business loss reserves, like loan loss reserves, which are calculated based on assets already on a balance sheet and expected losses based on past practice.[11]  That estimates regarding future litigation outcomes are *based on* "currently available facts," Opp.37, does not render them statements of present fact.

Similarly, Gangestad's statement addressed "our best estimate together of what we think all of those costs"—*i.e.*, probable and reasonably estimable *future* litigation outcomes—"*will* be."  Ex.21, 4 (emphasis added); *see Julianello v. K-V Pharm. Co.*, 791 F.3d 915, 921 (8th Cir. 2015) ("present tense" statements forward-looking when "tied to a future event").[12]

---

view").  Neither "conveyed certainty and reliability," Opp.36, that somehow transformed opinions into fact.

[11] In *In re Reliance Securities Litigation*, 91 F.Supp.2d 706, 721 (D. Del. 2000), Opp.37, the challenged statement represented that the loan loss reserve was "adequa[te]," and was based on the company's current loan loss rate.  Neither applies here.

[12] In Plaintiffs' cases, Opp.38, the challenged statements addressed current conditions. *E.g.*, *CenturyLink*, 403 F.Supp.3d at 729 (company "was already generating revenue growth through price increases").

-15-

***Meaningful cautionary language***.    Plaintiffs challenge only the cautionary language in 3M's quarterly SEC filings and accompanying Gangestad's and Roman's oral statements.  Opp.38-40.

As for the quarterly filings, Plaintiffs wrongly complain that language warning future developments "could result in future charges that could have a material adverse effect" does not appear in the Commitments and Contingencies Note, but rather in the risk factor section 30 pages later.  Opp.30.  There is no requirement that cautionary language appear in any particular portion of a filing.  Nor does the quarterly Commitments and Contingencies Note "specifically den[y] environmental liability," *id.*, and Plaintiffs cite no such denial.  Regardless, the quarterly Note expressly refers investors to that Note in the annual filings, *e.g.*, Ex.5, 31; Ex.6, 36; Ex.7, 37—which *does* warn about the potential for unfavorable developments and future charges with material adverse effect, *supra* 10-11.[13] The quarterly Note goes on to describe all PFAS legal proceedings, and warn (i) 3M could not at the time estimate possible loss from those proceedings above accrual; (ii) about the difficulty in estimating the cost of environmental compliance and remediation; and (iii) where remediation was largely "ongoing," 3M could not estimate possible loss above accrual.  *E.g.*, Ex.5, 34-39; Ex.6, 39-44; Ex.7, 40-45.  Thus, there was no "splicing" to create some inaccurate impression.  Opp.30.  In addition to the separate litigation risk

---

[13] The extensive disclosures in the annual Note are anything but "boilerplate."  Opp.28-29; *supra* 10-11.

factor, *e.g.*, Ex.5, 71; Ex.6, 82; Ex.7, 84, the quarterly Note contains cautionary language and refers investors to additional warnings in the annual Note.

As for oral statements, Opp.38-40, Plaintiffs ignore that both included an oral statement referring listeners to the undisputedly sufficient warnings in 3M's annual filings. Ex.10, 2; Ex.21, 2; Fishbein.Ex.15, 2. That brings them within the safe harbor. 15 U.S.C. § 78u-5(c)(2)(B); *Yellen v. Hake*, 437 F.Supp.2d 941, 959, 963 (S.D. Iowa 2006).[14]

## II.    THE CAC FAILS TO PLEAD A STRONG INFERENCE OF SCIENTER

### A.    No Motive and Opportunity

Plaintiffs do not dispute that insider stock sales are not "inherently suspicious"; Plaintiffs must plead that sales were "unusual" in profit, amount, percentage sold, or insiders involved. Br.35. That high bar has not been met, including because:

- each Individual Defendant *increased* his CP holdings (by 20-113%), Ann.A;

- each sold a fraction of his 3M holdings (1.72-10.85%), Ann.B;

- most sales were early in the CP; and

- the sales were made under circumstances found non-suspicious as a matter of law by other courts.

Br.35-38.

Plaintiffs make no genuine effort to dispute this, and challenge no calculation provided. Rather, they insist that the propriety of Defendants' sales is a fact issue that cannot be resolved now, and that the Court should simply accept their conclusory

---

[14] Regardless of cautionary language, the safe harbor independently applies because Plaintiffs fail to plead *actual* knowledge of falsity. 15 U.S.C. § 78u-5(c)(1)(B)(i); Br.34, 38-41; *infra* Point II.B.

allegations about motives. Opp.53. Not so. In determining whether motive has been well-pleaded, the Eighth Circuit and courts within it regularly examine the very undisputed circumstances Plaintiffs ask this Court to ignore. Br.35-37.[15]

Nor should this Court credit Plaintiffs' feeble attempt to manufacture suspicious trading where none exists. Plaintiffs assert that Defendants' sales were "massively out of line" with previous trading, but provide no prior context for Roman, and for Gangestad and Thulin measure against prior "proceeds," Opp.51, not profit, Br.35-36. In doing so, Plaintiffs ignore that Defendants' pre-CP holdings, and 3M's pre-CP stock price, were lower. Plaintiffs also ignore the many undisputed hallmarks of non-suspicious trading. Br.35-37.

Plaintiffs' only other claim of suspicious activity concerns the January 31 and February 1 and 2, 2018 trading before the Minnesota AG Litigation settlement. Opp.51-52. Plaintiffs nowhere allege that any Defendant knew about the subsequent settlement when trading. Regardless, Plaintiffs' attack again relies on "proceeds," and ignores that these sales undisputedly represented a small fraction of Defendants' holdings, were made in conjunction with the routine exercise of compensation-based options, and (in the case of Thulin) preceded retirement. Br.36-37. While Plaintiffs insist that Roman's sale to cover the cost of exercising an expiring option and related taxes "benefit[ed] the seller," Opp.53,

---

[15] Plaintiffs cite no case holding that the absence of a 10b5-1 trading plan, Opp.51n.35, renders trading suspicious.

that is not the standard, Br.36; *In re Navarre Corp. Sec. Litig.*, 299 F.3d 735, 747 (8th Cir. 2002).

Finally, as for Plaintiffs' contention that sales by non-defendants "can support an inference of scienter," Opp.53, that is not the case where, as here, those individuals did not make the challenged statements, are not alleged to have had "insider" information, and are not mentioned in the CAC—like the heads of Information Technology and Human Resources, Br.37-38; CAC App.E.[16]

### B.       No Intentional or Reckless Conduct

Without motive, allegations of intentional or reckless conduct must be "particularly strong." Br.28. That standard cannot be met here for the same reasons Plaintiffs have failed to allege falsity: the CAC lacks particularized facts demonstrating that Defendants had knowledge of facts that contradicted the challenged accruals and other disclosures, and the assorted information on which Plaintiffs seize, Opp.41-49, does not show otherwise, *supra* 6-8; *see In re Target Corp. Sec. Litig.*, 955 F.3d 738, 743 (8th Cir. 2020); *Elam*, 544 F.3d 921, 930; Br.38-39.

Plaintiffs fail to distinguish *Podraza v. Whiting*, 790 F.3d 828 (8th Cir. 2015)—involving environmental liabilities accounting—where the Eighth Circuit affirmed dismissal on scienter grounds even where the company had restated its financials. The company's auditor had confirmed the earlier financials complied with GAAP; the company

---

[16] Plaintiffs misleadingly reference "250 separate sales of stock" by Defendants. Opp.51n.35. Those individuals sold on 11 days during the 30-month CP. ¶ 228. Their Forms 4 disaggregated each transaction within cents as 3M's stock price moved, although aggregated reporting is permitted. Br.36n.26.

provided the SEC with an explanation of its accounting; and the company repeatedly disclosed how it treated its environmental expenses and costs. *Id.* at 838. The purported differences from *Podraza*, Opp.49n.33, are non-existent. The CAC nowhere alleges that Defendants failed to "accurately explain[]" how 3M accrued for contingent litigation losses, *id.*, nor does it plead particularized facts demonstrating that Defendants misleadingly omitted material facts.

Plaintiffs' remaining hodge-podge of scienter arguments fail:

- The Eighth Circuit has not adopted the core operations doctrine. Opp.41-43; Br.40-41. Regardless, because 3M ceased the manufacture and disposal at issue long ago, it is not "core" to current operations. Br.41. Additionally, the doctrine is inapplicable absent, as here, particularized facts demonstrating that Defendants had knowledge of "contradictory crucial information." *Id*. The Sustainability Reports' vague reference to "senior management" "consulting" with 3M's outside auditor, Opp.42n.25, does not so plead.

- The mere fact that Roman and Gangestad answered questions about 3M's accruals does not plead scienter because, unlike in Plaintiffs' cases, Opp.46-47, neither made "consistent denials" of a later-emerging fact in response to "specific analyst queries," *Institutional Invs. Grp. v. Avaya, Inc.*, 564 F.3d 242, 270 (3d Cir. 2009). Nor did any post-CP statements, Opp.45, admit earlier awareness of non-accrued "probable" and "reasonably estimable" liability. An individual's statements can support scienter only when they "contradict[] important data to which [they] had access." *Roberti v. OSI Sys., Inc.*, 2015 WL 1985562, *12 (C.D. Cal. Feb. 27, 2015).

- Simply because 3M subsequently settled the Minnesota AG Litigation, Opp.47, does not make its prior disclosures about that case false. 3M's disclosures were thorough and detailed (including the $5 billion expert report and request for punitive damages), as was its response to the SEC. Br.11, 13-14.

- SOX certifications, Opp.46n.30, and conclusory assertions of GAAP violations, Opp.49-50, do not show scienter, *Podraza*, 790 F.3d at 837-38; *In re Ceridian Corp. Sec. Litig.*, 542 F.3d 240, 248 (8th Cir. 2008).

Nor should this Court entertain Plaintiffs' invitation to ignore the competing

inference that Defendants acted in good faith, Opp.54-55, contradicting Supreme Court precedent mandating that opposing inferences of nonfraudulent intent must be considered, Br.35, 41. Viewed through the required lens, that Defendants during the CP were unable to predict litigation outcomes for 3M's PFAS-related legal proceedings beyond those accrued is not a badge of fraud, but reflects that such claims are complex and fraught with uncertainty.

## III.     THE CAC FAILS TO ALLEGE LOSS CAUSATION

*4/25/2019 Announcement*. Plaintiffs continue to ignore that this announcement contained multiple pieces of negative news unrelated to PFAS litigation accrual, Br.16, 42, and thus concede that the CAC makes no effort to disaggregate impact on 3M's stock price. Plaintiffs insist the bar to pleading loss causation is low, Opp.55-56, but the cases they cite do not address this situation, where one purported "corrective" disclosure contains multiple pieces of news. In this circumstance, courts have required the pleading of facts to causally link price impact with the supposedly-revealed fraud. Br.42-43; *see also City of Pontiac Gen. Emps.' Ret. Sys. v. Stryker Corp.*, 865 F.Supp.2d 811, 835 (W.D. Mich. 2012). The Eighth Circuit similarly requires a plaintiff to plead that "the defendant's fraud—and not other events—caused the security's drop in price." Br.42. The Opposition is silent on that precedent.

*7/8/2019 Announcement.* This announcement was not corrective for two separate reasons, which Plaintiffs erroneously conflate. Opp.57. First, mere announcement of a search, without subsequent negative findings, does not "correct" anything. Br.43. Plaintiffs cite no contrary authority. Second, Plaintiffs wrongly insist that the

-21-

announcement "new[ly]" revealed the "mushrooming" size of 3M's PFAS-related liability. Opp.57. The announcement revealed nothing new: 3M repeatedly disclosed that it would continue to search for and remediate PFAS at additional landfills; the Alabama search was public earlier; and Plaintiffs plead no facts demonstrating that any additional remediation was necessary and not otherwise covered by existing accruals. Br.19 & n.11. Finally, the announcement did not "correct[]" Gangestad's May 2019 statement, Opp.57-58, which gave no assurance that 3M did not face any other future liability, *supra* 14.[17]

## CONCLUSION

The Court should dismiss the CAC.

Dated: May 11, 2021                    Respectfully submitted,

                                       **FAEGRE DRINKER BIDDLE &**
                                       **REATH LLP**


                                       By:    /s/ Wendy Wildung
                                           Wendy J. Wildung (#117055)
                                           2200 Wells Fargo Center
                                           90 South Seventh Street
                                           Minneapolis, Minnesota 55402
                                           Tel: (612) 766-7000
                                           wendy.wildung@faegredrinker.com

---

[17] Without a Section 10(b) claim, there is no Section 20(a) claim. Opp.n.40.

-22-

**FRESHFIELDS BRUCKHAUS DERINGER US LLP**

By:  /s/ Meredith Kotler
    Meredith Kotler (admitted *pro hac vice*)
    Mary Eaton (admitted *pro hac vice*)
    Scott A. Eisman (admitted *pro hac vice*)
    601 Lexington Avenue
    New York, NY 10022
    Tel: (212) 277-4000
    meredith.kotler@freshfields.com
    mary.eaton@freshfields.com
    scott.eisman@freshfields.com

    *Attorneys for Defendants*

-23-